# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | ) | **08-cv-02489-CM** |
|  | ) |  |
| **ALPER HOLDINGS USA, Inc.,** | ) |  |
|  | ) |  |
| **Debtor,** | ) |  |
|  | ) |  |
| **RAY AND CATHY FLAKE,** | ) |  |
|  | ) |  |
| **Appellants.** | ) |  |

## BRIEF OF APPELLANTS RAY AND CATHY FLAKE

Douglas T. Tabachnik, Esq. (DT6337)
**LAW OFFICES OF
DOUGLAS T. TABACHNIK, P.C.**
Woodhull House
63 W. Main Street, Suite C
Freehold, New Jersey 07728
Telephone: (732) 792-2760
Facsimile: (732) 792-2761

and

Sander L. Esserman, Esq.  (SE0356)
Cliff I. Taylor, Esq. (CT4711)
STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, a Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

**ATTORNEYS FOR
RAY AND CATHY FLAKE**

**I.**
**TABLE OF CONTENTS**

I.      TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

II.     TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

     A.    CASES CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

     B.    STATUTES AND RULES CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . .   V

     C.    OTHER AUTHORITY CITED . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   V

III.    STATEMENT OF APPELLATE JURISDICTION . . . . . . . . . . . . .   1

IV.    STATEMENT OF ISSUES PRESENTED AND
       APPLICABLE STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . .   1

     A.    ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

     B.    APPLICABLE STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . .   2

V.     STATEMENT OF THE CASE AND THE FACTS . . . . . . . . . . . . . .   3

     A.    STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

     B.    STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

          1.    The Flakes have tort claims against Alper for
               damages stemming from the contamination of their
               real property by trichloroethylene . . . . . . . . . . . . . . .   3

               a.    *The Flakes' State Court Action* . . . . . . . . . . . . .   4

               b.    *The Flakes' claims in Alper's bankruptcy case* .   5

          2.    When the Flakes filed their claims in Alper's
               bankruptcy case, Alper objected to the claims,
               purportedly because the Flake Proofs of Claim failed
               to state a claim as a matter of law . . . . . . . . . . . . . . .   5

          3.    The Flakes responded to the Claim Objection under
               the presumption that their claims would be reviewed
               under a standard appropriate for a motion
               to dismiss standard . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

a.    *The Flakes alleged that they suffered damages stemming from the contamination of their property by TCE.* . . . . . . . . . . . . . . . . . . . . . . . . .    8

b.    *The Flakes alleged that contamination of the Bruce Road Property and the Investment Property was caused by the migration of TCE contaminants from the Dickson Plant.* . . . . . . . .    9

c.    *The Flakes alleged that Alper negligently controlled the remediation of the Dickson Plant contamination.* . . . . . . . . . . . . . . . . . . . . . . . . . .    9

4.    **After hearing argument on January 8, 2008, the Bankruptcy Court entered the Bankruptcy Order.** . . .    11

VI.    SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    11

VII.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

A.    THE BANKRUPTCY COURT ERRED IN RELYING ON FACTS OUTSIDE THE FACE OF THE FLAKES' PROOF OF CLAIM MATERIALS AND THE MATERIALS SUBMITTED WITH THE FLAKE RESPONSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

1.    **When considering Alper's Claim Objection, the Bankruptcy Court was limited to a review of the Flake Proofs of Claim and the evidence submitted with the Flake Response.** . . . . . . . . . . . . . . . . . . . . . . .    13

2.    **In the Bankruptcy Order, the Bankruptcy Court references numerous allegations made by Alper that do not appear in the Flake Proofs of Claim or the materials submitted with the Flake Response.** . . . . . . .    15

3.    **To the extent this Court finds that the Claim Objection was converted to a motion for summary judgment, the relief granted by the Bankruptcy Court was still improper in the absence of discovery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

B.    THE BANKRUPTCY COURT ERRED IN REQUIRING THE FLAKES TO PROVE THEIR CLAIMS BY A PREPONDERANCE OF THE EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

1.      If the Claims Objection is considered a motion to dismiss for failure to state a claim, then the preponderance of the evidence standard applied by the Bankruptcy Court was improper. . . . . . . . . . . . . .     18

2.      If the Claims Objection is considered a motion for summary judgment, then the preponderance of the evidence standard applied by the Bankruptcy Court was nonetheless improper. . . . . . . . . . . . . . . . . . . . . . .     20

C.      THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT, AS A MATTER OF LAW, ALPER HAD NO CONNECTION WITH THE TCE REMEDIATION IN DICKSON, TENNESSEE. . . . . . . . . . . . . . . . . . . .     21

1.      The Bankruptcy Court's finding that the Flakes set forth no facts that Alper participated in or oversaw the remediation of the Dickson, Tennessee, TCE contamination was erroneous. . . . . . . . . . . . . . . . . . . .     21

2.      The Bankruptcy Court erred in finding that, as a matter of law, Nicholas Bauer was not acting on behalf of Alper when managing the Dickson contamination remediation because, under *United States v. Bestfoods*, 118 S.Ct. 1876 (1998), such an issue is factual in nature and cannot be decided as a matter of law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     23

D.      THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT, AS A MATTER OF TENNESSEE STATE LAW, ALPER OWED NO DUTY TO THE FLAKES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     25

E.      THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT THE FLAKES' ALTER EGO CLAIMS AGAINST ALPER COULD NOT BE ASSERTED AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . .     27

VIII.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     27

## II.
## TABLE OF AUTHORITIES

**A.    CASES CITED**

*Anderson v. City of Chattanooga*,
978 S.W.2d 105 (Tenn. Ct. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

*Biscan v. Brown*,
160 S.W.3d 462 (Tenn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25, 26

*Collins v. Arnold*,
No. M2004-02513-COA-R3-CV, 2007 WL 4146025 (Tenn. Ct. App. 2007) . . . .    25

*DeRosa v. Jacone*,
156 B.R. 740 (Bankr. S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

*In re Black & Geddes, Inc.*,
16 B.R. 148 (Bankr. S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

*In re Chateaugay Corp.*,
146 B.R. 339 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1, 20, 21

*In re Edwards*,
No. 96-17868DWS, 1999 WL 223506 (Bankr. E.D. Pa. April 13, 1999) . . . . . . .    14

*In re HRT Indus., Inc.*,
29 B.R. 861 (Bankr. S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

*In re Lee*,
179 B.R. 149 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

*In re Premier Operations*,
294 B.R. 213 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

*In re Spiegel, Inc.*,
No. 03-11540, 2007 WL 2456626 (Bankr. S.D.N.Y. Aug. 22, 2007) . . . . . . . . . .    17

*Jackson Sawmill Co. v. United States*,
580 F.2d 302 (8th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

*Juster Assocs. v. City of Rutland, Vermont*,
901 F.2d 266 (2d Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

*Madonna v. United States*,
878 F.2d 62 (2d Cir. 1989 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Newton v. Kroger Co.*,
501 F.Supp. 177 (E.D. Ark. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
277 B.R. 20 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Raine v. Lorimar Productions, Inc.*,
71 B.R. 450 (S.D.N.Y. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 18-20,

*United States v. Bestfoods*,
118 S.Ct. 1876 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23, 24

## B.    STATUTES AND RULES CITED

28 U.S.C. § 158(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

FED. R. CIV. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 12, 14,
                                                                                                          16, 17, 19

FED. R. CIV. P. 12(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 16, 17,
                                                                                                          19

FED R. CIV. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

FED. R. BANKR. P. 7056. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

## C    OTHER AUTHORITY CITED

RESTATEMENT (SECOND) OF TORTS, § 324A (1965). . . . . . . . . . . . . . . . . . . . . . . .   25, 26

**III.**
**STATEMENT OF APPELLATE JURISDICTION**

Ray and Cathy Flake (the "Flakes") bring this appeal under Title 28, United States Code,

Section 158(a)(1), which gives district courts of the United States jurisdiction to hear appeals

"from final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1).

This is an appeal from the Memorandum Decision and Order Granting Objection of Alper

Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by Flake Plaintiffs (the

"Bankruptcy Order"), entered by the United States Bankruptcy Court for the Southern District of

New York (the "Bankruptcy Court"), which disallows and expunges the Flakes' bankruptcy

claims against Alper Holdings USA, Inc. ("Alper" or the "Debtor"). Orders disallowing claims

are final orders and, therefore, appealable under Title 28, United States Code, Section 158(a)(1).

*In re Chateaugay Corp.*, 146 B.R. 339, 342 n. 7 (S.D.N.Y. 1992).

**IV.**
**STATEMENT OF ISSUES PRESENTED**
**AND APPLICABLE STANDARDS OF REVIEW**

**A.    ISSUES PRESENTED**

1.    Whether the Bankruptcy Court erred in granting the relief requested in the Objection
of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by
Flake Plaintiffs.

2.    Whether the Bankruptcy Court erred in considering evidence outside the face of the
pleadings—*i.e.*, the Flakes' proofs of claim and evidence relied upon by the Flakes
when submitting their claims.

3.    Whether the Bankruptcy Court erred in failing to take all factual allegations made by
the Flakes as true.

4.    Whether the Bankruptcy Court erred in failing to consider all factual allegations made
by the parties in the light most favorable to the Flakes.

5.    Whether the Bankruptcy Court erred in failing to draw all reasonable inferences in
favor of the Flakes.

1

6.      Whether the Bankruptcy Court erred in failing to consider evidence submitted with the Flake Plaintiffs' Response of Ray and Cathy Flake to Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by the Flakes.

7.      Whether the Bankruptcy Court erred in disallowing and expunging the Flakes' claims under Bankruptcy Code, section 502, without allowing the Flakes an opportunity to conduct discovery.

8.      Whether the Bankruptcy Court erred in failing to apply the standard appropriate for a motion to dismiss when considering the Flakes' claims and Alper's objection thereto.

9.      Whether the Bankruptcy Court erred in concluding that Alper owed no duty to the Flakes to conduct its remediation of the Dickson, Tennessee, TCE contamination in a non-negligent manner.

10.     Whether the Bankruptcy Court erred in concluding that Alper owed no duty to the Flakes.

11.     Whether the Bankruptcy Court erred in concluding that, under Tennessee state law, to prevail on a claim for assumed liability, the Flakes were required to demonstrate that they relied on Alper's remediation activities in Dickson, Tennessee, to the Flakes' detriment.

12.     Whether the Bankruptcy Court erred in misinterpreting Tennessee state law regarding assumed liability.

13.     Whether the Bankruptcy Court erred in concluding that the Flakes' alter ego claims may not be asserted against Alper as a matter of law.

14.     Whether the Bankruptcy Court erred in finding that Nicholas Bauer was acting on behalf of Saltire and not Alper in overseeing or participating in the remediation at the Dickson Plant.

## B.    APPLICABLE STANDARDS OF REVIEW

On an appeal from a bankruptcy court's final order, the district court reviews the

bankruptcy court's findings of facts for clear error. *In re Premier Operations*, 294 B.R. 213, 217

(S.D.N.Y. 2003).  By contrast, a *de novo* standard of review applies to questions of law. *Id.*

(citing *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999)).  In regards to mixed questions

of law and fact, the district court must review findings of fact under the clearly erroneous

standard and the conclusions of law *de novo*. *Id.* (citing *In re United States Lines, Inc.*, 197 F.3d

631, 640-41 (2d Cir. 1999)).  Where, as here, an appeal is of a decision on a motion to dismiss

for failure to state a claim, purely legal considerations are involved, and thus a reviewing court's

review must be *de novo*.  *Raine v. Lorimar Productions, Inc.*, 71 B.R. 450, 452 (S.D.N.Y. 1987)

(recognizing that "[b]ecause this is an appeal from the decision on a motion to dismiss for failure

to state a claim, purely legal consideration are involved, and thus this court's review must be *de

novo*").  Likewise, to the extent a bankruptcy court's order relies on an interpretation of state

law, "[t]he bankruptcy court's interpretation of state law is reviewed *de novo*."  *In re Lee*, 179

B.R. 149, 155 (9th Cir. 1995).

## V.
## STATEMENTS OF THE CASE AND THE FACTS

**A.    STATEMENT OF THE CASE**

This case comes to this Court on appeal from the Memorandum Decision and Order

Granting Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21)

Filed by Flake Plaintiffs, entered by the United States Bankruptcy Court for the Southern District

of New York, which disallows and expunges the Flakes' claims as stated in their proofs of claim

filed in Alper's bankruptcy case.

**B.    STATEMENT OF THE FACTS**

**1.    The Flakes have tort claims against Alper for damages stemming from the
contamination of their real property by trichloroethylene.**

The Flakes are tort victims with claims against Alper for damages stemming from the

contamination by trichloroethylene ("TCE") of two pieces of real property own by the Flakes

in Dickson, Tennessee.

a.      *The Flakes' State Court Action*

Prior to Alper's bankruptcy, on February 27, 2004, the Flakes initiated a state court tort action, Case No. CV-1911 (the "State Court Action"), against, *inter alios*, Alper in the Circuit Court of Dickson County, Tennessee (the "Tennessee State Court") by filing a complaint in the Tennessee State Court (as amended, the "State Court Complaint").  In the State Court Action, the Flakes alleged that Saltire Industrial, Inc. ("Saltire"), an Alper subsidiary, contaminated the soil and ground water in Dickson, Tennessee, by improperly disposing of TCE waste.  The Flakes further alleged that Alper negligently conducted and/or controlled the remediation of the TCE contamination in Dickson, thereby allowing the contamination to migrate through the soil and/or groundwater onto the Flakes' property (Bankr. Dkt. No. 105, Ex. A at p. 9, ¶ 48).

Specifically, the relevant allegations in the Flakes' State Court Complaint are as follows:

- "Alper Holdings U.S.A., Inc. is successor in interest to Scovill, Inc. and Saltire Industrial, Inc.  Alper Holdings U.S.A., Inc. is also sued herein for its own direct acts and omissions" (Bankr. Dkt. No. 105, Ex. A at p. 2, ¶ 6).

- "Defendants are sued individually and as joint-tortfeasors, aiders and abettors. The liability of Defendants arises from the fact that they, directly and/or through their predecessors in interest, alter-egos, agents, employees, and/or representatives, engaged in all or part of the acts, events, schemes and/or transactions described herein" (Bankr. Dkt. No. 105, Ex. A at p. 4, ¶ 12)

- "Defendants are jointly and severally liable for Plaintiffs' damages.  Defendants directly and/or through their agents, alter-egos, employees, representatives and/or predecessors in interest, substantially participated or assisted in the conduct complained of herein and had knowledge of the secret activities alleged herein or recklessly disregarded the conduct.  Defendants are also jointly and severally liable for any future injunctive relief imposed by this Court" (Bankr. Dkt. No. 105, Ex. A at p. 4, ¶ 13)

- "On May 11 and 14, 1993, Scovill/Schrader's environmental consultants tested privately owned wells close to the Facility.  The test results showed TCE levels far above proper maximum contaminant levels" (Bankr. Dkt. No. 105, Ex. A at p. 6, ¶ 26).

- "Defendants, either intentionally or negligently, failed to adequately monitor, control, supervise, and/or maintain the disposal of the TCE at all locations throughout Dickson" (Bankr. Dkt. No. 105, Ex. A at p. 7, ¶ 31).

- "Defendants did not adequately warn Plaintiffs or the public about the existence of the TCE contamination or the dangers posed by the TCE" (Bankr. Dkt. No. 105, Ex. A at p. 7, ¶ 32).

- "Defendants negligently failed to monitor and/or investigate contamination resulting from TCE storage and disposal facilities on-site and at the Landfill. Also, Defendants knew of significant TCE groundwater contamination at the Facility for many years, and negligently failed to take action to prevent the TCE from migrating from the Facility and/or warn Plaintiffs of the existence of TCE contamination or the dangers posed by TCE" (Bankr. Dkt. No. 105, Ex. A at p. 9, ¶ 48).

The Flakes pursued their claims against Alper in the State Court Action, but progress in their prosecution efforts was stalled by procedural wrangling and Saltire's 2004 bankruptcy proceedings.

                b.     *The Flakes' claims in Alper's bankruptcy case*

Alper filed for bankruptcy relief on July 13, 2007 (the "Petition Date"). On September 9, 2007, the Flakes dismissed Alper from the State Court Action and filed essentially identical proofs of claim in Alper's bankruptcy case (as amended, the "Flake Proofs of Claim"). [1] The Flakes attached a copy of the State Court Complaint to the Flake Proofs of Claim.

**2.    When the Flakes filed their claims in Alper's bankruptcy case, Alper objected to the claims, purportedly because the Flake Proofs of Claim failed to state a claim as a matter of law.**

On November 14, 2007, Alper filed its Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by Flake Plaintiffs (the "Claim Objection"). At the same time, Alper filed a Declaration of Jessica L. Fink in Support of Objection of Alper Holdings

---

[1] On December 11, 2007, the Flakes amended their proofs of claim to include: (i) a statement reserving their rights to assert certain defenses and jurisdictional arguments, and (ii) the State Court Complaint.

USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by Cathy Flake and Ray Flake (the "Fink Declaration"), which had attached to it several pages of evidentiary material (Bankr. Dkt. No. 68).  In the Claim Objection and the Fink Declaration, Alper introduced numerous factual allegations that did not appear in the Flake Proofs of Claim.

The Flakes' response to the Claim Objection was due on or before December 27, 2007. The response deadline did not provide sufficient time for the Flakes to conduct discovery related to the Claim Objection.  Therefore, on December 4, 2007, the Flakes filed their Flake Plaintiffs' Motion (I) to Extend Time for Filing Response to Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by Flake Plaintiffs, and (II) to Continue Hearing Thereon (the "Stay Motion") (Bankr. Dkt. No. 84).  At the December 13, 2007, hearing on the Flakes' Stay Motion, Alper took the position in open court that its Claim Objection was actually a motion to dismiss, stating "[t]he only thing [Alper is] asking, Your Honor, is that there be a hearing to—on our—effectively what is our motion to dismiss their claim for failure to state a claim as a legal matter" (Bankr. Dkt. No. 119 at p. 8, lines 17-20).[2]  On the basis of this

_____

[2] Notably, while Alper indicated at the December 13, 2007, hearing that it requested a judgment on the pleadings only, the Fink Declaration filed with the Claim Objection had  attached to it numerous pages of evidentiary materials.  Statements made by counsel in the Claim Objection also indicate that the Claim Objection sought relief on evidence other than the pleadings, as follows:

> If Alper were merely to object to the Flake Claims on that basis or on the basis that the Flake Claims are facially deficient, the inevitable response by the Flake Plaintiffs would be to attempt to describe their claims with greater particularity. Accordingly, Alper is filing a substantive objection in an effort to bypass a needless round of responses and objections related to the Flake Claims.  Rather than simply rejecting the Flake Claims as stated, the Court should reject the Flake Claims in their entirety.

(Bankr. Dkt. No. 67 at p. 5, ¶ 5).

representation, the Bankruptcy Court denied the Flakes an opportunity to conduct discovery

before responding to the Claim Objection in the following exchange:

> MR. TABACHNIK:  May I respond, Your Honor?
>
> Your Honor, if in fact this is a 12(b)(6) motion, essentially, which is kind of obscured by the level of factual material that they've introduced into their papers, then I have no difficulty with that.  If this is going to be purely a legal issue –
>
> THE COURT:  Their responsive papers make it very clear that –
>
> MR. TABACHNIK:  Well, they –
>
> THE COURT:  -- that's what they're relying on.
>
> MR. TABACHNIK:  Their responsive papers –
>
> THE COURT: I happen to agree that what they present in the responsive papers is more than a cosmetic defense as a matter of law with respect to the claim, and I'll deal with that when I deal with that motion.
>
> MR. TABACHNIK:  Then what I would –
>
> THE COURT:  If indeed you survive that motion, then we'll talk about further discovery.

(Bankr. Dkt. No. 119 at p. 10, lines 7-24).

> **3.**    **The Flakes responded to the Claim Objection under the presumption that their claims would be reviewed under a standard appropriate for a  motion to dismiss.**

On December 27, 2007, the Flakes filed their Response of Ray and Cathy Flake to

Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by

Flake Plaintiffs (the "Flake Response").  In the Flake Response, the Flakes relied on both Alper's

and the Bankruptcy Court's prior statements that the Claims Objection was in essence a Rule

12(b)(6) motion.  The Flakes therefore cited to the appropriate 12(b)(6) standards and contended,

*inter alia*, that the Bankruptcy Court should not consider any evidence or allegations outside of

their proofs of claim. However, in light of the substantial evidentiary materials submitted by Alper in the Fink Declaration and the factual allegations made in the Claim Objection, the Flakes attached to the Flake Response the evidence they relied upon when submitting their claims to the Bankruptcy Court. In the Flake Response, the Flakes provided the Bankruptcy Court with the following explanation of their claims:

> a.    *The Flakes alleged that they suffered damages stemming from the contamination of their property by TCE.*

In 2002, the Flakes purchased a 22 acre parcel of land located at 709 Bruce Road, Dickson, Tennessee (the "Bruce Road Property"), which contains a natural spring that produces an estimated one million gallons of water each day (Bankr. Dkt. No. 105, Ex. A at p. 5, ¶ 18). Before the Flakes discovered that the Bruce Road Property was contaminated by TCE, they intended to commercially bottle and sell this spring water (Bankr. Dkt. No. 105, Ex. A at p. 7, ¶ 33). In fact, in September 2003, the Flakes formed a partnership and entered into a purchase agreement to buy a piece of property adjacent to the Bruce Road Property (the "Investment Property") for the purpose of marketing spring water from a natural spring on that property as well (Bankr. Dkt. No. 105, Ex. A at p. 7, ¶ 34). The Flakes' endeavors to market the spring on the Bruce Road Property and to purchase the Investment Property, however, were frustrated when TCE was detected in the spring on the Bruce Road Property (Bankr. Dkt. No. 105, Ex. A at p. 7, ¶ 35; *see also* Bankr. Dkt. No. 105, Ex. B at p. 2). This contamination rendered the spring water on the two properties commercially worthless, destroying the value of the Bruce Road Property and thwarting the Flakes' attempt to purchase the Investment Property (Bankr. Dkt. No. 105, Ex. A at p. 7, ¶ 35). The Flakes' failure to close on the Investment Property resulted in the loss of earnest money deposited by the Flakes as part of the sale transaction (Bankr. Dkt. No. 105, Ex. A at p. 7, ¶ 35).

       b.     *The Flakes alleged that contamination of the Bruce Road Property and the Investment Property was caused by the migration of TCE contaminants from the Dickson Plant.*

From approximately 1964 until March 1985, Alper's subsidiary, Saltire, operated a plant in Dickson, Tennessee (the "<u>Dickson Plant</u>"), producing automotive tire valves and associated products (Bankr. Dkt. No. 67 at p. 9, ¶ 12). Saltire used TCE at the Dickson Plant. TCE contamination occurred at the plant due to that use. As Robert Bertellotti, Alper's president, acknowledged at Alper's Section 341 Meeting of Creditors:

> [D]uring the time that [the Dickson Plant] operated, it utilized trichloroethylene in greasing some of the machinery that was used at the plant. Trichloroethylene has evidently found its way into ground water in certain limited locations in Dixon County, Tennessee. That, I don't think is in dispute. Everybody knows that the company used it…. And everybody knows that there is [TCE] in certain locations in Tennessee. All of these—to the extent that these—this discharge took place and misconduct took place, it took place sometime between 1966 and March of 1985…. [Saltire] knew that there was some contamination at its former facility [the Dickson Plant].

(Bankr. Dkt. No. 105, Ex. C p. 29, lines 4-21; *see also* Bankr. Dkt. No. 67 at p. 13, ¶ 16). The Flakes contended that the contamination of the Bruce Road Property and the Investment Property was the direct result of the migration of TCE contaminants from the Dickson Plant site through the ground water to the properties, which are within eight miles of the Dickson Plant (Bankr. Dkt. No. 105, Ex. A at p. 6, ¶ 22). The Flakes further alleged that the migration of TCE contaminants to the properties would not have occurred if proper remediation of the Dickson Plant site had occurred (Bankr. Dkt. No. 105, Ex. A at 9, ¶ 48).

       c.     *The Flakes alleged that Alper negligently controlled the remediation of the Dickson Plant contamination.*

In 1992, Alper became the indirect parent company of Saltire and later became its direct parent. (Bankr. Dkt. No. 67, p. 10 ¶ 13). On January 1, 1995, Alper and Saltire entered into a management agreement (the "<u>Management Agreement</u>"), which superseded a prior November

30, 1992, management agreement between the parties.  Because no discovery was conducted in the Bankruptcy Court, the Flakes were not produced the 1992 management agreement; however, in the 1995 Management Agreement, Alper agreed to provide "***supervision and management of various environmental matters***, including risk assessment, risk management, technical assessment, ***remediation***, legal and compliance."  (Bankr. Dkt. No. 105, Ex. D at p. 2, § 1(g)).

Around the time the Management Agreement was executed, remediation of the TCE contamination in Dickson, Tennessee, was place under the control of Nicholas Bauer (Bankr. Dkt. No. 105, Ex. E at p. 121, lines 11-22 through p. 122, lines 1-4).  Mr. Bauer was an employee of Alper, which paid his salary and "loaned [him] out as needed to various subsidiaries" (Bankr. Dkt. No. 105, Ex. F at p. 86, lines 23-25 through p. 87, lines 1-2).  The Flakes alleged that, while Mr. Bauer was engaged in remediation endeavors at the Dickson Plant, he acted as an employee of Alper, not as an officer of Saltire.  Mr. Bauer testified in a deposition taken in unrelated litigation as follows:

> Q:        Are you not an employee of Saltire Industrial?
> BAUER:   No, I am not an employee of Saltire Industrial.
>
> . . . .
>
> Q:        Okay.  Well, who are you an employee of?
> BAUER:   I'm actually an employee of Alper Holdings, USA, Inc.

(Bankr. Dkt. No. 105, Ex. E at p. 113, line 22 through p. 114, line 3 & p. 126, lines 3-5).  Mr. Bauer was hired by Alper specifically for the purpose of "dealing with" the contamination problems at the Dickson Plant and other sites.  As Mr. Bertellotti (Alper's President) recognized:

> [Mr. Bauer] was hired specifically—in effect, specifically for the purpose—if it wasn't for Saltire's environmental issues, Nick Bauer wouldn't have been hired. He was hired for the purpose of dealing with Saltire's environmental issues.

(Bankr. Dkt. No. 105, Ex. F, p. 88, lines 4-10).

The Flakes alleged that the remediation of the Dickson, Tennessee, contamination was negligently conducted under the control and supervision of Mr. Bauer, who was acting in his capacity as an employee of Alper.  Had the TCE remediation been properly conducted, the migration of TCE contaminants onto the Flakes' property would have been prevented.

**4.     After hearing argument on January 8, 2008, the Bankruptcy Court entered the Bankruptcy Order**

The Bankruptcy Court held a hearing on Alper's Claim Objection on January 8, 2008.  At the January hearing, the Bankruptcy court heard argument concerning the Flake Proofs of Claim and the evidence relied upon by the Flakes when submitting the Flake Proofs of Claim.  On January 15, 2008, the Bankruptcy Court entered its Bankruptcy Order.

**VI.**
**SUMMARY OF THE ARGUMENT**

Alper's Claim Objection had all the telltale signs of an objection on the factual and substantive merits of the Flakes' claims.  In its objection, Alper made arguments and alleged facts that do not appear in the Flake Proofs of Claim.  Moreover, Alper filed the Fink Declaration in support of the Claim Objection, which declaration contains several pages of evidentiary material.   In order to respond to the factual allegations made in the Claim Objection, the Flakes requested time to conduct discovery.  However, Alper, in an effort to avoid discovery, re-characterized its Claim Objection at a December 13, 2007, hearing, calling it a motion to dismiss.

The Bankruptcy Court accepted Alper's characterization of the Claim Objection and determined that the Claim Objection was a motion to dismiss the Flakes' claims as a matter of law.  On the basis of this determination, the Bankruptcy Court denied the Flakes an opportunity to conduct discovery prior to responding to the Claim Objection.  In doing so, the Bankruptcy

11

Court expressed concern about the amount of evidentiary material submitted with the Claim Objection, but stated that "I'll deal with that when I deal with that motion" (Bankr. Dkt. No. 119 at p. 10, lines 20-21). However, the Bankruptcy Court never revisited or reconciled these concerns. Instead, it appears the Bankruptcy Court erroneously reviewed Alper's Claim Objection as an on objection under Bankruptcy Code, Section 502, rather than under the appropriate standards of a 12(b)(6) motion to dismiss as the Bankruptcy Court had previously announced. In doing so, the Bankruptcy Code improperly considered evidence outside the face of the Flake Proofs of Claim and required the Flakes to prove their claims by a preponderance of the evidence.

First, the Bankruptcy Court erroneously disallowed the Flakes' claims based on factual allegations made by Alper that did not appear in the Flake Proofs of Claim or the Flake Response. It is improper for a court to consider evidence outside of the pleadings when considering a motion to dismiss for failure to state a claim. The Bankruptcy Court's consideration of Alper's extraneous factual allegations is even more troubling, considering that the Bankruptcy Court denied the Flakes an opportunity to conduct discovery and expressed concern about the same evidentiary submissions upon which the Bankruptcy Court later relied. Because the Bankruptcy Court and the parties all agreed that the Claim Objection was to be treated as a motion to dismiss, the Bankruptcy Court was obliged to limit its review to that of the Flake Proofs of Claim.[3]

---

[3] Because the Bankruptcy Court considered Alper's extraneous factual allegations, this Court may decide that it is appropriate to convert the Claim Objection to a motion for summary judgment under Federal Rule of Civil Procedure 12(b)(6) or 12(c). As discussed more fully below in light of the Bankruptcy Court's refusal to allow the Flakes a chance to conduct discovery, summary judgment relief was improper. Furthermore, this matter is rife with material issues of fact that could not be decided as a matter of law by the Bankruptcy Court.

Second, it was error for the Bankruptcy Court to apply a preponderance of the evidence standard to the Flakes' claims. Alper was able to avoid discovery based on its representation that the Claim Objection was a motion to dismiss. It was patently unfair for the Bankruptcy Court to later disallow the Flakes' claims based on the Flakes' purported failure to prove their claims by a preponderance of the evidence. As shown below, the Flake Proofs of Claim and the Flake Response provide sufficient allegations and evidentiary material to clear the modest hurdles necessary to defeat a motion to dismiss.

The error resulting from the Bankruptcy Court's failure to treat the Claim Objection as a motion to dismiss was exacerbated by the court's misinterpretation of applicable Tennessee law regarding assumed duty. In denying the Flakes' claims, the Bankruptcy Court found that the Flakes could not, as a matter of law, prove that Alper owed the Flakes a duty (one of the elements of the negligence cause of action asserted against Alper) under an assumed duty theory. In doing so, the Bankruptcy relied on an incorrect representation made by Alper's counsel that the Flakes were required to show their harm was due to reliance on Alper's remediation efforts in Dickson, Tennessee. As discussed below, Tennessee state law has no such requirement and "reliance" is only one means by which a court can impose an assumed duty on a defendant.

## VII.
## ARGUMENT

**A.   THE BANKRUPTCY COURT ERRED IN RELYING ON FACTS OUTSIDE THE FACE OF THE FLAKES' PROOFS OF CLAIM AND THE MATERIALS SUBMITTED WITH THE FLAKE RESPONSE**

**1.   When considering Alper's Claim Objection, the Bankruptcy Court was limited to a review of the Flake Proofs of Claim and the evidence submitted with the Flake Response.**

Although Alper portrayed its Claim Objection as a motion to dismiss in order to avoid discovery, the Claim Objection contained allegations outside the face of the Flake Proofs of

Claim (Bankr. Dkt. No. 67).  Furthermore, the Fink Declaration filed in support of the Claim

Objection contained allegations and evidentiary material not referenced in or included with the

Flake Proofs of Claim (Bankr. Dkt. No. 68 and Exhibits thereto).  In the face of the ambiguous

nature of the Claim Objection, the Flakes included with the Flake Response evidence relied upon

by the Flakes when submitting the Flake Proofs of Claim.

       Generally, when considering a motion to dismiss, courts should not consider allegations

made outside of the pleadings.  FED. R. CIV. P. 12(b)(6); FED. R. CIV. P. 12(c); *DeRosa v. Jacone*,

156 B.R. 740, 743 (Bankr. S.D.N.Y. 1993) ("In deciding a motion for judgment on the pleadings,

a court will only consider statements which appear in the pleadings"); *In re Edwards*, No. 96-

17868DWS, 1999 WL 223506 at *1 n. 1 (Bankr. E.D. Pa. April 13, 1999).  However, when a

party introduces evidence that was relied upon by a plaintiff when filing its complaint, a court

may consider such evidence when determining whether the plaintiff's claims can survive a

motion to dismiss.  *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277

B.R. 20, 29 (S.D.N.Y. 2002) (quoting, in part, *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.

2000), when holding that "[in the context of a motion to dismiss], the Second Circuit has held

that a complaint is deemed to 'include . . . documents that the plaintiffs either possessed or knew

about and upon which they relied in bringing the suit'").  Thus, it was proper for the Bankruptcy

Court to consider the materials submitted with the Flake Response in addition to the Flake Proofs

of Claim when determining whether the Flakes stated a claim as a matter of law.  *See id*.

However, it was improper for the Bankruptcy Court to consider the evidence submitted with and

allegations made in Alper's Claim Objection and the Fink Declaration, absent a showing that the

Flakes relied upon such evidence when submitting the Flake Proofs of Claim.  *See id*.  Because

Alper did not even attempt to make such a showing, its factual allegations should not have been

considered by the Bankruptcy Court. However, it is clear from the Bankruptcy Court's Bankruptcy Order that the Bankruptcy Court improperly relied on allegations made in Alper's Claim Objection and the Fink Declaration when deciding the sufficiency of the Flakes' claims.

      **2.** **In the Bankruptcy Order, the Bankruptcy Court references numerous allegations made by Alper that do not appear in the Flake Proofs of Claim or the materials submitted with the Flake Response.**

      The Bankruptcy Court's Bankruptcy Order references numerous factual allegations that did not appear in the Flake Proofs of Claim or the Flake Response, indicating that the Bankruptcy Court improperly considered the allegations in the Claim Objection and Fink Declaration. For example, in the Bankruptcy Order, the Bankruptcy Court relied on the vague allegation made by Alper that the existence of TCE contamination in Dickson, Tennessee, was "widely known" since the mid-1980's (Bankr. Dkt. No. 123 at p. 2; Bankr. Dkt. No. 133 at p. 18, lines 15-17). The Bankruptcy Court further relied on the allegation made by Alper that Saltire— not Alper—worked under the auspices of state and federal environmental regulatory authorities to investigate and remediate the TCE contamination (Bankr. Dkt. No. 123 at p. 2). Moreover, the Bankruptcy Court relied on the representation of Alper that it had no relationship with Saltire during the time the Dickson Plant was operating (Bankr. Dkt. No. 123 at p. 2, 6). The Bankruptcy Court also relied on the allegation made by Alper during the January 8, 2008, hearing regarding the circumstances under which Alper acquired Saltire (Bankr. Dkt. No. 123 at p. 2 n. 1). Furthermore, the Bankruptcy Court considered the settlement between the Flakes, the City of Dickson, Tennessee, and the County of Dickson, Tennessee, which information did not appear in the Flake's allegations, noting that "Alper asserts that the Flake Plaintiffs' share of any recovery the County receives from Saltire will be de minimis" (Bankr. Dkt. No. 123 at p. 3 and n. 4). Finally, the Bankruptcy Court also noted the unsubstantiated assertion made by Alper that

the Flakes failed to perform a proper investigation or due diligence with respect to the water quality of their property before purchasing it (Bankr. Dkt. No. 123 at p. 4).

None of these allegations were properly before the Bankruptcy Court. Therefore, the Bankruptcy Court was obliged not to consider the allegations. In relying on these extraneous allegations, the Bankruptcy Court committed error.

### 3. To the extent this Court finds that the Claim Objection was converted to a motion for summary judgment, the relief granted by the Bankruptcy Court was still improper in the absence of discovery.

Because the Bankruptcy Court considered factual allegations outside the face of the Flake Proofs of Claim, this Court may find that the Claim Objection was converted to a motion for summary judgment under Federal Rule of Civil Procedure 12(b)(6) or 12(c). FED. R. CIV. P. 12(b)(6);[4] FED. R. CIV. P. 12(c).[5] If so, the then the requirements of Federal Rule of Civil

---

[4] Federal Rule of Civil Procedure 12(b)(6) provides in relevant part as follows:

> **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, *and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*

FED. R. CIV. P. 12(b) (emphasis added).

[5] Federal Rule of Civil Procedure 12(c) provides in relevant part as follows:

> **(c) Motion for Judgment on the Pleadings**. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and

Procedure 56, which is made applicable to this proceeding by Federal Rule of Bankruptcy

Procedure 7056, apply.   FED. R. CIV. P. 12(b)(6); FED. R. CIV. P. 12(c); *see also,* FED. R. BANKR.

P. 7056; FED R. CIV. P. 56.  Federal Rule of Civil Procedure 56(c) provides, in pertinent part, as

follows:

> The judgment sought shall be rendered forthwith ***if the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the affidavits,
> if any, show that there is no genuine issue as to any material fact*** and that the
> moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c) (emphasis added).

Federal Rule of Civil Procedure 56 clearly contemplates that discovery be conducted

prior to a grant of summary judgment relief.  The Bankruptcy Court, however, expressly denied

the Flakes an opportunity to conduct discovery at the December 13, 2008, hearing.  Therefore,

the requirements of Rule 56(c) were not met, because discovery was never conducted in the

contested matter.

As shown above, the Bankruptcy Court committed error by relying on Alper's extraneous

factual allegations when disallowing the Flakes' claims, whether this Court treats the Claim

Objection as a motion to dismiss or a motion for summary judgment.

**B.    THE BANKRUPTCY COURT ERRED IN REQUIRING THE FLAKES TO PROVE THEIR CLAIMS
BY A PREPONDERANCE OF THE EVIDENCE .**

In its analysis of the Flakes' claims, the Bankruptcy Court erroneously applied a

preponderance of the evidence burden of proof.  In the Bankruptcy Order, the Bankruptcy Court

cites to the following language from *In re Spiegel, Inc.*, No. 03-11540, 2007 WL 2456626

(Bankr. S.D.N.Y. Aug. 22, 2007):

---

> all parties shall be given reasonable opportunity to present all material made
> pertinent to such a motion by Rule 56.

FED. R. CIV. P. 12(c).

The burden of proof of claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid . . . [and] the . . . burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal enforce to the *prima facie* case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, *the burden reverts to the claimant to prove the validity of the claim **by a preponderance of the evidence***. The burden of persuasion is always on the claimant.

(Bankr. Dkt. No. 123 at p. 5) (quoting *In re Spiegel, Inc*., No. 03-11540, 2007 WL 2456626, *3 (Bankr. S.D.N.Y. Aug. 22, 2007) (emphasis added)). The Bankruptcy Court then goes on to state that "[t]he Court finds as a matter of law that the Flake Plaintiffs have failed to meet this burden" (Bankruptcy Order at 6). In applying a preponderance of the evidence standard to the claims of the Flakes, the Bankruptcy Court committed error. Regardless of whether the Claim Objection was actually a motion to dismiss or an improper motion for summary judgment, the burden on the Flakes as non-movants was much less onerous than the preponderance of the evidence burden imposed by the Bankruptcy Court.

1. **If the Claim Objection is considered a motion to dismiss for failure to state a claim, then the preponderance of the evidence standard applied by the Bankruptcy Court was improper.**

If this Court determines that the Claim objection was a motion to dismiss for failure to state a claim, the sole issue is whether the Flakes alleged facts sufficient to support any possible cause of action against Alper. *Raine v. Lorimar Prods., Inc.*, 71 B.R. 450, 452-53 (S.D.N.Y. 1987) ("[O]n a motion to dismiss the court must examine the complaint to determine whether the allegations provide for relief on any possible theory."). When reviewing the Flake Proofs of Claim, the Bankruptcy Court was required to take all factual allegations made by the Flakes as

true and to consider the allegations in the light most favorable to the Flakes.  *See Juster Assocs.*

*v. City of Rutland, Vermont*, 901 F.2d 266, 269 (2d Cir. 1990) ("[F]or purposes of Rule 12(b)(6),

we view all facts and allegations in the complaint in the light most favorable to [the non-

movant]."); *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989 ) ("In evaluating a Rule

12(c) motion, the court must view the pleadings in the light most favorable to, and draw all

reasonable inferences in favor of the nonmoving party. . . . The court must also take the 'well-

pleaded material facts alleged in the complaint . . . as admitted'"); *see also In re HRT Indus.,*

*Inc.*, 29 B.R. 861, 863 (Bankr. S.D.N.Y. 1983).  Furthermore, the Flakes were not required to

state with precision all the elements necessary to give rise to their claims, but only to allege facts

from which an inference could be drawn that evidence on the material points for their claims

would be introduced at trial.  *Raine*, 71 B.R. at 454 ("A complaint should not be dismissed for

failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts

in support of his claim that would entitle him to relief."); *In re Black & Geddes, Inc*., 16 B.R.

148, 151 (Bankr. S.D.N.Y. 1981) (opining that, if within framework of complaint some evidence

may be introduced which could sustain grant of relief, complaint is sufficient and can withstand

motion to dismiss); *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978);

*Newton v. Kroger Co.*, 501 F.Supp. 177, 179 (E.D. Ark. 1980) (stating that a claim should

survive motion to dismiss if it sets out facts sufficient for court to infer that all required elements

of cause of action are present).

    Thus, the threshold showing for a claimant to survive a motion to dismiss is much lower

than the preponderance of the evidence burden imposed by the Bankruptcy Court.   If the Claim

Objection is considered a motion to dismiss, the Flakes were only required to show that their

Proofs of Claim were adequately detailed to put Alper on notice of the specific nature of the

claims against it and to assure the Bankruptcy Court that there was at least some basis in fact for

the allegations. *See Raine*, 71 B.R. at 455. The Flake Proofs of Claim unequivocally met this

standard.[6] Moreover, the Bankruptcy Court's application of a preponderance of the evidence

standard, besides being simply the wrong standard to apply to the Flakes' claims, was an unfair

standard to impose on the Flakes considering the Bankruptcy Court denied the Flakes an

opportunity to conduct discovery before responding to the Claim Objection.

2. **If the Claim Objection is considered a motion for summary judgment, then the preponderance of the evidence standard applied by the Bankruptcy Court was nonetheless improper.**

If this Court determines that the Claim Objection was converted to a motion for summary

judgment by virtue of the Bankruptcy Court's consideration of Alper's extraneous allegations—

and assuming for the sake of argument that summary judgment relief was not improper in the

absence of discovery—then the preponderance of the evidence standard applied by the

Bankruptcy Court was still erroneous. In a summary judgment context, the moving party—here,

Alper—must initially satisfy the burden of demonstrating the absence of a genuine issue of

material fact, which can be done by a showing that there is an absence of evidence to support the

nonmoving party's case. *In re Chateaugay Corp.*, 146 B.R. 339, 345 (S.D.N.Y. 1992). If the

moving party meets its burden, then the nonmoving party must meet a burden of coming forward

with specific facts showing that there is a genuine issue for trial. *Id.* When determining whether

---

[6] In the Flake Proofs of Claim and the Flake Response, the Flakes alleged that Alper was directly involved with the remediation of the Dickson Plant contamination, by virtue of an Alper employee who controlled and managed the remediation. The Flakes also alleged that Alper negligently failed to take adequate action to prevent the migration of TCE contaminants from the Dickson Plant to surrounding properties—including the Bruce Road Property and the Investment Property. Finally, the Flakes alleged that the migration of TCE contaminants from the Dickson Plant site onto the Flakes' property resulted in the contamination of their property, which caused a diminution of the value of the property. These allegations were adequately detailed to put Alper on notice of the specific nature of the claims against it.

the non-movant has shown a material issue of fact, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Id.* The presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of a summary judgment motion. *Id.*

Thus, the threshold showing for a claimant to survive a motion for summary judgment is much lower than the preponderance of the evidence burden imposed by the Bankruptcy Court. If this Court considers the Claim Objection a motion for summary judgment, then Alper had the initial burden of showing that the Flakes failed to present evidence of an essential element of the Flakes' claims. *See id.* Again, assuming for the sake of argument that Alper made such a showing, the Flakes were only required to come forward with specific facts showing a genuine issue for trial.[7] *See id.* Thus, to the extent this Court considers the Claim Objection to be a motion for summary judgment, the Bankruptcy Court erred in applying the wrong burden of proof when disallowing the Flakes' claims.

C.    **THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT, AS A MATTER OF LAW, ALPER HAD NO CONNECTION WITH THE TCE REMEDIATION IN DICKSON, TENNESSEE.**

1.    **The Bankruptcy Court's finding that the Flakes set forth no facts that Alper participated in or oversaw the remediation of the Dickson, Tennessee, TCE contamination was erroneous.**

The Bankruptcy Court erroneously concluded that the Flakes provided no allegations that Alper participated in or oversaw the remediation of the Dickson, Tennessee, TCE contamination (*See* Bankr. Dkt. No. 123 at p. 9).

In the State Court Complaint, which was attached to the Flake Proof of Claim, the Flakes alleged, *inter alia*, the following:

_____

[7] As shown below, this matter was rife with genuine issues of fact that precluded summary judgment.

- "On May 11 and 14, 1993, Scovill/Schrader's environmental consultants[8] tested privately owned wells close to the Facility. The test results showed TCE levels far above proper maximum contaminant levels" (Bankr. Dkt. No. 105, Ex. A at p. 6, ¶ 26).

- "Defendants[9] negligently failed to monitor and/or investigate contamination resulting from TCE storage and disposal facilities on-site and at the Landfill. Also, Defendants knew of significant TCE groundwater contamination at the Facility for many years, and negligently failed to take action to prevent the TCE from migrating from the Facility and/or warn Plaintiffs of the existence of TCE contamination or the dangers posed by TCE" (Bankr. Dkt. No. 105, Ex. A at p. 9, ¶ 48).

In the Flake Response, the Flakes clarified that Alper's liability for failing to monitor or investigate the TCE contamination and for failing to prevent the migration of TCE contaminants was based on Alper's control over and management of the remediation of the Dickson, Tennessee, TCE contamination. The Flakes explained to the Bankruptcy Court that their allegations of Alper's control of the Dickson remediation had at least two bases: (i) the obligations and rights of Alper under the Management Agreement and (ii) the management of the Dickson remediation by Nicholas Bauer, whom the Flakes asserted acted in his capacity as an employee of Alper while managing the remediation.[10]

The Flakes provided the Bankruptcy Court with deposition testimony of Nicholas Bauer (a dual officer of Alper and Saltire and an employee of Alper) and Robert Bertellotti (Alper's President) that supported their assertion that Alper controlled the remediation of TCE

---

[8] As discussed above, the Flakes explained to the Bankruptcy Court in their Response that they allege Alper acted as an environmental consultant to Saltire by virtue of a November 30, 1992, management agreement between Alper and Saltire, which was subsequently amended in January 1, 1995 (*See* discussion *supra* § V(B)(3)(c)).

[9] In the State Court Complaint, the definition of "Defendants" includes, among others, Alper Holdings U.S.A., Inc. (Bankr. Dkt. No. 105, Ex. A at p. 1).

[10] Had the Flakes been given the opportunity to conduct discovery before responding to the Claims Objection, it is likely that further facts supporting the Flakes' allegation that Alper controlled the TCE remediation in Dickson, Tennessee, would have come to light.

contamination in Dickson after acquiring Saltire.  For example, the Flakes pointed to testimony by Mr. Bertellotti that Mr. Bauer was an employee of Alper, which paid his salary and "loaned [him] out as needed to various subsidiaries" (Bankr. Dkt. No. 105, Ex. D at p. 86, lines 23-25 through p. 87, lines 1-2).  The Flakes also provided the Bankruptcy Court further testimony by Mr. Bertellotti to the effect that "[Mr. Bauer] was hired specifically—in effect, specifically for the purpose—if it wasn't for Saltire's environmental issues, Nick Bauer wouldn't have been hired.  He was hired for the purpose of dealing with Saltire's environmental issues."  The Flakes pointed out that, given the fact that Alper has never asserted Mr. Bauer was an employee of Alper, these statements by Mr. Bertellotti could have no other meaning than Mr. Bauer was hired by Alper to manage Saltire's remediation endeavors—including the remediation of TCE contamination in Dickson, Tennessee (Bankr. Dkt. No. 105 at p. 6).  Finally, the Flakes pointed to testimony by Mr. Bauer indicating that, although he was an officer of both Saltire and Alper, he considered himself an employee of Alper—not Saltire (Bankr. Dkt. No. 105, Ex. E at p. 113, line 22 through p. 114, line 3 & p. 126, lines 3-5).  This evidence, at the very least, raised an issue of fact as to whether Mr. Bauer's management of the Dickson, Tennessee, TCE contamination was conducted on behalf of Alper or Saltire.  This issue of fact precluded the disallowance of the Flakes' claims under either a motion to dismiss standard or a motion for summary judgment standard.

      **2.    The Bankruptcy Court erred in finding that, as a matter of law, Nicholas Bauer was not acting on behalf of Alper when managing the Dickson contamination remediation because, under *United States v. Bestfoods*, 118 S.Ct. 1876 (1998), such an issue is factual in nature and cannot be decided as a matter of law.**

The Bankruptcy Court, misapplying the Supreme Court's analysis in *United States v. Bestfoods,* 524 U.S. 51, 118 S.Ct. 1876 (1998), erroneously held that, as a matter of law, Mr.

Bauer's involvement in the Dickson, Tennessee, remediation was not sufficient to impose liability on Alper, because Mr. Bauer was a dual officer.

In *Bestfoods*, a CERCLA case, the Supreme Court recognized that "derivative liability cases are to be distinguished from those in which 'the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management' and 'the parent is directly a participant in the wrong complained of.'" *United States v. Bestfoods*, 524 U.S. 51, 65, 118 S.Ct. 1876, 1886 (1998). The Supreme Court then opined that a corporate parent that actively participates in, and exercises control over, the operations of a subsidiary's contaminating facility may be held directly liable in its own right as an operator of the facility. *Id.* at 1886. In so opining, the Supreme Court stated that the issue of whether a parent exercised control over the operation of its subsidiary's facility was an issue of fact that could not be determined as a matter of law. *Id.* at 1888-89. While acknowledging that "courts generally presume that the directors are wearing their subsidiary hats and not their parent hats when acting for the subsidiary," *Id.* at 1888 (internal quotations omitted), the Supreme Court recognized that "a dual officer or director might depart so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the subsidiary in operating the facility." *Id.* at 1889.

Here, the Bankruptcy Court erred in determining that Alper could not be held liable for Mr. Bauer's management and control of the negligent remediation at the Dickson Plant as a matter of law. In *Bestfoods*, the Supreme Court recognized that the existence of dual officers is not sufficient to determine the control of a parent over the facility of a subsidiary as a matter of law. Instead, a factual analysis is required. The allegations and evidence presented by the Flakes, at the very least, raised an issue of fact as to whether Nicholas Bauer was serving Alper,

24

even when ostensibly acting on behalf of Saltire in managing and controlling the TCE

remediation in Dickson, Tennessee.  Regardless of whether the Claim Objection is considered a

motion to dismiss or a motion for summary judgment, this issue of fact precluded the

disallowance of the Flakes' claims.

### D. THE BANKRUPTCY COURT ERRED IN CONCLUDING THAT, AS A MATTER OF TENNESSEE STATE LAW, ALPER OWED NO DUTY TO THE FLAKES.

In disallowing the Flakes' claims, the Bankruptcy Court incorrectly applied Tennessee

state law.  More particularly, the Bankruptcy Court erroneously held that the Flakes' negligence

claims against Alper were barred as a matter of law, because, "[t]o prevail . . . on a claim under

the so-called "Good Samaritan" rule, one must demonstrate reliance on the undertaking to the

detriment of the plaintiffs." (Bankruptcy Order at 8).

Tennessee Courts have adopted Restatement (Second) of Torts, Section 324(A)(a)-(c)

when considering the issue of assumed duty.  *Biscan v. Brown*, 160 S.W.3d 462, 483 (Tenn.

2005); *Collins v. Arnold*, No. M2004-02513-COA-R3-CV, 2007 WL 4146025 at * 14 (Tenn. Ct.

App. 2007) (citing *Biscan v. Brown* and recognizing "the Tennessee Supreme Court has quoted

and applied the conditions set out in Restatement § 324A(a)-(c) in a context indicating that those

conditions establish the applicable bases for liability when there has been a breach of the

assumed duty of reasonable care"); *Anderson v. City of Chattanooga*, 978 S.W.2d 105, 107

(Tenn. Ct. App. 1998) (recognizing that Tennessee courts have adopted the Restatement

(Second) of Torts, Section 324A (1965)).

Restatement (Second) of Torts, Section 324A (1965), provides as follows:

> One who undertakes, gratuitously or for consideration, to render service to
> another which he should recognize as necessary for the protection of a third party
> or his things, is subject to liability to the third person for physical harm resulting
> from his failure to exercise reasonable care to protect his undertaking, if

    (a) his failure to exercise reasonable care increases the risk of such harm, ***or***

    (b) he has undertaken to perform a duty owed by the other to the third person, ***or***

    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS, § 324A (1965) (emphasis added).

       The three prongs of the Section 324A analysis are disjunctive. Thus, as the Tennessee Supreme Court has recognized, reliance of a third person is not required for a tortfeasor to assume a duty to such third person. For example, in *Biscan*, the Tennessee Supreme Court rejected an argument by the defendant that, because the injured parties had not relied on the defendant's protection, he could not be liable under the assumption of a duty rationale. *Biscan*, 160 S.W.3d at 483. In doing so, the Tennessee Supreme Court recognized that reliance is but one of the three alternatives set out in Section 324A. *Id.* (stating "having undertaken a duty to protect his guests . . . reliance of any of the guests on [the defendant's] protection was not required…. [The defendant] is liable if either '(a) his failure to exercise reasonable care increases the risk of such harm, *or* (b) he has undertaken to perform a duty owed by the other to the third person, *or* (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.'"). Thus, the Tennessee Supreme Court made clear that a defendant could be liable if any of the three conditions in Section 324A are present, not just reliance. *Id.* Here, the Flakes have alleged that Alper's negligent remediation of the Dickson, Tennessee, TCE contamination allowed TCE contaminants to migrate onto the Flake's property. Alper's failure to exercise reasonable care unnecessarily resulted in the Flakes' damages. Therefore, under Tennessee state law, Alper assumed a duty, which it breached to the Flakes' detriment.

E.    **The Bankruptcy Court erred in concluding that the Flakes' alter ego claims against Alper could not be asserted as a matter of law.**

In its Claim Objection, Alper incorrectly asserted that the Flakes were barred from asserting alter ego claims against Alper, because those claims were purportedly released by Saltire during its bankruptcy case. The Bankruptcy Court, however, did not address this contention in the Bankruptcy Order. Instead, the Bankruptcy Court erroneously concluded that, as a matter of law, the Flakes' alter ego claims were barred, because: (i) "the fact that Alper and Saltire had a common employee[11] is insufficient to hold Alper liable for Saltire's alleged contamination or remediation" and (ii) "the mere existence of the Management Agreement alone is . . . insufficient to impose such liability where the Flake Plaintiffs have not alleged any fact to support their claim that Alper participated (negligently or otherwise) in the remediation" (Bankr. Dkt. No. 123 at p. 11).

As has been discussed, the Flakes were not required to prove their claims by the preponderance of the evidence standard applied by the Bankruptcy Court. At the very most, the Flakes were required to present sufficient evidence to raise an issue of fact. For the reasons stated above, the allegations made in the Flake Proofs of Claim and the evidence submitted in the Flake Response sufficiently raised an issue of fact, which precluded the Bankruptcy Court from disallowing the Flakes' claims as a matter of law.

## VIII.
## CONCLUSION

The Bankruptcy Court committed reversible error in (1) relying on facts outside the face of the Flake Proofs of Claim and the materials submitted with the Flake Response, thereby

---

[11] Alper has never contended that Nicholas Bauer was an employee of Saltire. Presumably, the Bankruptcy Court meant to refer to the fact that Mr. Bauer was a common officer of Saltire and Alper.

converting Alper's Claim Objection to an improper motion for summary judgment; (2) applying

a preponderance of the evidence burden of proof to the Flake Proofs of Claim; (3) concluding

that, as a matter of law, Alper did not control the remediation of the Dickson TCE contamination

through its employee, Nicholas Bauer; and (4) misapplying Tennessee state law regarding

Alper's assumption of liability for the remediation of the Dickson TCE contamination.

　　　　For the foregoing reasons, the Flakes respectfully pray: (1) that the Bankruptcy Court's

Memorandum Decision and Order Granting Objection of Alper Holdings USA, Inc. to Proofs of

Claim (Claim Nos. 20 and 21) Filed by Flake Plaintiffs be VACATED; (2) that this contested

matter be REMANDED to the Bankruptcy Court for further proceedings; and (3) that the Flakes

be granted such other and further relief to which they may be entitled.

Dated: March 31, 2008.　　　　　　　　　/s/ Douglas T. Tabachnik_____
　　　　　　　　　　　　　　　　　　　Douglas T. Tabachnik, Esq. (DT 6337)
　　　　　　　　　　　　　　　　　　　**LAW OFFICES OF**
　　　　　　　　　　　　　　　　　　　**DOUGLAS T. TABACHNIK, P.C.**
　　　　　　　　　　　　　　　　　　　Woodhull House
　　　　　　　　　　　　　　　　　　　63 W. Main Street, Suite C
　　　　　　　　　　　　　　　　　　　Freehold, New Jersey 07728
　　　　　　　　　　　　　　　　　　　Telephone: (732) 792-2760
　　　　　　　　　　　　　　　　　　　Facsimile: (732) 792-2761

　　　　　　　　　　　　　　　　　　　and

　　　　　　　　　　　　　　　　　　　Sander L. Esserman, Esq.
　　　　　　　　　　　　　　　　　　　Cliff I. Taylor, Esq.
　　　　　　　　　　　　　　　　　　　STUTZMAN, BROMBERG, ESSERMAN
　　　　　　　　　　　　　　　　　　　& PLIFKA, a Professional Corporation
　　　　　　　　　　　　　　　　　　　2323 Bryan Street, Suite 2200
　　　　　　　　　　　　　　　　　　　Dallas, Texas 75201
　　　　　　　　　　　　　　　　　　　Telephone: (214) 969-4900
　　　　　　　　　　　　　　　　　　　Facsimile: (214) 969-4999

　　　　　　　　　　　　　　　　　　　**ATTORNEYS FOR**
　　　　　　　　　　　　　　　　　　　**RAY AND CATHY FLAKE**