**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x
In re:                                              :        Chapter 11
                                                    :        Case No. 07-12148 (BRL)
ALPER HOLDINGS USA, INC.,                           :
                                                    :
                                    Debtor.         :
———————————————————— x
                                                    :
RAY AND CATHY FLAKE,                                :
                                                    :
                                    Appellants,     :        District Court
                                                    :        Case No. 08-cv-02489-CM
            -against-                               :
                                                    :
ALPER HOLDINGS USA, INC.,                           :
                                                    :
                                    Appellee.       :
———————————————————— x


## BRIEF OF APPELLEE


MILBANK, TWEED, HADLEY & M<sup>C</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

*Counsel for Debtor-Appellee Alper Holdings USA, Inc.*

# TABLE OF CONTENTS

**PAGE**

Counter-Statement Of Issues Presented ........................................................................1

Summary Of Argument ................................................................................................1

Standard of Review ....................................................................................................3

Factual Background ....................................................................................................4

     A.    Alper's Chapter 11 Case ..................................................................5

     B.    Flake Claims and Discovery Requests ...............................................6

     C.    Dismissal Order ............................................................................11

Argument ................................................................................................................11

     I.  Dismissal Order Should Be Affirmed .................................................11

          A.    Standard for Motion to Dismiss ..................................................12

          B.    Alper Has No Direct Liability to Flake Claimants.......................15

          C.    Actions Incident to Status as Shareholder Insufficient to Establish Liability Against Parent..................................................15

          D.    No Liability Under Tennessee Law ..............................................21

          E.    Flake Claimants Have Not Alleged Any Specific Facts that Alper Engaged in Remediation Activities.....................................23

          F.    Alper Has No Indirect Liability to Flake Claimants .....................24

     II.  Bankruptcy Court Properly Exercised Discretion In Denying Flake Claimants' Requests For Discovery Or To Further Amend Claim ............................................................29

          A.    Discovery Not Warranted............................................................29

          B.    Denial of Amendment to Claim Within Bankruptcy Court's Discretion ...................................................................................30

CONCLUSION ........................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

Ackerman v. Local Union 363, Int'l Bhd. of Elec. Workers, 423 F. Supp. 2d 125
  (S.D.N.Y. 2006) ....................................................................................................13

Am. Protein Corp. v. AB Volvo, 844 F.2d 56 (2d Cir. 1988)...........................................27

Am. Sav. Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.), 330 F.3d 104
  (2d Cir. 2003) ......................................................................................................28

Apace Commc'ns, Ltd. v. Burke, 522 F. Supp. 2d 509 (W.D.N.Y. 2007) ......................22

Arena Dev. Group, LLC v. Naegele Commc'ns, Inc., No. 06-02806, 2007 WL 2506431
  (D. Minn. Aug. 30, 2007)....................................................................................12

Ballew v. Black, 06-00070, 2006 WL 3193379 (E.D. Ky. Nov. 1, 2006).......................22

Bavaria Int'l Aircraft Leasing GMBH v. Clayton, Dublier & Rice, Inc., No. 03-00377,
  2003 WL 21767739 (S.D.N.Y. 2003) .................................................................16

Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)..................................................11, 12

Bush v. O.P.E.I.U. Local 153, 499 F. Supp. 2d 571 (S.D.N.Y. 2007).............................11

Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41 (2d Cir. 2003) ..................................23

Cerasani v. Sony Corp., 991 F. Supp. 343 (S.D.N.Y. 1998)..............................................4

Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.,
  310 F. Supp. 2d 592 (S.D.N.Y. 2004)............................................................18, 19

Cooley v. Unique Vacations, Inc., No. 04-00141, 2005 WL 2757249
  (E.D. Ky. Oct. 25, 2005) .....................................................................................20

Cruden v. Bank of New York, 957 F.2d 961 (2d Cir. 1992).........................................3, 28

DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.), 151 F.3d 75 (2d Cir. 1998)..............3, 28

Duke Energy Trading & Mktg. LLC v. Enron Corp. (In re Enron Corp.), No. 01-16034,
  2003 WL 1889040 (Bankr. S.D.N.Y. Apr. 17, 2003) ...................................25, 26

Francisco v. Bowman, No. 03-05527, 2004 WL 1794593 (6th Cir. Aug. 10, 2004).......26

Ganino v. Citizens Utils. Co., 228 F.3d 154 (2d Cir. 2000)............................................13

Grandon v. Merrill Lynch & Co., 147 F.3d 184 (2d Cir. 1998)......................................11

Ham v. Hosp. of Morristown, Inc., 917 F. Supp. 531 (E.D. Tenn. 1995)........................20

Howard Hughes Props., L.P. v. FPFI Creditor Trust, No. 01-02528, 2002 WL 373558
    (N.D. Tex. Mar. 7, 2002)........................................................................................................8

In re Adelphia Commc'n Corp., 322 B.R. 509 (Bankr. S.D.N.Y. 2005) ...........................................19

In re AlphaStar Ins. Group Ltd., 383 B.R. 231 (Bankr. S.D.N.Y. 2008)............................................12

In re Calpine Corp., No. 05-60200, 2007 WL 4326738 (S.D.N.Y. Nov. 21, 2007) ............................3

In re Eagle Enters., Inc., 265 B.R. 671 (E.D. Pa. 2001).......................................................................25

In re Flag Telecom Holdings, Ltd. Sec. Litig., 352 F. Supp. 2d 429 (S.D.N.Y. 2005).....................22

In re Levine, No. 02-03492, 2007 WL 594963 (S.D.N.Y. Feb. 27, 2007) .........................................28

In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371 (S.D.N.Y. 2001)............................22

In re Mediators, Inc., No. 91-12980, 1996 WL 297086 (S.D.N.Y. June 4, 1996)............................22

In re Mr. Goodbuys of N.Y. Corp., Inc., 164 B.R. 24 (Bankr. E.D.N.Y. 1994) ...............................28

In re NAHC, Inc. Sec. Litig., 306 F.3d 1314 (3d Cir. 2002) ...............................................................4

In re Natale, 136 B.R. 344 (Bankr. E.D.N.Y. 1992) ...........................................................................28

In re Ontos, Inc., 478 F.3d 427 (1st Cir. 2007) ...................................................................................25

In re Thomson McKinnon Sec. Inc., 133 B.R. 39 (Bankr. S.D.N.Y. 1991) ......................................28

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) ......................................................................................13

Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130 (2d Cir. 1993) ...........................................25, 26

Kanter v. Feature Enters., Inc., No. 90-00332, 1993 WL 267373 (S.D.N.Y. July 15, 1993)...........28

Koch Refining v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339 (7th Cir. 1987) ........................26

Kramer v. Time Warner Inc., 937 F.2d 767 (2d Cir. 1991) .................................................................4

Landgarten v. York Research Corp., 1988 WL 7392 (Del. Ch. Feb. 3, 1988) .................................27

Manchester Equip. Co. v. American Way & Moving Co., 60 F. Supp. 2d 3 (E.D.N.Y. 1999) .........19

Masterson Pers., Inc. v. The McClatchy Co., No. 05-01274, 2005 WL 3132349
    (D. Minn. Nov. 22, 2005)....................................................................................................16

McConkey v. McGhan Med. Corp., 144 F. Supp. 2d 958 (E.D. Tenn. 2000) ............................20, 21

Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.),
    419 F.3d 115 (2d Cir. 2005)..................................................................................................3

Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260 (D. Del. 1989)............................................27

Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc., 476 F. Supp. 2d 414 (S.D.N.Y. 2005)...................19

Murray v. Miner, 876 F. Supp. 512 (S.D.N.Y. 1995) ........................................................25

O'Callaghan v. AMR Corp., No. 04-04005, 2005 WL 1498870 (N.D. Ill. 2005) ...........................16

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67 (2d Cir. 1998)......................................4

Pereira v. Cogan, No. 00-00619, 2001 WL 243537 (S.D.N.Y. Mar. 8, 2001) ...........................25, 27

Schiavone v. Pearce, 77 F. Supp. 2d 284 (D. Conn. 1999) ................................................19

Sears v. Likens, 912 F.2d 889 (7th Cir. 1990) ............................................................22

Sensient Colors, Inc. v. Kohnstamm, No. 07-03410, 2008 WL 686752
    (D. Minn. Mar. 10, 2008) ..........................................................................16

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d Cir. 2002) ................................12

St. Paul Fire & Marine Ins. Co. v. PepsiCo Inc., 884 F.2d 688 (2d Cir. 1989) ....................25

Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132 (4th Cir. 1988)........................25

United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244
    (9th Cir. 1992) .....................................................................................4

United States v. Bestfoods, 524 U.S. 51 (1998)..................................................16, 17, 24

United States v. Newmont USA Ltd., No. 05-00020, 2007 WL 2405040
    (E.D. Wash. Aug. 17, 2007) .........................................................................18

Velez v. Novartis Pharms. Corp., 244 F.R.D. 243 (S.D.N.Y. 2007) ................................19

Wright v. Giuliani, No. 99-10091, 2000 WL 777940 (S.D.N.Y. June 14, 2000) ..................11

Zervos v. Verizon N.Y., Inc., 252 F.3d 163 (2d Cir. 2001) ...........................................3

## Other Authorities

18A Am. Jur. 2d Corporations § 734 .....................................................................23

Charles Alan Wright et al., Federal Practice & Procedure § 1484 (2d ed. 1990) ...............8

Appellee Alper Holdings USA, Inc. respectfully submits this appellee brief in opposition to the brief ("App. Br.") filed by the appellants Ray and Cathy Flake (the "Flake Claimants") in support of their appeal (the "Appeal") from the Memorandum Decision and Order Granting Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by Flake Claimants (the "Dismissal Order," Apx. 1)[1] entered in the United States Bankruptcy Court for the Southern District of New York (Lifland, B.J.) (the "Bankruptcy Court").

## Counter-Statement Of Issues Presented

1.      Whether, even taking all of the Flake Claimants' allegations as true, the Bankruptcy Court was correct in dismissing the claims filed by the Flake Claimants where they did not allege any facts on which Alper could be liable.

2.      Whether the Bankruptcy Court was correct in holding that Alper cannot be held liable, directly or indirectly, for claims arising out of environmental contamination in Dickson, Tennessee.

3.      Whether the Bankruptcy Court properly held that Alper could not be the alter ego of its former subsidiary based on the allegations of the Flake Claimants and the settlement of such claims between the subsidiaries' bankruptcy estate and Alper.

4.      Whether the Bankruptcy Court properly exercised its discretion in refusing to allow the Flake Claimants to amend their proofs of claim for the third time when the Flake Claimants could not allege any plausible fact that would cause Alper to be liable.

5.      Whether the Bankruptcy Court properly exercised its discretion in denying the Flake Claimants' requests for discovery before the hearing on Alper's motion to dismiss the Flake Claimants' claims where it was unlikely that discovery would lead to any relevant information.

## Summary Of Argument

The Flake Claimants completely disregard the most basic elements of bankruptcy, tort, environmental and corporate law, and the clear and unequivocal decision of the Bankruptcy Court, in an attempt to impose liability on Alper. The harm alleged by the Flake Claimants is that

---

[1]      "Apx. __" refers to the tab numbers in the "Appendix of Items Included In Brief of Appellee."

their grandiose plans to open a water-bottling business on land they purchased in Dickson County, Tennessee – an area that for decades *before* they purchased their land was the subject of well-known and well-publicized environmental issues involving industrial solvents – was thwarted. As implausible as such allegations are, even taking all of the Flake Claimants' alleged facts as true, Alper simply cannot be liable for any harm to the Flake Claimants' property.

Alper is a holding company located in New York, New York. Alper's only connection to Dickson County is that in the 1990s, Alper became the indirect parent of an entity that previously operated a facility in Dickson, Tennessee and that allegedly contributed to the environmental issues there. Alper never disposed of anything in Dickson County and never operated in Dickson, Tennessee, a fact that is undisputed by the Flake Claimants. Recognizing this fatal failing of their claims, and without any support whatsoever, the Flake Claimants instead allege that Alper voluntarily undertook remediation of the contamination in Dickson, despite having no duty to do so.

Aside from generic "allegations" leveled at 21 defendants in the Flake Claimants' complaint in the underlying state-court action (which complaint the Flake Claimants told the Bankruptcy Court they were relying on for their claims in the Alper bankruptcy), the Flake Claimants have alleged only two facts that they assert show that they have a viable claim against Alper: (1) that Alper and its former subsidiary (the alleged primary tortfeasor) had a joint officer and (2) that Alper and its former subsidiaries were parties to a management agreement. These factual allegations are simply inadequate to render the Flake Claimants' claims plausible. The Flake Claimants failed to state any viable claim upon which relief may be granted.

The Flake Claimants also contend, without any factual allegations to support the claim, that Alper is liable as an alter ego of its former subsidiary. The alter ego claim was barred by Alper's former subsidiary's release of any such claim in its own bankruptcy, which release was part

of a court-approved settlement of claims between Alper and its former subsidiary.  The Flake

Claimants have offered no explanation as to why the release, to which they did not object, is not

effective as to their claims.  Moreover, as the Bankruptcy Court properly concluded, even in the

absence of such release, the Flake Claimants failed to assert any special circumstances that would

justify the extraordinary remedy of piercing the corporate veil such that an alter ego claim could be

sustained.

       For all of the reasons set forth herein, the Dismissal Order should be affirmed in its

entirety.

### <u>Standard of Review</u>

       Alper agrees that the proper standard of review for a motion to dismiss is *de novo*.  A

bankruptcy court's decision not to permit amendment of a proof of claim, by contrast, is committed

to the sound discretion of the bankruptcy court, and is therefore only reversible for the abuse of that

discretion.  <u>See</u> <u>Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.)</u>, 419

F.3d 115, 125 (2d Cir. 2005) (reviewing the decision of the bankruptcy court to allow or disallow

late-filed claims for abuse of discretion); <u>In re Calpine Corp.</u>, No. 05-60200, 2007 WL 4326738, at

*3 (S.D.N.Y. Nov. 21, 2007) ("A bankruptcy court's denial of leave to amend a timely-filed Proof

of Claim or a request to file a late claim is reviewed for abuse of discretion.").  In addition, a "trial

court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to

discovery are reversed only upon a clear showing of an abuse of discretion."  <u>See</u> <u>DG Creditor</u>

<u>Corp. v. Dabah (In re DG Acquisition Corp.)</u>, 151 F.3d 75, 79 (2d Cir. 1998) (quoting <u>Cruden v.</u>

<u>Bank of New York</u>, 957 F.2d 961, 972 (2d Cir. 1992)).  Under the abuse of discretion standard, the

Court should not disturb a bankruptcy court's decision unless "(1) its decision rests on an error of

law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2)

its decision – though not necessarily the product of a legal error or a clearly erroneous factual

finding – cannot be located within the range of permissible decisions." <u>Zervos v. Verizon N.Y.,</u> <u>Inc.</u>, 252 F.3d 163, 169 (2d Cir. 2001).

## **Factual Background**

Saltire Industrial, Inc. ("<u>Saltire</u>") was a major industrial company that began operations in the early 1800s and whose stock was listed for much of its existence – including the entire time it is alleged to have engaged in operations that contributed to environmental contamination in Dickson, Tennessee – on the New York Stock Exchange.[2]  <u>See</u> Debtor Saltire Industrial, Inc.'s Modified First Amended Disclosure Statement (the "<u>Saltire DS</u>"), Apx. 2, Exhibit E, at 8.  As acknowledged by the Flake Claimants (<u>see</u> App. Br. at 9), from approximately 1964 until March 1985, Saltire operated a plant located in Dickson County, Tennessee (the "<u>Dickson</u> <u>Plant</u>") where it made automotive tire valves and associated products and where TCE was used as a degreaser.  The Dickson Plant ceased operations in March 1985.

---

[2]     Although the Flake Claimants claim that the Bankruptcy Court improperly relied on material outside of the Flake Claimants' pleadings, it was entirely proper for the Bankruptcy Court (and for this Court) to take judicial notice of information that is in the public record, including public filings, in deciding a motion to dismiss.  <u>See</u> <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991); <u>see also</u> <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 75 (2d Cir. 1998); <u>In re NAHC, Inc. Sec. Litig.</u>, 306 F.3d 1314, 1331 (3d Cir. 2002) (judicial notice of stock price data compiled by Dow Jones News service);<u>United States ex</u> <u>rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992) (a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); <u>Cerasani v.</u> <u>Sony Corp.</u>, 991 F. Supp. 343, 354 n. 3 (S.D.N.Y. 1998) (taking judicial notice of widespread press coverage of a criminal trial).  Accordingly, because the bankruptcy docket and pleadings are all within the public record, it is eminently appropriate for this Court and the Bankruptcy Court to take judicial notice of such pleadings (particularly where, as here, the bankruptcy judge presiding over Alper's chapter 11 case also presided over Saltire's bankruptcy case).  However, Alper is merely providing this information as background – it is not necessary in order to rule that the Flake Claims should be dismissed as a matter of law.  Moreover, the facts mentioned in the Dismissal Order are not contentious, and the Flake Claimants do not dispute them.

In 1992, seven years after the Dickson Plant closed, and <u>decades</u> after the alleged disposal of industrial waste in Dickson County first occurred, Alper became the controlling shareholder of First City Industries Inc. ("<u>First City</u>") through First City's then-pending prepackaged chapter 11 case.  <u>See</u> App. Br. at 9; Apx. 2, Exhibit E, at 17.  Accordingly, Alper became the indirect parent company of First City's subsidiaries, including Saltire.  Notably, First City was not, and Alper did not become, a successor in interest to Saltire; Saltire did not assign any of its current or prospective liabilities to First City or Alper; and First City and Alper did not acquire or assume any of Saltire's current or prospective liabilities by operation of law or otherwise. <u>See</u> Apx. 2, Exhibit E, at 17.

On August 17, 2004, in part to deal with liabilities related to the Dickson Plant, Saltire filed a voluntary petition for relief in the Bankruptcy Court under chapter 11 of the title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>").[3]

## A.    Alper's Chapter 11 Case

On July 13, 2007 (the "<u>Petition Date</u>"), Alper commenced its case before the Bankruptcy Court under chapter 11 of the Bankruptcy Code.  Alper continues to operate its business

---

[3]    <u>See</u> <u>In re Saltire Industrial, Inc.</u>, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).  On March 8, 2006, an order (the "<u>Confirmation Order</u>, Apx. 2, Exhibit H) was entered in Saltire's bankruptcy case confirming Saltire's Modified First Amended Chapter 11 Plan of Liquidation (the "<u>Saltire Plan</u>", Apx. 2, Exhibit I).  The Saltire Plan, among other things, provided that Alper would contribute $1,000,000 in cash to the Saltire estate and release claims it held against Saltire in excess of $2,000,000 in exchange for a general release and waiver of any claims or causes of action Saltire's estate may have held against.  The Saltire Plan became effective on April 25, 2006.  <u>See</u> <u>In re Saltire Industrial, Inc.</u>, Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).  On March 8, 2006, an order (the "<u>Confirmation Order</u>, Apx. 2, Exhibit H) was entered in Saltire's bankruptcy case confirming Saltire's Modified First Amended Chapter 11 Plan of Liquidation (the "<u>Saltire Plan</u>", Apx. 2, Exhibit I).

and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

On July 25, 2007, the Bankruptcy Court entered an order establishing September 21,

2007 as the deadline for filing claims by Alper's known creditors (including the Flake Claimants).

Notice of the deadline was provided by mail to all known creditors and published in *The New York*

*Times* (National Edition), *The Nashville Tennessean* and *The Dickson Herald.*

**B.**     **Flake Claims and Discovery Requests**

On or about September 19, 2007, the Flake Claimants filed "contingent,

unliquidated, disputed" proofs of claim numbered 20 and 21 (the "Original Flake Claims") for

"property damage" in Alper's bankruptcy case.[4]   The Flake Claims included the following

paragraph as "supporting documentation":

> Creditor's property and personal damage claim arises from contamination
> by hazardous waste including Trichloroethylene ("TCE"), and [sic]
> industrial solvent used at a manufacturing facility in Dickson, Tennessee
> and is based on the independent acts and/or omissions of Alper Holdings,
> USA, Inc. in connection with said contamination.

Apx. 2, Exhibit A.

On November 14, 2007, Alper filed an objection (the "Objection") to the Original

Flake Claims, arguing that the Original Flake Claims should be disallowed and expunged because

the Flake Claimants could not and did not assert any basis therefor.

On December 4, 2007, the Flake Claimants filed their Motion (I) to Extend Time for

Filing Response to Objections of Alper Holding USA, Inc. to Proofs of Claim (Claim Nos. 20 and

---

[4]     Except for the name of the claimant, each Original Flake Claim is identical to the other
Original Flake Claim and each amended Flake Claim is identical to the other amended Flake
Claim.

21) Filed by Flake Claimants, and (II) to Continue Hearing Thereon (the "Discovery Motion"),
wherein they asserted that they required time to conduct discovery with respect to the Original
Flake Claims and the Objection.  In support of their request, the Flake Claimants claimed that they
have not been permitted to obtain discovery in the almost four years that the underlying litigation
had been pending.

Also on December 4, 2007, the Flake Claimants filed (i) their "first" set of requests
for production of documents,[5] where they requested documents in 57 separate categories, ranging
from Saltire's historical financial and corporate information, to information regarding all documents
related to a landfill in Dickson County, to any information related to Saltire's use of TCE, (ii) three
deposition notices, and (iii) twenty interrogatories.

Alper objected to the Discovery Motion because (i) the Flake Claimants failed to
allege – and could not allege consistent with their obligations under rule 9011 of the Federal Rules
of Bankruptcy Procedure – any cognizable claim against Alper, (ii) the Flake Claimants had the
opportunity for substantial pre-claim discovery with which to develop a theory of liability against
Alper – apparently without any success – in the four years that the underlying litigation had been
pending against Alper, and (iii) at the Flake Claimants' request, Saltire and Alper agreed to allow
the Flake Claimants access to **10 years** worth of documents and discovery that had been obtained
by plaintiffs in another case relating to the environmental contamination in Dickson County[6] which
alleged claims against Alper and Saltire based on the same facts asserted by the Flake Claimants.

---

[5]    In reality, this was the Flake Claimants' third request for production of documents – the
other two requests occurred in the underlying litigation.

[6]    Norman v. Scoville, et al., Case No. 383 in the Circuit Court for Dickson County, Tennessee
(the "Norman Litigation").

Holding that the Objection was akin to a motion to dismiss pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, the Bankruptcy Court refused to grant the Flake Claimants discovery.

Apparently recognizing the woeful inadequacy of the Original Flake Claims, on December 11, 2007, the Flake Claimants filed amended proofs of claim (the "Flake Claims") which attached the Fourth Amended Complaint (the "Complaint") filed by the Flake Claimants against Saltire and twenty other defendants (the "Defendants"), including Alper, in the underlying state court litigation that formed the basis for the Flake Claims.[7]

As acknowledged by the Flake Claimants (See App. Br. at 4,5), the relevant allegations of the Complaint are as follows:[8]

---

[7]    Notably, the Flake Claimants did not seek leave to file their amended Flake Claims, which were filed three months after the deadline for filing proofs of claim in these cases. Accordingly, it is doubtful that such amended claims are even properly considered.  See Howard Hughes Props., L.P. v. FPFI Creditor Trust, No. 01-02528, 2002 WL 373558, at *2-3 (N.D. Tex. Mar. 7, 2002) (upholding bankruptcy court's denial of amended proof of claim where claimant never filed a motion to allow a late claim) (citing Charles Alan Wright et al., Federal Practice & Procedure § 1484 (2d ed. 1990) ("In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval.").

[8]    Generally, the Flake Claimants contend that in 2002, they purchased property in Dickson, Tennessee with the intention of commercially bottling and selling water produced by a natural spring on the property, and formed a partnership to purchase the adjacent property with the same intention.  App. Br. at 9.  The Flake Claimants allege that their "endeavors . . . were frustrated when TCE was detected in the spring . . . ."  App. Br. at 8.  The Flake Claimants further allege that the contamination of their property was "the direct result of the migration of TCE contaminants from the Dickson Plant site through the groundwater to the[ir] properties . . . ."  App. Br. at 9.  Notably, the Flake Claimants purchased the property in Dickson County in spite of the fact that the environmental issues in Dickson, Tennessee had been known for decades.  See Apx. 2, Exhibit C  (A fact that is appropriate to take judicial notice of – the environmental issues in Dickson, Tennessee have been well-documented, as even a cursory internet search will show).

- Alper Holdings USA, Inc. is successor in interest to Scovill, Inc. and Saltire Industrial, Inc. Alper Holdings USA, Inc. is also sued herein for its own direct acts and omissions.

- Defendants[9] are sued individually and as joint-tortfeasors, aiders and abettors. The liability of Defendants arises from the fact that they, directly and/or through their predecessors in interest, alter-egos, agents, employees, and/or representatives, engaged in all or part of the acts, events, schemes and/or transactions described herein.

- Defendants are jointly and severally liable for Plaintiffs' damages. Defendants and/or through their agents, alter-egos, employees, representatives and/or predecessors in interest, substantially participated or assisted in the conduct complained of herein and had knowledge of the secret activities alleged herein or recklessly disregarded the conduct. Defendants are also jointly and severally liable for any future injunctive relief imposed by the Court.

- Defendants, either intentionally or negligently, failed to adequately monitor, control, supervise, and/or maintain the disposal of the TCE at all locations throughout Dickson.

- Defendants did not adequately warn Plaintiffs or the public about the existence of the TCE contamination or the dangers posed by the TCE.

- Defendants negligently failed to monitor and/or investigate contamination resulting from TCE storage and disposal facilities on-site and at the Landfill. Also, Defendants knew of significant TCE groundwater contamination at the [Dickson Plant] for many years, and negligently failed to take action to prevent the TCE from migrating from the Facility and/or warn Plaintiffs of the existence of TCE contamination or the dangers posed by TCE.

Even accepting all of these allegations as true (including the conclusory allegations that this Court need not consider), the Complaint simply does not state any plausible basis upon which Alper could be liable. <u>See</u> Dismissal Order, Apx. 1, at 6 (taking into account the Original Flake Claims, the Flake Claims, the Complaint <u>and</u> the additional allegations made in pleadings filed by the Flake Claimants, and holding that, as a matter of law, "Alper cannot be held liable,

---

[9]    The "Defendants" include Saltire, Alper and 19 other corporate and other entities, some of whom the Flake Claimants allege are also "successors" to Saltire.

directly or indirectly, for claims arising out of or relating to Saltire'[s] alleged contamination or remediation in Dickson Count, Tennessee").

Apparently again recognizing this fatal failing in their claims, the Flake Claimants filed their response to the Objection (the "<u>Flake Response</u>"), whereby they set forth new theories of liability and new "evidence" in a feeble attempt to avoid dismissal in the Bankruptcy Court. <u>See</u> Flake Response, Apx. 3. The Bankruptcy Court gave the Flake Claimants every opportunity to rectify the inadequacy of their claims. The Bankruptcy Court permitted the Flake Claimants to amend their proofs of claim, considered all of the allegations in the Complaint, and even looked beyond their flawed proofs of claim and Complaint to consider the new allegations raised for the first time – arguably improperly – in the Flake Response.[10] Even after being afforded such leniency, the Flake Claimants could not come up with any viable claim against Alper. Specifically, the new "evidence" that the Flake Claimants set forth in the Flake Response in "support" of their allegation that Alper should be held directly liable to them is that (1) Alper and Saltire entered into a management agreement pursuant to which Alper, as Saltire's parent, agreed to provide management services to its subsidiaries, which services **may** include supervision of various environmental matters including remediation and (2) Alper and Saltire shared an officer, Nicholas

---

[10]    In fact, at the hearing on the Objection, the Bankruptcy Court repeatedly asked if the Flake Claimants were basing their claims on the Complaint, and counsel for the Flake Claimants repeated that the Complaint "enunciates the bases upon which these claim [sic] result." Transcript of Hearing on Alper's Objection to the Flake Claims ("<u>Objection Tr.</u>"), Apx. 4, at 16; <u>see also</u> Objection Tr., Apx. 4, at 35 (where counsel for the Flake Claimants states their cause of action is stated in the Complaint and that they rely upon the Complaint to state the causes of action).

Bauer.[11]  Under clear Supreme Court precedent, these facts, **as a matter of law**, are not sufficient to state a direct or indirect claim against Alper.

## C.    <u>Dismissal Order</u>

On January 15, 2008, the Bankruptcy Court entered the Dismissal Order, dismissing the Flake Claims and holding that Alper cannot be "held liable, directly or indirectly, for claims arising out of or relating to Saltire['s] alleged contamination or remediation in Dickson County, Tennessee."  (Dismissal Order, Apx. 1, at 1.)  Specifically, the Bankruptcy Court held that (i) the Flake Claimants hid "behind a generic complaint directed at 21 different defendants without alleging any specific liability to the Flake [Claimants] owed on the part of Alper," (ii) the fact of the dual role of Nicholas Bauer and the Management Agreement are insufficient to impose even indirect liability on Alper, much less direct liability, (iii) Alper owed no duty to the Flake Claimants, and (iv) no special circumstances exist that warrant piercing the corporate veil.  (Apx. 1, at 6-12.)

Alper respectfully submits that the Dismissal Order was properly decided and should be upheld and affirmed.

<u>Argument</u>

I.

**DISMISSAL ORDER SHOULD BE AFFIRMED**

As Alper argued in the Bankruptcy Court, its Objection to the Flake Claims challenges the facial validity of the asserted contentions and therefore is in the nature of a motion to

---

[11]    These are presumably the best allegations the Flake Claimants can come up with after having access to tens of thousands of pages of documents in discovery produced in the Norman Litigation.  Unfortunately for the Flake Claimants, as discussed below, these facts

dismiss for failure to state a claim under rule 12(b) of the Federal Rules of Civil Procedure (made applicable hereto pursuant to rule 7012(b) of the Federal Rules of Bankruptcy Procedure). Accordingly, if the Flake Claimants have failed to allege any facts that would state a claim for relief that is plausible on its face, the Bankruptcy Court's dismissal of the Flake Claims must be affirmed.

## A.        Standard for Motion to Dismiss

On a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in a plaintiffs favor. Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). These "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"); see also Bush v. O.P.E.I.U. Local 153, 499 F. Supp. 2d 571, 572 (S.D.N.Y. 2007). Dismissal is proper where a plaintiff fails to plead the basic elements of a claim. Wright v. Giuliani, No. 99-10091, 2000 WL 777940, at *4 (S.D.N.Y. June 14, 2000). Significantly, given the Flake Claimants' pleadings, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted. Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002). A motion to dismiss is based on the pleadings and may be granted before discovery is conducted. In re AlphaStar Ins. Group Ltd., 383 B.R. 231, 256 (Bankr. S.D.N.Y. 2008) ("Finally, the lack of discovery is not a basis to deny [a motion to dismiss]. The liberal pleading rules do not authorize parties to use an insufficient complaint with a conclusory allegation as a hunting license to discover whether in fact a viable

---

do not demonstrate that Alper directly engaged in any activities in Dickson County and are not sufficient to allege any direct liability by Alper to the Flake Claimants.

claim may be alleged. The discovery rules are designed to support a properly pleaded cause of action and to prepare defenses to charges made not to discover whether a claim exists.").

In Bell Atlantic Corp. v. Twombly, the Supreme Court held that to "adequately state" a claim, a plaintiff must plead facts sufficient to "raise a right to relief **above the speculative level**." 127 S. Ct. at 1965 (emphasis added). As such, a complaint must include "enough facts to state a claim to relief that is **plausible** on its face." Id. at 1974. As stated in Twombly:

> While a complainant attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' **requires more than labels and conclusions**, and a formulaic recitation of a cause of action's will not do.

Id. at 1964-65 (emphasis added) (internal citations omitted) (alterations in original).

A complaint cannot simply "le[ave] open the possibility that [the] plaintiff might later establish some 'set of undisclosed facts' to support recovery." Id. at 1968. Rather, to survive a motion to dismiss, the facts set forth in the complaint must be sufficient to "nudge the claims across the line **from conceivable to plausible**." Id. at 1974; see Arena Dev. Group, LLC v. Naegele Commc'ns, Inc., No. 06-02806, 2007 WL 2506431, at *4 (D. Minn. Aug. 30, 2007) (dismissing claim that defendant corporation was agent of its board chairman because plaintiff made inadequate conclusory allegations and insufficiently alleged facts indicating how chairman controlled defendant corporation). Thus, the plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render a claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).[12]

---

[12] The Flake Claimants spend more than a page arguing for an incorrect legal standard on a motion to dismiss. See App. Br. at 18-19. Notably, the Flake Claimants do not even cite the Supreme Court decision of Twombly, which is directly on point.

For the reasons stated below, the Flake Claims do not rise above the level of speculation to plausibility – the Flake Claimants have nowhere alleged (nor could they in good faith allege) facts sufficient to establish either a direct claim against Alper or a derivative claim based on piercing the corporate veil. Because the Flake Claimants have wholly failed to amplify their bare, conclusory allegations with factual averments adequate to render their claims "plausible," the Flake Claimants fail to state any viable claims upon which relief may be granted. The allegations made by the Flake Claimants are hollow and, even if taken as true, are in no way proof of a claim that Alper is liable to the Flake Claimants.

---

In addition, the Flake Claimants argue at great length that the Bankruptcy Court relied upon improper facts in disallowing the Flake Claims and that the Objection to their claims should have been treated as a motion for summary judgment instead of a motion on the pleadings. However, nowhere do they cite one improper fact relied on by the Bankruptcy Court that would warrant treatment of the Objection as a motion for summary judgment. Specifically, the Flake Claimants allege that the Bankruptcy Court improperly relied on the following: (i) that the TCE contamination was widely known since the mid-1980s, (ii) that Saltire worked with state and federal environmental agencies with respect to the environmental contamination in Dickson, Tennessee, (iii) that Alper had no relationship with Saltire during the time that the Dickson Plant was operating, and (iv) that the Flake Claimants settled with the City and County of Dickson, Tennessee. First, all of these facts are within the public domain and it was proper for the Bankruptcy Court to take judicial notice of them. See infra n.1. Moreover, the Bankruptcy Court merely mentions these facts in passing and in no way relies upon them. Tellingly, the Flake Claimants do not dispute these facts and these facts would have no bearing on the outcome of the Flake Claims. Accordingly, these other facts were not of the sort which would require conversion of the motion to one for summary judgment. See Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 (2d Cir. 2000) ("the district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment."); Ackerman v. Local Union 363, Int'l Bhd. of Elec. Workers, 423 F. Supp. 2d 125, 127 (S.D.N.Y. 2006) ("documents and statements that are not attached to or quoted in the complaint itself, but that are incorporated by reference into the complaint and are essential to its allegations, may be considered on a motion to dismiss without converting the motion to a motion for summary judgment").

**B.**    **Alper Has No Direct Liability to Flake Claimants**

Nothing in the Flake Claims or the Complaint alleges a specific claim against Alper or any facts in support thereof.  However, even when taking into consideration the Flake Response to the Objection (their third shot before the Bankruptcy Court alone to state a claim against Alper), the Flake Claimants fail to raise their claims to the level of plausibility or to allege <u>any</u> relevant facts.  Giving the Flake Claimants the benefit of their last minute story, the Flake Claimants allege in essence that (i) Alper engaged in negligent remediation in Dickson County and that this negligent remediation allowed TCE to migrate to their property, (ii) Alper negligently failed to take action to prevent the TCE from migrating and (iii) Alper failed to warn the Flake Claimants of the existence of the TCE contamination.  <u>See</u> App. Br. at 20 n.6.  The Flake Claimants cite only two facts (and only in their pleadings in the Bankruptcy Court and in this Court, <u>not</u> in the Original Flake Claims, the late-filed amendment to their claims <u>or</u> in the complaints on which their claims were grounded) that allegedly support their claims against Alper: (1) the fact that Alper and Saltire were parties to a management agreement pursuant to which Alper agreed that it **may** provide a variety of services to Saltire, and (2) the alleged management of the Dickson remediation by Nicholas Bauer, whom the Flake Claimants assert acted in his capacity as an employee of Alper while managing the remediation, App. Br. at 22, despite the fact that he was the Vice President of Environmental Affairs **at Saltire**.  Under the most basic principles of tort, environmental and corporate law, Alper simply cannot be liable on these facts to the Flake Claimants for any harm to their property.

**C.**    **Actions Incident to Status as Shareholder**
       **Insufficient to Establish Liability Against Parent**

The mere conduct by a shareholder of activities that are consistent with and incident to legal status as a shareholder – such as electing directors, sharing officers, making bylaws and managerial responsibility – are not sufficient, as a matter of law, to establish direct liability against the parent corporation.

<u>Fact of Dual Officers Clearly Insufficient to Establish Liability</u>

The crux of the Flake Claimants' argument (raised for the first time in their eleventh hour Flake Response) is that although he may have been a Saltire officer, Mr. Bauer's management of environmental affairs for Saltire with respect to contamination in Dickson was carried out in his capacity as an official of Alper and that through Mr. Bauer, Alper directly controlled Saltire's compliance with environmental cleanup endeavors conducted under the scope of governmental regulators. App. Br. at 10-11. The Flake Claimants do not allege any facts that support this illogical and conclusory allegation, because they cannot.[13]

As the Supreme Court has made clear, the fact that a parent shares employees, directors and officers with a subsidiary does not create liability on the part of the parent for acts of the subsidiary, even in the environmental context, absent some additional showing that liability could be imposed on the parent. <u>See</u> <u>United States v. Bestfoods</u>, 524 U.S. 51, 61-62 (1998) ("Nor will a duplication of some or all of the directors or executive officers" create liability on the part of a parent corporation for the acts of its subsidiary, beyond the assets of the subsidiary) (citation omitted). In <u>Bestfoods,</u> the Supreme Court found that the lower court erroneously assumed that actions of joint officers and directors were necessarily attributable to the parent, rather than the

_____

[13]    Just as they did with the Bankruptcy Court below, the Flake Claimants attempt to mislead the Court by ignoring the undisputable fact that Mr. Bauer was also the vice-president of environmental affairs **at Saltire**. <u>Compare</u> Transcript from Bauer Deposition ("<u>Bauer Depo.</u>"), Apx. 3, Exhibit E, at 112-13 (referring to officers of Saltire, "myself, Nicholas Bauer, vice president, environmental affairs") <u>with</u> App. Br. at 10 (Nick Bauer "acted as an employee of Alper, not as an officer of Saltire"). The very documents that are misleadingly relied on by the Flake Claimants make plain that Alper is not liable. Alper never performed any of the remediation in Dickson County – negligently or otherwise – and the Flake Claimants have failed to allege otherwise. <u>See</u> Bauer Depo., Apx. 3, Exhibit E, at 125:7-11 ("The company, **that is, Saltire Industrial** is, is and has been performing the environmental investigation and remediation activities at the site under the direction of the US EPA.") (emphasis added).

subsidiary, which the Supreme Court held was "contrary to time-honored common law principles." Id. at 53-54.  The Supreme Court further held that "courts generally presume that the directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary."  Id. at 69 (citations and internal quotations omitted).  The Court explained that liability under such circumstances exists where the dual officer or director "depart[s] so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the subsidiary in operating the facility."  Id. at 71.[14]

Ignoring Bestfoods, the only factual allegations that the Flake Claimants set forth in support of their assertions of liability against Alper are that Nicholas Bauer (an officer of **Saltire**)

---

[14]    The Flake Claimants argue that the holding of Bestfoods cannot be used to grant a motion to dismiss because it was a post-trial decision.  The Supreme Court's decision explains the minimum facts that must be proven – and thus must as a predicate be alleged – to allege a cause of action.  Contrary to the Flake Claimants' contention, many courts have applied Bestfoods and dismissed claims for failing to allege the standard set forth therein.  See, e.g., O'Callaghan v. AMR Corp., No. 04-04005, 2005 WL 1498870, at *3 (N.D. Ill. 2005) (granting parent corporation's motion to dismiss  where plaintiff was trying to hold parent liable for acts of subsidiary and only allegation was that the parent conducted its business through its wholly owned subsidiary; relying on Bestfoods, the court held that "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent"); Bavaria Int'l Aircraft Leasing GMBH v. Clayton, Dublier & Rice, Inc., No. 03-00377, 2003 WL 21767739, at *3 (S.D.N.Y. 2003) (granting motion to dismiss by parent because "courts generally presume that directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary," when claimant has not alleged anything to justify departing from this presumption); Masterson Pers., Inc. v. The McClatchy Co., No. 05-01274, 2005 WL 3132349, at *5 (D. Minn. Nov. 22, 2005) (granting parent corporation's motion to dismiss where complaint did not contain factual allegations to support claim that investor was acting beyond its role as investor; allegation that parent approved strategic planning and operating budgets, and derived most of its revenue from subsidiary insufficient under Bestfoods); Sensient Colors, Inc. v. Kohnstamm, No. 07-03410, 2008 WL 686752, at *7-8 (D. Minn. Mar. 10, 2008) (granting parent's motion to dismiss claim that it was directly liable for CERCLA liability under Bestfoods where claimant did not allege facts making plausible the claim that the parent directed the workings of, managed or conducted the affairs of the polluted property).

(1) considered himself an employee of Alper and not Saltire and (2) was hired by Alper solely to "deal" with the Dickson, Tennessee contamination.  App. Br. at 10.  Unfortunately for the Flake Claimants, these facts do not allege a plausible basis for liability against Alper.  Nothing in the Flake Claims alleges that Mr. Bauer's conduct as a dual officer "depart[ed] so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the subsidiary in operating the facility."  <u>Bestfoods</u>, 524 U.S. at 71.  Notably absent from the Flake Claims are any allegations of any act taken by Mr. Bauer that could be imputed to Alper, rather than Saltire, the entity whose alleged environmental contamination was being remediated.  When viewed in the context of the <u>Twombly</u> requirement of ***plausible grounds*** to support a claim, and not simply some allegation, however implausible, there can be no doubt that the Flake Claimants have failed to state a claim.  Indeed, the Flake Claimants would have the Court conclude – in the face of the <u>Bestfoods</u> presumption – that the Vice President of Environmental Affairs for Saltire chose, for undisclosed reasons, to engage in remediation at a former Saltire plant of a chemical used by Saltire (not Alper) while acting for Alper, not Saltire, and thereby – in the Flake Claimants' view – voluntarily created liability for Alper where none otherwise existed.  As implausible as this would be under any circumstances, it becomes simply unbelievable given the lack of any allegations of a single act by Mr. Bauer that is alleged to have been done on behalf of Alper and not Saltire.  By failing to allege any single act of Mr. Bauer (or anyone else) that could plausibly overcome the presumption that Mr. Bauer was acting for Saltire when remediating Saltire's environmental liabilities, the Flake Claimants have failed to plead a claim against Alper.  <u>See</u> <u>id.</u>

<u>Existence of Management Agreement Not Sufficient to Confer Liability</u>

In addition, the mere fact that Alper entered into a management agreement pursuant to which Alper agreed to provide management services to its subsidiaries, which services **may**

include supervision of various environmental matters including remediation (See Apx. 3, Exhibit D), does not impute liability to Alper, even if Alper and Mr. Bauer had acted thereunder and provided Saltire with remediation services (which it did not).  See United States v. Newmont USA Ltd., No. 05-00020, 2007 WL 2405040, at *4 (E.D. Wash. Aug. 17, 2007).  In Newmont, the court held that, under the Supreme Court's decision in Bestfoods, even where a parent and subsidiary share many of the same employees and officers and the parent had entered into a management agreement with its subsidiary pursuant to which the parent provided its own employees to the subsidiary to manage the subsidiaries' operations, such an arrangement was insufficient to establish liability of the parent under CERCLA – an arguably broader liability standard than the general tort standard the Flake Claimants invoke.  Id.  Regardless, here, despite the ability to do so, Alper did not actually perform any remediation services for Saltire and the Flake Claimants have posited no allegations to the contrary.  The fact of the management agreement, standing alone, does not impose liability on Alper.

In an analogous case, Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 310 F. Supp. 2d 592 (S.D.N.Y. 2004), aff'd in relevant part, 153 Fed. Appx. 749 (2d Cir. 2005), the court held that a parent corporation was not liable for the CERCLA liability (again, an arguably more lenient standard) of its subsidiaries.  Specifically, the court determined **as a matter of law** that the following allegations made by the plaintiff, among others, were insufficient to result in liability for the parent corporation: (i) that several parent officers and directors served as managers and directors of the subsidiary, including an officer of the parent who was responsible for the management of the subsidiary's business properties; (ii) that "a known [parent] employee" was involved in the subsidiary's gas operations; (iii) that the subsidiary did not act or make any expenditures without the parent's approval; and (iv) that the parent was appointed as both the purchasing agent and consulting engineer for the subsidiary.  Consol. Edison, 310 F. Supp. 2d at 608-09; see also

Manchester Equip. Co. v. American Way & Moving Co., 60 F. Supp. 2d 3, 8-9 (E.D.N.Y. 1999) (finding parent not liable for the actions of its subsidiary despite evidence that the companies had common directors, that the parent's name appeared on documents involving the transaction at issue, and that some relevant correspondence was addressed to a certain employee at the parent rather than at the subsidiary);[15] Schiavone v. Pearce, 77 F. Supp. 2d 284 (D. Conn. 1999) (holding that parent could not be liable **as a matter of law** for its subsidiary's actions under CERCLA in connection with pollution caused by a creosoting facility even where (i) the parent agreed with its subsidiary to assume obligations under a plant-operating contract with a third party; (ii) the subsidiary's board of directors was composed almost exclusively of the parent's directors, officers, and employees; (iii) the companies' interlocking boards of directors took actions allocating capital expenditures for the facility in question, including funds for pollution control equipment; (iv) it was the subsidiary's practice to submit all contracts to the parent for review; (v) officials of the parent were involved in the supervision of the subsidiary's accounting and corporate affairs; (vi) an in-house lawyer of the parent was designated by the parent to assist in contact negotiations with the plant operator; and (vii) an employee of the subsidiary "guided" contract negotiations with the operator and played a prominent role in keeping the plant open during a period of financial difficulty; under Bestfoods,

---

[15]   See also Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc., 476 F. Supp. 2d 414, 421 (S.D.N.Y. 2005) ("A corporate parent is not automatically liable for the acts of its wholly owned subsidiary, even where the parent and subsidiary corporations have interlocking directorates.") (internal citations omitted); In re Adelphia Commc'n Corp., 322 B.R. 509, 522 (Bankr. S.D.N.Y. 2005) ("Merely showing that an individual officer or director was charged with the 'managerial responsibility with respect to operation of the business of the [corporation]' . . . will not be sufficient to pierce the corporate veil.  Instead, the domination and control must have been used improperly (i.e. for self-serving rather than corporate ends) to cause harm to the plaintiff."); Velez v. Novartis Pharms. Corp., 244 F.R.D. 243, 254 (S.D.N.Y. 2007) ("A parent corporation's possession of a controlling interest in a subsidiary entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies, without forfeiting the protection of limited liability).

the court held that this evidence was "consistent with the traditional and typical relationship between a parent and subsidiary.").[16]

**D.      No Liability Under Tennessee Law**

Under Tennessee law, Alper cannot be liable to the Flake Claimants for any alleged failure to prevent the migration of TCE or to warn the Flake Claimants about potential environmental issues on their property.  To establish a cause of action under Tennessee law, one must prove that the defendant owed a duty to the plaintiff, Ham v. Hosp. of Morristown, Inc., 917 F. Supp. 531, 534 (E.D. Tenn. 1995) ("The law is well settled in Tennessee that, in a cause of action for negligence, there must first be a duty of care owed by the defendant to the plaintiff."), that said duty was breached, and that the breach was the cause in fact and proximate cause of the plaintiff's injury or loss.  See McConkey v. McGhan Med. Corp., 144 F. Supp. 2d 958, 964 (E.D. Tenn. 2000) ("As a general rule, [under Tennessee law], persons **do not have a duty to control the conduct of other persons** to prevent them from causing harm to others.") (emphasis added); Cooley v. Unique Vacations, Inc., No. 04-00141, 2005 WL 2757249, *2 (E.D. Ky. Oct. 25, 2005) ("As a general rule, an actor whose own conduct has not created a risk of harm has no duty to control the conduct of a third person to prevent him from causing harm to another."); Ham, 917 F. Supp. at 534 ("In Tennessee, while all persons have a duty to use reasonable care not to engage in conduct that will foreseeably cause injury to others, they do not ordinarily have a duty to act affirmatively to protect others from conduct other than their own.  Thus, as a general rule in Tennessee, persons do not have a duty to control the conduct of other persons to prevent them from causing physical harm to

---

[16]      Although these cases were decided in the summary judgment context, they are equally applicable here where the Flake Claimants have had access to thousands of pages of discovery and allege facts far less compelling than the cases cited herein.

others.").  The Flake Claimants have not alleged that Alper owed them any duty, that such duty was breached or that the breach caused any injury to them.  Saltire, not Alper, operated the manufacturing facility, was the owner of the Dickson Plant and was mandated by the federal government to clean up the site.  The Flake Claimants do not allege that Alper caused any of the contamination or otherwise had a direct obligation to the Flake Claimants or any other person for the remediation thereof.

McConkey is illustrative.  There, plaintiffs asserted personal injury and related claims against the former parent of a manufacturer of silicone breast implants.  Like here, plaintiffs in McConkey alleged that the parent was liable because the subsidiary was acting under the parent's control in producing the breast implants and that the parent was negligent in allowing the production of the silicone breast implants to continue and for failing to warn the customers of the subsidiary of the possible hidden and unknown dangers of breast implants.  The court held that where the plaintiff offered no proof that the two companies acted as one, the parent had no duty to the subsidiary's customers, and, accordingly, the plaintiffs' attempt to impose on the parent the subsidiary's duties to its customers – including any duty to warn under products liability law – must fail.  McConkey, 144 F. Supp. 2d at 963-64.[17]

---

[17]    The "duty to warn" is a concept specific to products liability law.  The Flake Claimants have not provided any law that supports their contention that there is a duty to warn in the environmental context because no such duty exists.

E.    **Flake Claimants Have Not Alleged Any Specific Facts**
      **that Alper Engaged in Remediation Activities**

The only remaining allegation therefore is a generic contention that Alper, despite having no duty to do so, in fact engaged in remediation of contaminants in Dickson County in a way that harmed the Flake Claimants.  The Flake Claimants contend that such an allegation is made in the Complaint.  The only "allegation" against Alper contained in the Complaint is a statement in the description of the parties, in which the Flake Claimants state Alper "is also sued herein for its own direct acts and omissions."  (Apx. 2, Exhibit B, ¶ 6.)  Other than this statement, the Complaint contains no allegations directed at conduct (or omissions) of Alper.  Moreover, these conclusory statements refer to the conduct of the "Defendants" generally, not Alper.  Such conclusory allegations cannot be credited in testing the legal sufficiency of the Complaint.  See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig., 352 F. Supp. 2d 429, 443 (S.D.N.Y. 2005) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) ("The court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations"); In re Mediators, Inc., No. 91-12980, 1996 WL 297086, at *5 (S.D.N.Y. June 4, 1996) (conclusory statements are "insufficient to withstand Rule 12(b)(6) analysis, which requires the Court to accept only well-pleaded factual allegations").

The Complaint is a generic complaint directed at 21 different defendants without alleging any specific liability to the Flake Claimants owed on the part of Alper.  Such generic, flypaper pleadings will not suffice.  Apace Commc'ns, Ltd. v. Burke, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007) (citing Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990)) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient"); Ballew v. Black, 06-00070, 2006 WL 3193379, *4 (E.D. Ky. Nov. 1, 2006) ("When

23

a complaint (such as the one filed in this case) merely lists multiple defendants and then described

at length the facts generally without naming the specific defendants involved in each event, and

without setting forth with particularity which acts by each defendant caused each constitutional

deprivation, the complaint is insufficient.").

The only conclusion that can be reached from the allegations in the Flake Claims and

the Complaint is that Alper cannot be held liable, directly or indirectly, for claims arising out of or

relating to Saltire's alleged contamination or remediation in Dickson County, Tennessee.[18]

Accordingly, the Flake Claimants have failed to allege any facts that would give rise to a plausible

claim that Alper directly engaged in remediation activities in Dickson, whether negligently or not.

**F.    Alper Has No Indirect Liability to Flake Claimants**

Because the Flake Claimants have not asserted any theory under which Alper could

be directly liable to them, they fall back on their claim that Alper should be liable because it is the

alter ego of Saltire.  Their argument is flawed.

The law on corporate liabilities is clear and unequivocal:  "[t]he fact that one

corporation owns the controlling stock of another does not destroy the identity of the other

corporation as a distinct legal entity; and, ordinarily, no liability may be imposed upon a parent

corporation for the torts of its subsidiary."  18A Am. Jur. 2d Corporations § 734 (internal citations

omitted); see also Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003) (where a

purchaser corporation has acquired the capital stock of another seller corporation, "the purchaser

does not become liable for the seller's debts unless the stringent requirements for piercing the

---

[18]    Although the Flake Claimants make much of the "Good Samaritan" law, their emphasis is
misplaced.  The Flake Claimants have simply not alleged any plausible facts that Alper
undertook any remediation in Dickson County, much less that it did so negligently.

corporate veil are met."). The corporate form protects a parent shareholder from the liabilities of its subsidiaries, even in the context of environmental liability. See Bestfoods, 524 U.S. at 51-52 ("It is a general principle of corporate law that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries. CERCLA does not purport to reject this bedrock principle, and the Government has indeed made no claim that a corporate parent is liable . . . simply because its subsidiary owns or operates a polluting plant.").

The only exception to the bedrock principle that a parent may not be held liable for the liabilities of its subsidiaries is if cause exists to pierce the corporate veil. Id. Here, Saltire released any alter ego claims it may have had against Alper and, accordingly, Saltire's creditors (including the Flake Claimants) are now barred from asserting such claims.

### Alter Ego Claims Released

Alter ego claims that Saltire may have had against Alper were property of Saltire's bankruptcy estate and were released pursuant to the Saltire Plan after extensive negotiations between Alper and the Official Committee of Unsecured Creditors appointed in Saltire's bankruptcy case – fiduciaries for all of Saltire's creditors, including the Flake Claimants. See Apx. 2, Exhibit I, at § 13.1 (releasing Alper from any claims that Saltire could assert directly or that a creditor could assert derivatively on behalf of Saltire or its estate); Apx. 2, Exhibit H at ¶ 18, GG (same) ("[t]he Plan constitutes and embodies a good faith compromise and settlement of certain disputed claims and issues (including, but not limited to, those claims and issues encompassed by the Saltire-Alper Settlement), which compromise and settlement is fair, equitable and within the range of reasonableness, is in the best interests of the Debtor, the Estate and its creditors, and was entered into in good faith, at arms' length and otherwise satisfies the requirements of Bankruptcy Rule 9019").

Under Delaware law,[19] a corporation is permitted to pierce its own veil, and accordingly, alter ego claims are property of a debtor's estate.  See Duke Energy Trading & Mktg. LLC v. Enron Corp. (In re Enron Corp.), No. 01-16034, 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003) (citing Murray v. Miner, 876 F. Supp. 512, 517 (S.D.N.Y. 1995)) ("a Delaware court would permit a debtor corporation to assert a claim to pierce its own corporate veil"); Pereira v. Cogan, No. 00-00619, 2001 WL 243537, at *19-20 (S.D.N.Y. Mar. 8, 2001) (same).  Accordingly, under Delaware law, any claim against Alper on an alter ego theory was property of Saltire's estate and Saltire had the exclusive right to assert, settle or release those claims.  See Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132 (4th Cir. 1988) (holding that where state law of state of incorporation allowed corporation to bring alter ego action against its principals, if bankruptcy trustee, who succeeded to rights of corporate debtor, compromised such claim with the debtor's alter egos, the debtor's creditors were barred from bringing subsequent alter ego suits); cf. St. Paul Fire & Marine Ins. Co. v. PepsiCo Inc., 884 F.2d 688, 700 (2d Cir. 1989) (holding that whether an alter ego cause of action will be included in a debtor's estate depends on whether applicable state law characterizes such an action as a creditor remedy or a corporate right); In re Ontos, Inc., 478 F.3d 427, 430-31 (1st Cir. 2007) (trustee has exclusive right to compromise alter ego claims

---

[19]    The law of incorporation controls the analysis of whether alter ego claims were property of Saltire's estate and whether, therefore, Saltire had a unique ability to assert, prosecute and settle, any such claims against Alper.  See Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); see also Duke Energy Trading & Mktg. LLC v. Enron Corp. (In re Enron Corp.), 2003 WL 1889040, at *3 ("under the interest analysis applied by New York law, the law of the state of [incorporation of the entity whose corporate veil the claimants seek to pierce (i.e., Delaware)] applies to determine whether the [subsidiaries] have the right to assert a claim to pierce their own corporate veils.") (citing Kalb, 8 F.3d at 132); see, e.g., In re Eagle Enters., Inc., 265 B.R. 671, 678 (E.D. Pa. 2001).

because they constitute property of the estate); <u>Duke Energy Trading & Mktg. LLC v. Enron Corp.</u> <u>(In re Enron Corp.)</u>, 2003 WL 1889040, at *3 ("Thus, the trustee or debtor-in-possession would have exclusive standing to maintain a Delaware corporation's alter ego claim of a general nature."). Any release of such claims by a debtor, then, bars its creditors from later asserting such released alter ego claims.

Moreover, in their pleadings below, the Flake Claimants misconstrue the distinction made in the case law between "generalized" and "particular" claims for alter ego liability in the hope of creating for themselves an exception to the release. Specifically, the Flake Claimants assert that their claims are specific to them and, accordingly, not susceptible to release by Saltire. They are simply incorrect. The alter ego claims asserted by the Flake Claimants are general claims because "the alter ego action 'is based upon allegations that if proven would benefit all [the debtor's] creditors, i.e., making more assets available to satisfy [the debtor's] debts.... If [the individual creditor's] action is not stayed it would collect its claim from a pool of assets that should be available to all creditors.' . . . 'alter ego claims, 'if proved, would have the effect of bringing the property of the third party into the debtor's estate, and thus would benefit all creditors.'" <u>Kalb</u>, 8 F.3d at 132 (citations omitted); <u>Koch Refining v. Farmers Union Cent. Exch., Inc.</u>, 831 F.2d 1339, 1348 (7th Cir. 1987) ("A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause."); <u>see also</u> <u>Francisco v. Bowman</u>, No. 03-05527, 2004 WL 1794593, at *2-3 (6th Cir. Aug. 10, 2004) (determining that personal injury plaintiff lacked standing to bring general veil-piercing claim).

As discussed above, Alper took no action with respect to Saltire that was specific to the Flake Claimants, and the Flake Claimants do not allege any. If this Court were to determine that Alper were the alter ego of Saltire, based solely on the number of claims filed against Alper alleging that Alper is liable for contamination allegedly caused by Saltire based on the theory that Alper was

the alter ego of Saltire, the Flake Claimants would not be the sole beneficiaries with an interest in

such a determination.  Accordingly, the alter ego claims asserted by the Flake Claimants are general

claims that were owned and released by Saltire.  See, e.g., Kalb, 8 F.3d at 132.

**No Plausible Allegations to Pierce Corporate Veil**

Finally, even if the Court were to find that any alter ego claims against Alper were

not released, the Flake Claimants have failed to allege any facts that could support the extraordinary

remedy of piercing Alper's corporate veil.  Under Delaware law, a corporate veil will not be pierced

unless "fraud or something like it" is present.  Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp.

260, 267-68 (D. Del. 1989).  The Flake Claimants have made no allegations of fraud or anything

like it and have otherwise set forth no theory or alleged any facts that would support an alter ego

claim under Delaware law.  See Pereira v. Cogan, 2001 WL 243537, at *19-20 (Delaware courts

have set forth a number of factors to be considered in determining whether to pierce the corporate

veil, including whether (1) the corporation was adequately capitalized for the corporate undertaking;

(2) the corporation was solvent; (3) dividends were paid; (4) corporate records were kept; (5)

officers and directors functioned properly; (6) involvement of parent in the management of the

subsidiary; (7) other corporate formalities were observed; (8) the dominant shareholder siphoned

corporate funds; and (9) in general, the corporation simply functioned as a façade for the dominant

shareholder.).  The Flake Claimants have failed to allege sufficient facts to pierce the corporate veil

between Saltire and Alper.  See Dismissal Order, Apx. 1 ("Clearly, special circumstances do not

exist here that would justify the extraordinary remedy of piercing the corporate veil.").

Moreover, the fact that Alper and Saltire shared officers and had a management

agreement is not sufficient, as a matter of law, to pierce the corporate veil.  See, e.g., Am. Protein

Corp. v. AB Volvo, 844 F.2d 56, 59-60 (2d Cir. 1988) ("The strongest piece of evidence to support

control was the existence of interlocking directorates.  This commonplace circumstance of modern

business does not furnish such proof of control as will permit a court to pierce the corporate veil);

Landgarten v. York Research Corp., 1988 WL 7392, at *4 (Del. Ch. Feb. 3, 1988) ("Neither total

stock ownership nor the existence of common management, without more, is sufficient to pierce the

corporate veil."); Kanter v. Feature Enters., Inc., No. 90-00332, 1993 WL 267373, at *3 (S.D.N.Y.

July 15, 1993) (refusing to pierce the corporate veil where the parent's chairman was an officer of

the subsidiary and where a salesperson received payment from the parent for money he was owed

by the subsidiary).

## II.

### BANKRUPTCY COURT PROPERLY EXERCISED DISCRETION IN DENYING FLAKE CLAIMANTS' REQUESTS FOR DISCOVERY OR TO FURTHER AMEND CLAIMS

The Bankruptcy Court properly denied the Flake Claimants' requests (i) for

discovery and (ii) to further amend their claims.

### A.     Discovery Not Warranted

A "trial court enjoys wide discretion in its handling of pre-trial discovery, and its

rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion."

See DG Creditors Corp., 151 F.3d at 79 (quoting Cruden v. Bank of New York, 957 F.2d at 972);

Am. Sav. Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.), 330 F.3d 104, 108 (2d Cir.

2003).  It was well within the Bankruptcy Court's discretion to deny the Flake Claimants' request

for discovery before the Objection was heard.  The Objection was essentially a motion to dismiss

for failure to state a claim, for which discovery is not generally permitted because the quality of the

allegations is insufficient to merit the burden of discovery.  In re Mr. Goodbuys of N.Y. Corp., Inc.,

164 B.R. 24, 27 (Bankr. E.D.N.Y. 1994) (motions to dismiss are "valuable procedural tools . . . to

eliminate fruitless litigation, saving litigants and the judiciary much time, effort, and expense;"

granting motion to dismiss for failure to state a claim and claim expunged) (citing In re Natale, 136

B.R. 344, 348 (Bankr. E.D.N.Y. 1992)); <u>see also</u> <u>In re Levine</u>, No. 02-03492, 2007 WL 594963, at

*2 (S.D.N.Y. Feb. 27, 2007) (court refused to hear discovery motions while motion to dismiss was

pending because "dismissal would moot the discovery issues"); <u>In re Thomson McKinnon Sec. Inc.</u>,

133 B.R. 39, 41 (Bankr. S.D.N.Y. 1991) (expunging proof of claim and denying claimant's motion

to proceed with discovery).

## B.    <u>Denial of Amendment to Claim Within Bankruptcy Court's Discretion</u>

Following the Bankruptcy Court's ruling granting the Objection and disallowing and

expunging the Flake Claims, counsel for the Flake Claimants requested on the record that the Flake

Claimants be authorized to amend the Flake Claims yet again.  The Bankruptcy Court denied the

Flake Claimants' request.

While the Flake Claimants have not specifically challenged the Bankruptcy Court's

decision to not allow further amendments to the Flake Claims following the Bankruptcy Court's

order disallowing and expunging those claims and, accordingly, consideration of that issue has not

been preserved for appeal, Alper submits that the Bankruptcy Court's ruling was a proper exercise

of discretion in any event.  Specifically, the Bankruptcy Court's decision to deny the Flake

Claimants' request to further amend the Flake Claims was appropriate given that between the

original complaint, four amended complaints, the Original Flake Claims, the amended Flake Claims

and the Response, a further amendment by the Flake Claimants would have been the ninth

attempted iteration by them of a claim against Alper after the eighth iteration was insufficient.  The

Bankruptcy Court's exercise of its discretion to deny the requested seventh amendment was entirely

appropriate.

**CONCLUSION**

For all the foregoing reasons, Alper respectfully submits that the Court should (i)

uphold and affirm the Dismissal Order in its entirety; and (ii) grant Alper such other and further

relief as this Court deems necessary and appropriate.

Dated:  New York, New York
       April 18, 2008

                                      Respectfully submitted,

                                      MILBANK, TWEED, HADLEY & M[C]CLOY LLP

                                      By:  /s/ Luc A. Despins
                                      Luc A. Despins (LD 5141)
                                      Andrew M. Leblanc (*pro hac vice* to be filed)
                                      Jessica Fink (JF 6399)
                                      1 Chase Manhattan Plaza
                                      New York, New York 10005
                                      (212) 530-5000

                                      *Counsel for Appellee-Alper Holdings USA, Inc.*

31