**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x

In re:                                          :          Chapter 11
                                                :          Case No. 07-12148 (BRL)
ALPER HOLDINGS USA, INC.,                        :
                                                :
                          Debtor.               :
———————————————————— x
                                                :
JON AND CHARLOTTE ARMSTRONG,                     :
                                                :
                          Appellants,           :          District Court
                                                :          Case No. 08-cv-02489-CM
            v.                                   :          (Consolidated)
                                                :
ALPER HOLDINGS USA, INC.,                        :
                                                :
                          Appellee.             :
———————————————————— x
                                                :
HARRY HOLT, et al.,                              :
                                                :
                          Appellants,           :
                                                :
            v.                                   :
                                                :
ALPER HOLDINGS USA, INC.,                        :
                                                :
                          Appellee.             :
———————————————————— x
                                                :
RAY AND CATHY FLAKE,                             :
                                                :
                          Appellants,           :
                                                :
            v.                                   :
                                                :
ALPER HOLDINGS USA, INC.,                        :
                                                :
                          Appellee.             :
———————————————————— x

```
———————————————————————— x
                                 :
THE ADKINS CLAIMANTS,            :
                                 :
                    Appellants,  :
                                 :
          v.                     :
                                 :
ALPER HOLDINGS USA, INC.,        :
                                 :
                    Appellee.    :
———————————————————————— x
```

## **BRIEF OF APPELLEE**

MILBANK, TWEED, HADLEY & MᶜCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

*Counsel for Debtor-Appellee Alper Holdings USA, Inc.*

# TABLE OF CONTENTS

<u>Page</u>

COUNTER-STATEMENT OF ISSUES PRESENTED ................................................................2

SUMMARY OF ARGUMENT ...........................................................................................2

SUPPLEMENTAL FACTUAL BACKGROUND ........................................................................4

    A.  Armstrong Claims .............................................................................................4

    B.  Adkins Claims ..................................................................................................6

ARGUMENT .................................................................................................................7

I.  DISMISSAL ORDERS SHOULD BE AFFIRMED ................................................................7

    A.  Alper Has No Direct Liability to Claimants....................................................7

       1.  Mr. Bauer's Role As A Dual Officer Are Insufficient to Create Liability.......................8

       2.  Alper Owed No Duty To Warn Claimants.................................................12

    B.  Alper Has No Indirect Liability to Claimants ................................................13

II.  BANKRUPTCY COURT PROPERLY EXERCISED DISCRETION IN DENYING CLAIMANTS' REQUESTS FOR DISCOVERY ..........................................................15

III.  BANKRUPTCY COURT PROPERLY DISMISSED ADKINS CLAIMS ..........................15

CONCLUSION ..............................................................................................................17

# TABLE OF AUTHORITIES

## Cases

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ................................................................................................................11

Boykin v. KeyCorp,
    521 F.3d 202 (2d Cir. 2008) .....................................................................................................7, 11

Cohen v. Nevada,
    No. 07-00043, 2007 WL 4458174 (D. Nev. Dec. 13, 2007) .........................................................11

Curiale v. Tiber Holding Corp.,
    No. 95-05284, 1997 WL 597944 (E.D. Pa. Sept. 18, 1997 .........................................................15

Erickson v. Pardus,
    127 S.Ct. 2197 (2007) ................................................................................................................11

Fletcher v. Atex, Inc.,
    68 F.3d 1451 (2d Cir. 1995) ........................................................................................................14

Giarratano v. Johnson,
    521 F.3d 298, 304n.5 (4th Cir. 2008) .........................................................................................11

Ham v. Hosp. of Morristown, Inc.,
    917 F. Supp. 531 (E.D. Tenn. 1995) ...........................................................................................12

In re Chateaugay Corp.,
    111 B.R. 67 (Bankr. S.D.N.Y. 1990) .....................................................................................15, 16

In re Dow Corning Corp.,
    215 B.R. 346 (Bankr. E.D. Mich. 1997) .......................................................................................15

Kalb, Voorhis & Co. v. Am. Fin. Corp.,
    8 F.3d 130 (2d Cir. 1993) ............................................................................................................14

Kittay v. Kornstein,
    230 F.3d 531 (2d Cir. 2000) ...........................................................................................................7

McConkey v. McGhan Med. Corp.,
    144 F. Supp. 2d 958 (E.D. Tenn. 2000) .......................................................................................12

Oxford Asset Mgmt., Ltd. v. Jaharis,
    297 F.3d 1182 (11th Cir. 2002) ...................................................................................................11

Serio v. Ardra Ins. Co.,
    761 N.Y.S.2d 1 (N.Y. App. Div. 2003) .........................................................................................14

U.S. Lines, Inc. v. U.S. Lines Reorganization Trust,
    262 B.R. 223 (S.D.N.Y. 2001) .....................................................................................................15

United States v. Bestfoods,
    524 U.S. 51 (1998) .........................................................................................................................9

United States v. Kramer,
    Civil Action No. 89-4340, 1998 U.S. Dist. LEXIS 14183 (D.N.J. 1998)................................11, 12

United States v. Newmont USA Ltd.,
    No. 05-00020, 2007 WL 2405040 (E.D. Wash. Aug. 17, 2007) ..................................................12

**Statutes**

28 U.S.C. § 157(b)(2)(B) ...............................................................................................................16
28 U.S.C. § 157(b)(5)......................................................................................................................16

**Rules**

Fed. R. Civ. P. 08(a) .........................................................................................................................7
Fed. R. Civ. P. 08(a)(2) ...................................................................................................................11
Fed. R. Civ. P. 12(b)(6).....................................................................................................................7

**Other Authorities**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235 (3d ed. 2004).................11

Appellee Alper Holdings USA, Inc. ("Alper") respectfully submits this brief in opposition to the Joint Supplemental Brief ("Supp. Br." or the "Supplemental Brief") filed by the appellants (i) Jon and Charlotte Armstrong (the "Armstrong Claimants") and (ii) the Adkins Claimants[1] (together with the Armstrong Claimants, the "Claimants") in support of their appeal (the "Appeal") from (a) the Memorandum Decision and Order Granting Objections of Alper Holdings USA, Inc. To Proofs of Claim Filed by (i) Armstrong Plaintiffs and (ii) Holt Plaintiffs, dated February 25, 2008 (the "Armstrong/Holt Order," Apx. 1)[2] and (b) the Memorandum Decision and Order on Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28) Filed by the Adkins Claimants, dated April 3, 2008 (the "Adkins Order," Apx. 2, and, together with the Armstrong/Holt Order, the "Dismissal Orders") entered in the United States Bankruptcy Court for the Southern District of New York (Lifland, B.J.) (the "Bankruptcy Court"). Alper hereby adopts the factual representations, where applicable, and legal arguments asserted by it in its appellee brief (the "Flake Response") (Docket No. 9) in opposition to the brief filed by the appellants Ray and Cathy Flake (the "Flake Claimants") and incorporates such representations and arguments herein. Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Flake Response.

---

[1] The Adkins Claimants include Donald Adkins, Kristi Adkins, Hunter Adkins, Chad Beard, Patricia Beard, Emily Beard, Eric Christian, Peyton Christian, Jennifer Casteel, Timothy DeLoach, Kimberly DeLoach, Paxton DeLoach, Anthony Fambrough, Keysha Fambrough, Autumn Fambrough, Shonda Heflin, John Christopher Stiver, Sydney Stiver, David Heimbach, Jodie Heimbach, Kassidy Heimbach, Dawson Heimbach, Mason Heimbach, Scott Herkimer, Darcie Herkimer, Samuel Herkimer, Steven Jones, Melissa Jones, Mya Jones, Barry Piland, Christie Piland, Luke Piland, Travis Wood, Amy Wood and Lauren Wood, Priscilla Fowler, Jason Stewart, James Dakota Stewart, Charity Comeaux, and Joshua Campbell (the "Adkins Claimants").

[2] "Apx. __" refers to the tab numbers in the "Appendix of Items Included In Brief of Appellee."

## COUNTER-STATEMENT OF ISSUES PRESENTED

The counter-statement of issues presented to the Court in the Flake Response are also applicable to the respective appeals of the Armstrong Claimants and the Adkins Claimants.  An additional issue is:

1.    Whether the Bankruptcy Court had jurisdiction to apply dispositive legal defenses and disallow the personal injury claims filed by the Adkins Claimants.

## SUMMARY OF ARGUMENT

At the May 9, 2008 status conference in these consolidated appeals, the Court permitted the Claimants to file a supplemental brief for the limited purpose of setting forth those arguments that were particular to the Claimants' respective claims and that were not covered in the prior briefing on the Flake Claimants' appeal.  The stark reality for the Claimants is that there is no meaningful distinction between the appeals of the Flake Claimants, the Adkins Claimants and the Armstrong Claimants.  All of the underlying claims have been dismissed because the conclusory allegations they assert fail to state any case for liability against Alper; and the different assertions of damages contended to have been suffered (i.e., inability to open water-bottling facility in area of known contamination, personal injuries) are not relevant to the consolidated appeal.  In the Supplemental Brief the Claimants ignore the Court's direction to identify differences in the claims and simply resort to attempting, yet again, to argue why the flawed allegations they asserted on behalf of the Flake Claimants, and restated on behalf of the Adkins Claimants and the Armstrong Claimants, should permit them to survive dismissal.  Nothing in their restated arguments changes the fact that the judgment of the Bankruptcy Court dismissing these claims must be affirmed for all the reasons stated in the Flake Response and herein.

The Claimants' basic statement of their claim is that Alper inexplicably interjected itself into a clean-up mandated under an Order of Consent between Saltire and the United States Environmental Protection Agency (the "EPA") by negligently undertaking remediation – having no

duty to do so – and thereby is liable to the Claimants. The problem for the Claimants, as it was for the Flake Claimants, is that a party must allege facts to support claims, which they have not done and cannot do. Moreover, based on recent jurisprudence from the Supreme Court, such facts must plausibly support the claim asserted. The only facts that the Claimants allege are: (i) that the vice-president of environmental affairs at Saltire, Nicholas Bauer, was also an employee of Alper; and (ii) that Alper entered into a management agreement (the "Management Agreement," Apx. 3) with all of its subsidiaries, including Saltire. As noted in the Flake Response, the Supreme Court has stated clearly that these facts standing alone are not sufficient to give rise to liability against Alper, a corporate parent, for the liabilities of Saltire, its subsidiary. Any of the conclusions that the Claimants draw from these two facts cannot be credited in determining whether the Claimants have pled a claim against Alper.

Similarly, the Claimants' attempt to assert an alter ego claim against Alper fails. Claimants assert, without any facts, that Alper is liable to them as an alter ego of Saltire. The Bankruptcy Court rightly concluded that, given the absence of any factual allegations, such claims could not survive dismissal. Claimants do not even attempt in the Supplemental Brief to defend those claims. Rather, they contend that such claims were not released by a settlement in the Saltire bankruptcy. Although they are wrong with respect to the argument they make such argument is irrelevant because they have not stated an alter ego claim against Alper.

The Claimants have reformulated, restated, refined and recreated their claims over the years in which their claims have been pending against Alper, stated first in the complaints that they filed in the underlying state court litigation (and the multiple amendments thereto), then in their original proofs of claim in the Bankruptcy Court, then in their improperly filed amended proofs of claim, then in their response to Alper's objection to their claims, then in the brief of the Flake Claimants (who are represented by the same counsel) and, now, in this appeal. During this

3

process, they have had access to thousands of pages of discovery, including depositions of Alper employees in related litigation (which they use in this appeal). The Claimants presumably have used this discovery and these opportunities to "fine tune" their arguments to muster the best possible articulation of their claims, which has essentially remained constant throughout the Alper bankruptcy. Unfortunately for the Claimants, the Supplemental Brief, like the numerous pleadings before it, fails to assert any facts or legal arguments – new or otherwise – that would support a claim against Alper. For this reason, the Bankruptcy Court appropriately exercised its discretion to deny Claimants further amendments of their claims

For all of the reasons set forth herein and in the Flake Response, the Dismissal Orders should be affirmed in their entirety.

## SUPPLEMENTAL FACTUAL BACKGROUND

### A.    Armstrong Claims

On or about September 19, 2007, the Armstrong Claimants filed proofs of claim in Alper's chapter 11 case (the "Original Armstrong Claims") asserting contingent, unliquidated, and disputed property damage claims. The Original Armstrong Claims annexed the following paragraph as "supporting documentation" for their claims:

> Creditor's property and personal damage claim arises from contamination by hazardous waste including Trichlorothylene ("TCE"), and [sic] industrial solvent used at a manufacturing facility in Dickson Tennessee and *is based on the independent acts and/or omissions of Alper Holdings USA, Inc. in connection with said contamination*.

Supporting Document Attachment to Original Armstrong Claims (the "POC Support," Apx. 4) (emphasis added). The Armstrong Claimants did not describe any of Alper's alleged direct acts or

omissions in the Armstrong Claims, did not describe their alleged damages and attached no other supporting documentation.[3]

On January 9, 2008, Alper objected to the Original Armstrong Claims, arguing that the Original Armstrong Claims were legally deficient and failed to state a claim against Alper. In an effort to forestall motion practice, and although Alper was under no duty to do so, Alper looked past the unquestionably deficient Original Armstrong Claims and addressed the allegations made in the underlying complaints in the state court action, as well as the reformulated and brand new arguments made by the same counsel in the Flake Claimants' hearing, in its motion to dismiss the Original Armstrong Claims.

Apparently recognizing that the Original Armstrong Claims were woefully inadequate (even if they had attached the underlying complaint, which they did not), on or about February 8, 2008, the Armstrong Claimants filed "amended" proofs of claim (the "New Armstrong Claims" or the "Armstrong Claims," Apx. 5), which attached a six page "Statement of Claim," asserting that Alper assumed a duty of care by controlling the remediation in Dickson, Tennessee, which it breached by conducting such remediation in a negligent manner. See New Armstrong Claims, Apx. 5.[4] The only facts alleged to support these conclusory allegations were that Alper and

---

[3]   The proofs of claim, including the purported POC Support filed by the Armstrong Claimants, were substantially identical to the proofs of claim and POC Support filed by the Flake Claimants and the Adkins Claimants. The only difference between these claims and the claims filed by the Adkins Claimants was that the Adkins Claimants substituted "property and personal damage claim" with "personal injury claim."

[4]   The Armstrong Claimants did not seek leave of the Bankruptcy Court to file late proofs of claim but instead simply filed them as amendments to the Original Armstrong Claims without permission. Because the New Armstrong Claims asserted wholly new grounds of liability that were not described or asserted in the Original Armstrong Claims, Alper objected to the purported amendments as impermissible late-filed claims that did not relate back to the Original Armstrong Claims. While the objection to the amendment was

Saltire had a dual officer and that Alper and Saltire were party to the Management Agreement.  Id.,

Apx. 5.[5]

On February 25, 2008, the Bankruptcy Court entered the Armstrong/Holt Order,

pursuant to which, among other things, the Bankruptcy Court dismissed the Armstrong Claims,

finding that "Alper cannot be held liable, directly or indirectly, for claims arising out of or relating

to Saltire's . . . alleged contamination or remediation in Dickson County, Tennessee."  See

Armstrong/Holt Order, Apx. 1, at 1.  The Bankruptcy Court held, among other things, that the

Armstrong Claimants failed to allege any facts that would "justify imposing liability on the part of

Alper" because the Armstrong Claimants failed to allege any acts by Mr. Bauer that would

overcome the legal presumption that Mr. Bauer was acting on behalf of Saltire and not Alper.

Armstrong/Holt Order, Apx. 1, at 6.

**B.    Adkins Claims**

The procedural history of the Adkins Claimants' claims is materially identical to the

history and background of the Armstrong Claims (and the Flake Claims) and, for that reason, is not

restated herein.

---

pending, the Court heard and disallowed the Armstrong Claims, holding that even taking
into account the allegations in the New Armstrong Claims (which it arguably did not need to
do), the claims filed by the Armstrong Claimants failed as a matter of law.  Accordingly, the
Bankruptcy Court did not rule on the objection to the amendment to the Original Armstrong
Claims.

[5]    As with the Flake Claimants, the Armstrong Claimants sought discovery, which the
Bankruptcy Court properly denied.

## ARGUMENT

## I.

## DISMISSAL ORDERS SHOULD BE AFFIRMED

As more fully set forth in the Flake Response (and as argued in the Bankruptcy Court), the Claimants have failed to allege any facts that would state a claim for relief that is plausible on its face, and so the Bankruptcy Court's dismissal of the Armstrong Claims and the Adkins Claims must be affirmed.[6]

### A.     Alper Has No Direct Liability to Claimants

The Bankruptcy Court's conclusion that Alper has no direct liability to the Flake Claimants is equally applicable to the Armstrong Claimants and the Adkins Claimants; and the Armstrong Claimants and the Adkins Claimants have failed to point to any fact or legal argument specific to them that would support a contrary conclusion.  Nothing in the Armstrong Claims, the Adkins Claims, the underlying complaints, the numerous pleadings filed by the Armstrong Claimants and the Adkins Claimants in the Bankruptcy Court or the Supplemental Brief allege any facts that could support a claim against Alper – despite the fact that the Claimants were provided

---

[6]     While Alper agrees with the Claimants that the proper standard of review for a Rule 12(b)(6) motion to dismiss is de novo, as set forth in the Flake Brief, a bankruptcy court's decision not to permit amendment of a proof of claim or to permit pre-trial discovery is committed to the sound discretion of the bankruptcy court, and is therefore only reversible for the abuse of that discretion.

Moreover, if the Bankruptcy Court dismissed the Claims under rule 8(a) of the Federal Rules of Civil Procedure  – the standard the Claimants are setting forth, see Supp. Br. at 11-12 – such a dismissal is reviewed for abuse of discretion.  See, e.g., Boykin v. KeyCorp, 521 F.3d 202, 212 (2d Cir. 2008), citing Kittay v. Kornstein, 230 F.3d 531, 541 (2d Cir. 2000) (applying abuse of discretion standard when claim was dismissed under Rule 12(b)(6) because the reason for dismissal was failure to satisfy Rule 8's pleading standard).

with thousands of pages of documents in the Norman Litigation **and** despite the fact that Saltire's remediation in Dickson is all a matter of public record.

The Claimants cite only two facts (and only in their "amended" proofs of claim, their responses to Alper's objection to their claims in the Bankruptcy Court and in this Court, <u>not</u> in the Original Armstrong Claims or Original Adkins Claims <u>nor</u> in the complaints on which their claims were grounded) that allegedly support their conclusory allegation that Alper negligently undertook the environmental remediation in Dickson County: (1) that Alper and Saltire were parties to the Management Agreement and (2) management of the Dickson remediation by Mr. Bauer, which the Claimants assert, without any support, was done in his capacity as an employee of Alper, not as Vice President of Environmental Affairs at Saltire, the entity that actually operated at one time at the subject facility. Under the most basic principles of tort, environmental and corporate law, Alper simply cannot be liable on these facts to the Claimants for any harm to them or their property.

### 1. Mr. Bauer's Role As A Dual Officer Are Insufficient to Create Liability

In the Supplemental Brief, the Claimants make the remarkable argument that the two facts they have pled: (1) that Mr. Bauer occupied dual roles and (2) existence of the Management Agreement; are sufficient to plead a claim against Alper. This argument is remarkable both for its ignorance of governing precedent and because of the effect such a holding would have on parent-subsidiary relationships – it would eliminate the sharing of employees by agreement between corporate relatives because that act alone would be sufficient to hail a parent into court for the liabilities of its subsidiaries. The Supreme Court has rejected this very argument in clear and unmistakable terms, holding that there is a presumption that a dual officers are "wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary;" and that in order to rebut this presumption, a plaintiff must show that the dual officers' role "depart[s] so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when

ostensibly acting on behalf of the subsidiary in operating the facility." See United States v. Bestfoods, 524 U.S. 51, 61-62 (1998).  The Claimants allege no acts taken by Mr. Bauer, let alone any acts that would even call into question the presumption that he was acting in his capacity as a Saltire officer when taking part in a clean up of a former Saltire facility at which Saltire disposed of hazardous materials prior to Alper's existence.

The Supplemental Brief does not provide any new facts that would serve to rebut the presumption the Supreme Court has dictated.  Any new facts offered in the Supplemental Brief, primarily misleading snippets from the deposition of Robert Bertellotti, the current president of Alper and former president of Saltire (the "Bertellotti Deposition," Apx. 6), which was produced to the Claimants as part of the documents produced in the Norman Litigation, speak only to reasons why Mr. Bauer was employed as a dual officer, not that he took any acts that could create liability. For example, the Claimants cite to Mr. Bertellotti's testimony that

> [Mr. Bauer] was hired [by Alper] specifically---in effect, specifically for the purpose---if it wasn't for Saltire's environmental issues, Nick Bauer wouldn't have been hired.  He was hired for the purpose of dealing with Saltire's environmental issues.

(Supp. Br. at 12 (citing Bertellotti Deposition, Apx. 6, at 88.))  As an initial matter, the Claimants' quotation is grossly misleading, if not directly false.  The alteration that Claimants inserted to create their argument here, "[by Alper]", does not find itself anywhere in the testimony.  As Claimants' concede, Mr. Bauer was an officer of both Alper and Saltire, and nothing in Mr. Bertellotti's testimony suggests otherwise, notwithstanding the alterations.  See e.g., Bertellotti Deposition, Apx. 6, at 90 ("Nick is [an] elected officer of Saltire, vice-president of environmental affairs").  As Mr. Bertellotti explained, Mr. Bauer was a "direct employee of Alper for convenience.  That is where the payroll and benefits and withholding is."  Id., Apx. 6, at 86-87; see also id., Apx. 6, at 84-85 ("That was very clear [that Mr. Bauer was speaking to Mr. Bertellotti as president of Saltire when

discussing Saltire matters]. Because it's always very obvious to us whose business is before us. . . . We maintain separate books and records, separate accounts, separate minutes, separate officers and directors. Granted, there's overlap. Whatever business is in front of you, it is very clear to us what business that relates to. And so we take all actions and discuss all things in the context of that corporation, its specific interests, and there is no confusion.").

From this, the Claimants contend that liability exists because "for whatever reason, Alper felt it necessary for Mr. Bauer's management of the Dickson remediation to be conducted as an employee of Alper – as opposed to an officer of Saltire." (Supp. Br. at 12.) This statement defies all logic. If Alper felt it was necessary that the Dickson remediation should be done by an employee of Alper, with the only apparent reason to create liability for Alper to the Claimants, then it would make no sense for Mr. Bauer also to have been made an officer of Saltire, as he was. As Claimants would have the Court conclude, Mr. Bauer was an officer of Saltire but he did not act in that capacity, even when overseeing remediation activities required under an administrative order of consent issued against Saltire by the United States Environmental Protection Agency at a former Saltire facility.[7]

Finally, even if these arguments were logical, they still do not constitute allegations of any acts taken by any person that could rebut the presumption that Mr. Bauer was "wearing [his] 'subsidiary hat[]' and not his 'parent hat[]' when acting for the subsidiary" sufficient to meet the Twombly standard that to "adequately state" a claim, a plaintiff must plead facts sufficient to "raise

---

[7]    The testimonial record relied on by Claimants below belies their contention that Mr. Bauer was acting for Alper in the remediation activities. See, e.g., Transcript of Deposition of Nicholas Bauer, Apx. 7, at 125:7-11 ("The company, **that is, Saltire Industrial** is, is and has been performing the environmental investigation and remediation activities at the site under the direction of the US EPA.") (emphasis added).

a right to relief **above the speculative level**." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (emphasis added) (as such, a complaint must include "enough facts to state a claim to relief that is **plausible** on its face");[8] Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). The Claimants have failed to allege any acts by Mr. Bauer that could give rise to liability to Alper (or even Saltire).[9]

Similarly, the fact of the existence of the Management Agreement does not satisfy the Twombly standard. As a factual matter, the Management Agreement was between Alper and **eight** of its subsidiaries, one of which was Saltire, pursuant to which Alper agreed, in return for payment of a fee, to provide managerial services as needed to its subsidiaries, which could include,

---

[8]    The Claimants' reliance on Erickson v. Pardus, 127 S.Ct. 2197 (2007) for the proposition that Twombly does not require a standard any higher than that a statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests under rule 8(a)(2) of the Federal Rules of Civil Procedure is misplaced. As numerous courts have held, Erickson does not undermine the requirement of Twombly that a pleading contain "more than labels and conclusions" and that a complaint must plead "enough facts to state a claim to relief thast **is plausible on its face**." Giarratano v. Johnson, 521 F.3d 298, 304n.5 (4th Cir. 2008); Boykin v. KeyCorp, 521 F.3d at 213 (holding that the Supreme Court in Twombly is requiring a "plausibility standard" which obliges a pleader to amplify a claim with some factual allegations where necessary to render the amplification plausible, and finding that Erickson addressed Rule 8(a) specifically in the context of a pro se litigant, because a document filed pro se is to be liberally construed). Factual allegations still must be enough to raise a right to relief above the speculative level. See Cohen v. Nevada, No. 07-00043, 2007 WL 4458174, at *3 (D. Nev. Dec. 13, 2007) ("[T]he pleading must contain something more: . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235 (3d ed. 2004)).

[9]    Perhaps most ridiculous of the Claimants' "factual" allegations that they claim show that Mr. Bauer acted solely on behalf of Alper is the inclusion of the empty citation to United States v. Kramer, Civil Action No. 89-4340, 1998 U.S. Dist. LEXIS 14183 (D.N.J. 1998), Apx. 8, in which Mr. Bauer is identified only once and that is as one in a nine-page list of appearances. The Kramer case has nothing to do with the Claimants, Dickson County, or

*inter alia*, reviewing business plans, advising on personnel matters, maintaining books and records, supervising legal services, tax planning and supervising and managing various environmental matters, including "risk assessment, risk management, technical assessment, remediation, legal and compliance." Management Agreement, Apx. 3, at 1-2. The mere existence of the Management Agreement does not impute liability to Alper, even if Alper and Mr. Bauer had acted thereunder. See United States v. Newmont USA Ltd., No. 05-00020, 2007 WL 2405040, at *4 (E.D. Wash. Aug. 17, 2007) (holding as a matter of law, despite the existence of a management agreement, that a parent company was not subject to "operator" liability regarding actions taken by its subsidiary where the parent company did not actually manage the subsidiary). The types of services that Alper **could** have provided under the Management Agreement are completely consistent with its role as shareholder of its subsidiaries.

### 2.  Alper Owed No Duty To Warn Claimants

In the Supplemental Brief, the Claimants assert, without citing any caselaw, that their injuries were caused by Alper's failure to warn the Claimants and the public of the existence of TCE contamination in Dickson County. (Supp. Br. at 8.) As more fully set forth in the Flake Response, Alper **cannot be held liable** for failure to warn when it simply had no duty to the Adkins Claimants (to warn or otherwise). McConkey v. McGhan Med. Corp., 144 F. Supp. 2d 958, 964 (E.D. Tenn. 2000) (holding that where the plaintiff offered no proof that the parent and its subsidiary acted as one, the parent had no duty to the subsidiary's customers, and, accordingly, the plaintiffs' attempt to impose on the parent the subsidiary's duties to its customers – including **any duty to warn under products** liability law – must fail); Ham v. Hosp. of Morristown, Inc., 917 F.

---

any other matter remotely related to the Claimants, and the Claimants provide no explanation of the case or their reasons for citing to it. See Kramer opinion, Apx. 8.

Supp. 531, 534 (E.D. Tenn. 1995) ("In Tennessee, while all persons have a duty to use reasonable care not to engage in conduct that will foreseeably cause injury to others, they do not ordinarily have a duty to act affirmatively to protect others from conduct other than their own.").  In addition, the "duty to warn" is a concept specific to products liability law.  The Claimants have not cited any law supporting their contention that there is a duty to warn by a non-polluting parent in the environmental context because no such duty exists.

Accordingly, the Claimants have failed to allege any facts that would give rise to a plausible claim that Alper directly engaged in remediation activities in Dickson, whether negligently or not.

**B.      Alper Has No Indirect Liability to Claimants**

Because the Claimants have not asserted any theory under which Alper could be directly liable to them, they assert that their allegations could somehow support an indirect claim based on an alter ego theory of liability.  As set forth completely in the Flake Response, the Claimants have failed to allege **any** facts that could support the extraordinary remedy of piercing Alper's corporate veil to support a claim against Alper.  In the Supplemental Brief, the Claimants make no effort to remedy their pleading failing as it relates to the alter ego claim.  Because no facts are alleged to support an alter ego claim, the Bankruptcy Court's dismissal of the alter ego claims on that basis must be affirmed.

In the Supplemental Brief, the Claimants slyly try to ignore their absolute failure to plead a claim by arguing exclusively that their alter ego claims against Alper were not released under Saltire's confirmed plan of reorganization, which embodied a settlement between Saltire, Alper and Saltire's creditors' committee (in return for payment by Alper of $1 million to Saltire's estate).  The Claimants would like the Court to focus on the scope and extent of the release because that would imply that they had stated a claim for alter ego, which they have not.  Even as to the

13

argument made in the Supplemental Brief, which is mooted by their failure to state a claim, the

Claimants are simply wrong as to whether the Saltire release would apply.  Alper fully briefed this

issue in the Flake Response, and will respond herein only to one issue central to the analysis.

        The Claimants' argument depends on the Court taking the extraordinary step of

applying Tennessee law to a question of whether the corporate veil should be pierced between two

Delaware corporations.  Contrary to the Claimants' assertion that Tennessee law should apply,

under clear Second Circuit precedent, Delaware law controls the alter ego analysis here where both

Alper and Saltire are incorporated in Delaware.  See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d

Cir. 1995) ("Under New York law, the law of the state of incorporation controls the analysis of alter

ego claims."); Kalb, Voorhis & Co. v. Am. Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a

corporation is a creature of state law whose primary purpose is to insulate shareholders from legal

liability, the state of incorporation has the greater interest in determining when and if that insulation

is to be stripped away").  The sole basis for the Claimants' argument that the law of incorporation

need not apply to an alter ego analysis is one state court case, Serio v. Ardra Ins. Co., 761 N.Y.S.2d

1 (N.Y. App. Div. 2003), which is non-binding and inapposite.  In Serio, the state court affirmed the

trial court's decision to apply New York law to the analysis of whether to pierce the corporate veil

of a reinsurance company incorporated under the laws of a foreign country - Bermuda - that was an

"exempt" Bermudan corporation not authorized to sell insurance in Bermuda or to do business with

Bermuda residents and was controlled by an individual in New York.  See Serio, 761 N.Y.S.2d at 1.

However, a review of the Serio decision (and the case of Curiale v. Tiber Holding Corp., No. 95-

05284, 1997 WL 597944 (E.D. Pa. Sept. 18, 1997), cited by the Serio court in support of its

holding) demonstrates a crucial distinction from the case at hand – the Bermuda court would not

give credit to any New York judgment.  Thus, the choice of law analysis in that case was skewed by

the recognition that the outcome of a veil-piercing claim was pre-determined by a court of a

jurisdiction not bound to give full faith and credit to the New York court's ruling. Furthermore, the Bermudan interest in a determination of whether to allow the piercing of the corporate veil of an "exempt" corporation that is not authorized to do business within that country is significantly outweighed by the interests of the State of Delaware in ensuring predictability of outcomes with respect to maintenance of the integrity of the corporate form of entities incorporated in that state. Accordingly, the Claimants' proposition that Tennessee law should apply to an alter ego analysis is simply incorrect. For that reason, and for the reasons in the Flake Response, any alter ego claim that Claimants may have asserted (which they did not) was released by the Saltire plan of reorganization.

## II.

### BANKRUPTCY COURT PROPERLY EXERCISED DISCRETION IN DENYING CLAIMANTS' REQUESTS FOR DISCOVERY

For the same reasons set forth in the Flake Response, the Bankruptcy Court properly denied the Armstrong Claimants' requests for discovery. The Bankruptcy Court would also have been well within its discretion if it had denied the Claimants the right to amend their claims.

## III.

### BANKRUPTCY COURT PROPERLY DISMISSED ADKINS CLAIMS

The Bankruptcy Court properly dismissed the Adkins Claims, despite the fact that they are asserted to be personal injury claims. It is well settled in the Second Circuit that a bankruptcy court has "the authority . . . to apply . . . dispositive legal defenses in the allowance of claims, **including personal injury claims**." U.S. Lines, Inc. v. U.S. Lines Reorganization Trust, 262 B.R. 223, 234 (S.D.N.Y. 2001) (emphasis added); In re Chateaugay Corp., 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1990) ("the bankruptcy court must have jurisdiction to make the threshold determination of whether as a matter of law, a claim exists which can be asserted against the debtor, even if that claim sounds in personal injury or wrongful death"); see also In re Dow Corning Corp.,

215 B.R. 346, 360 (Bankr. E.D. Mich. 1997) ("The sole intent of the exclusionary clause [in 28

U.S.C. § 157(b) (2)(B)] is to protect a personal injury claimant's right to trial ***if that right is shown***

***to exist***.") (emphasis added).

   Thus, a proceeding to determine whether to disallow even a personal injury claim as

a matter of law is a core proceeding that the Bankruptcy Court has jurisdiction to hear because such

a proceeding determines, in turn, if any right to trial exists. Id. at 361 (motion for summary

judgment regarding personal injury claims is "a core proceeding which [the bankruptcy court] may

legally hear and determine"). As such, disposition of the Adkins Claims was a core and well within

the Bankruptcy Court's jurisdiction.[10]

---

[10] In relying on 28 U.S.C. § 157(b)(2)(B), the Adkins Claimants ignore a "critical distinction in § 157(b)(2)(B) between the fundamental jurisdiction of bankruptcy courts over proceedings involving the allowance or disallowance of claims, including personal injury and wrongful death claims, versus the liquidation or estimation thereof for the purpose of distributions." In re Chateaugay Corp., 111 B.R. at 76.

Similarly, the Adkins Claimants cannot rely on 28 U.S.C. § 157(b)(5) because that section deals only with where a trial of a claim must be heard, not adjudication of a claim as a matter of law. As the Chateaugay court held, "[t]he statute unequivocally states that the forum for **trying** a personal injury tort or wrongful death claim is limited to the district court. However, there is no such proscription for summarily disposing of claims which have no basis in law . . . where a trial would not be necessary. Id. 76 (emphasis added).

**CONCLUSION**

For all the foregoing reasons, Alper respectfully submits that the Court should

(i) uphold and affirm the Dismissal Orders in their entirety; and (ii) grant Alper such other and

further relief as this Court deems necessary and appropriate.

Dated:  New York, New York
        June 11, 2008

                                        Respectfully submitted,

                                        MILBANK, TWEED, HADLEY & M^cCLOY LLP

                                        By: /s/ Andrew M. Leblanc
                                        Luc A. Despins (LD 5141)
                                        Andrew M. Leblanc (*pro hac vice*)
                                        Jessica Fink (JF 6399)
                                        1 Chase Manhattan Plaza
                                        New York, New York 10005
                                        (212) 530-5000

                                        *Counsel for Appellee-Alper Holdings USA, Inc.*