**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————— x

In re:                                    :        Chapter 11
                                          :        Case No. 07-12148 (BRL)
ALPER HOLDINGS USA, INC.,                 :
                                          :
                    Debtor.               :

————————————————— x
                                          :
HARRY HOLT, et al.,                       :
                                          :
                    Appellants,           :        District Court
                                          :        Case No. 08-cv-02489-CM
           v.                             :        (Consolidated)
                                          :
ALPER HOLDINGS USA, INC.,                 :
                                          :
                    Appellee.             :

————————————————— x
                                          :
RAY AND CATHY FLAKE,                      :
                                          :
                    Appellants,           :
                                          :
           v.                             :
                                          :
ALPER HOLDINGS USA, INC.,                 :
                                          :
                    Appellee.             :

————————————————— x
                                          :
JON AND CHARLOTTE ARMSTRONG,              :
                                          :
                    Appellants,           :
                                          :
           v.                             :
                                          :
ALPER HOLDINGS USA, INC.,                 :
                                          :
                    Appellee.             :

————————————————— x

```
───────────────────────────── x
                              :
THE ADKINS CLAIMANTS,         :
                              :
                  Appellants, :
                              :
            v.                :
                              :
ALPER HOLDINGS USA, INC.,     :
                              :
                   Appellee.  :
───────────────────────────── x
```

## BRIEF OF APPELLEE

MILBANK, TWEED, HADLEY & MᶜCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

*Counsel for Debtor-Appellee Alper Holdings USA, Inc.*

# TABLE OF CONTENTS

Page

COUNTER-STATEMENT OF ISSUES PRESENTED ................................................................. 1

SUMMARY OF ARGUMENT ........................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

    Saltire/Alper History ........................................................................................... 3

    Alper's Chapter 11 Case ........................................................................................... 5

    Holt Claims ........................................................................................... 5

    Dismissal Order ........................................................................................... 6

ARGUMENT ........................................................................................... 7

DISMISSAL ORDER SHOULD BE AFFIRMED ........................................................................................... 7

    A.   Alter Ego Claims Against Alper Were Released ........................................................................................... 7

        1.  Delaware Law Controls Alter Ego Analysis ........................................................................................... 8

        2.  Any Alter Ego Claims Were Property of Saltire's Estate and Were Released ..... 10

        3.  Holt Claimants Are Asserting General Claims ........................................................................................... 13

        4.  Holt Claimants' *In Pari Delicto* Arguments Are Simply Wrong ........................... 16

        5.  Holt Claimants Have Not Alleged
            Any Facts To Support Particularized Alter Ego ................................................... 18

CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

American Nat. Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),
    714 F.2d 1266 (5th Cir. 1983) ........................................................................................... 10

Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G.,
    215 F.3d 219 n.2 (2d Cir. 2000) ........................................................................................ 16

Bell Atl. Corp. v. Twombly,
    127 S.Ct. 1955 (2007) ...................................................................................................... 18

Bush v. O.P.E.I.U. Local 153,
    499 F. Supp. 2d 571 (S.D.N.Y. 2007) .............................................................................. 18

Continental Bakers Life Inc. Co. v. Bank of Alamo,
    578 S.W.2d 625 (Tenn. 1979) .......................................................................................... 19

Curiale v. Tiber Holding Corp.,
    No. 95-05284, 1997 WL 597944 (E.D. Pa. Sept. 18, 1997) .............................................. 8

Da Silva v. Kinsho Intern. Corp.,
    210 F. Supp. 2d 241 (S.D.N.Y. 2000) ................................................................................ 6

Duke Energy Trading & Mktg. LLC v. Enron Corp. (In re Enron Corp.),
    No. 01-16034 (AJG), 2003 WL 1889040 (Bankr. S.D.N.Y. Apr. 17, 2003) ................ 8, 11, 12

Fletcher v. Atex, Inc.,
    68 F.3d 1451 (2d Cir. 1995) ............................................................................................... 8

Francisco v. Bowman,
    No. 03-05527, 2004 WL 1794593 (6th Cir. Aug. 10, 2004) ........................................... 14

Hirsch v. Arthur Andersen & Co.,
    72 F.3d 1085 (2d Cir. 1995) ............................................................................................. 17

In re Icarus Holding, LLC,
    391 F.3d 1315 (11th Cir. 2004) ........................................................................................ 15

In re Ontos, Inc.,
    478 F.3d at 430-31 ........................................................................................................... 18

In re Saltire Industrial, Inc.,
    Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004) .......................................................... 4

In re Van Diepen, P.A.,
    No. 06-14517, 2007 WL 1577961 (11th Cir. May 31, 2007) ........................................... 18

Kalb v. Voorhis & Co. v. American Fin. Corp.,
    8 F.3d 130 (2d Cir. 1993) ........................................................................................ passim

Koch Refining v. Farmers Union Cent. Exch., Inc.,
    831 F.2d 1339 (7th Cir. 1987) .................................................................................... 10, 13

Mediators, Inc. v. Manney,
    No. 93-02304, 1996 WL 554576 (S.D.N.Y. Sept. 30, 1996) ........................................... 17

McConkey v. McGhan Med. Corp.,
    144 F.Supp. 958 (E.D. Tenn. 2000) ..........................................................................19

Murray v. Miner,
    876 F. Supp. 512 (S.D.N.Y. 1995)..............................................................11, 12, 14

Pereira v. Cogan,
    Civ. A. No. 00 Civ. 619 (RWS), 2001 WL 243537 (S.D.N.Y. Mar. 8, 2001)........11, 13

Ross v. Bolton,
    904 F.2d 819 (2d Cir. 1990)...................................................................................18

Schmidt v. Polish People's Republic,
    742 F.2d 67 (2d Cir. 1984) ....................................................................................17

Serio v. Ardra Ins. Co.,
    761 N.Y.S.2d 1 (N.Y. App. Div. 2003) .......................................................................8

Shearson Lehman Hutton, Inc. v. Wagoner,
    944 F. 2d 114 (2d Cir. 1991)............................................................................16, 17

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002)...................................................................................18

St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,
    884 F.2d 688 (2d Cir. 1989)..............................................................................11, 12

Steinberg v. Buczynski,
    40 F.3d 890 (7th Cir. 1994).....................................................................................15

Steyr-Daimler-Puch of Am. Corp. v. Pappas,
    852 F.2d 132 (4th Cir. 1988)...................................................................................11

## Statutes

11 U.S.C. § 1107(a), 1108..............................................................................................5

## Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................19

Appellee Alper Holdings USA, Inc. respectfully submits this appellee brief in opposition to the brief ("Appeal Br.") filed by the Holt Claimants[1] in support of their appeal (the "Appeal") from the Memorandum Decision and Order Granting Objections of Alper Holdings USA, Inc. to Proofs of Claim Filed by (i) Armstrong Plaintiffs and (ii) Holt Plaintiffs, dated February 28, 2008 (the "Dismissal Order," Apx. 1)[2] entered in the United States Bankruptcy Court for the Southern District of New York (Lifland, B.J.) (the "Bankruptcy Court").

## COUNTER-STATEMENT OF ISSUES PRESENTED

1.    Whether the Bankruptcy Court properly applied Delaware law in analyzing alter ego claims of Saltire[3] against its former parent, Alper, where both Saltire and Alper are Delaware corporations.

2.    Whether the Bankruptcy Court was correct in holding that the Holt Claimants' claims were "general" alter ego claims that were released by Saltire in its chapter 11 case, thereby barring Saltire's creditors (including the Holt Claimants) from asserting such claims.

3.    Whether, even taking all of the Holt Claimants' allegations as true, the Bankruptcy Court was correct in holding that the Holt Claimants failed to allege any basis upon which Alper could be determined to be the alter ego of Saltire even if such claims had not been released.

## SUMMARY OF ARGUMENT

The Holt Claimants ignore a binding order of the Bankruptcy Court in the Saltire bankruptcy – to which they did not object – in a desperate attempt to pursue specious claims against Alper, a perceived corporate deep pocket. With little regard for the requirement of counsel that allegations have a good faith basis in fact, the Holt Claimants assert an unbelievable scheme of

---

[1]    The Holt Claimants include Harry Holt, Beatrice Holt, Sheila Holt-Orstead, Jasmine Orsted, Bonita Holt, O'Brian Holt, Brandon Holt, Patrick Holt, Bianca Bentley, Demetrius Holt and David Brown (collectively, the "Holt Claimants").

[2]    "Apx. __" refers to the tab numbers in the "Appendix of Items Included In Brief of Appellee."

[3]    Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Appeal Brief.

corporate looting of Saltire by Alper.  In this appeal, the Court does not have to consider the veracity of the Holt Claimants' allegations, which Alper vehemently disputes, but rather whether the Holt Claimants can assert corporate looting and fraudulent transfer claims against Alper when Saltire has released those very claims for good consideration as part of a court-approved settlement. As part of the Saltire bankruptcy, Alper negotiated with the Saltire Creditors Committee (as defined below), acting on behalf of Saltire, a settlement of the claims between Alper and Saltire.  In return for a release from Saltire, including releases of, *inter alia*, alter ego, piercing the corporate veil and fraudulent transfer claims, Alper agreed to forego its claims against Saltire and to pay $1 million to Saltire.  The very claims that the Holt Claimants assert for corporate looting, even dressed up as piercing the corporate veil, alter ego or fraudulent transfer claims, fit squarely within the release granted by Saltire.

Recognizing the weakness of their claims, the Holt Claimants make a variety of arguments that are so clearly contrary to controlling law that they approach frivolity, if they do not cross the line.  Among these baseless arguments are the following:

- That this Court should take the unprecedented step – contrary to a bevy of controlling decisions – of applying Tennessee law to a question of whether a bankrupt Delaware corporation had standing to assert (and settle) alter ego claims against its parent, also a Delaware corporation.  As remarkable as this may be in any context, it becomes truly extraordinary given that *every* allegation asserted in support of their corporate looting/alter ego claims is a corporate transaction between Alper and Saltire that occurred wholly outside of Tennessee.

- That the doctrine of *in pari delicto* prevented a settlement between Saltire and Alper, an argument that the Holt Claimants never raised before the Court below.  To make this argument, the Holt Claimants again ignore controlling Second Circuit cases and cases decided by this Court that have addressed this exact argument and rejected the very argument raised.

- That their alter ego claims are specific as to them, despite the fact that **all of** the allegations that they point to as to why Alper was Saltire's alter ego involve allegations of corporate looting or fraudulent transfers that, if they had occurred, would have affected all of Saltire's creditors equally.

These arguments are without merit; and the Dismissal Order must be affirmed.

## **FACTUAL BACKGROUND**

### **Saltire/Alper History**

Saltire was a major industrial company that began operations in the early 1800s and whose stock was listed on the New York Stock Exchange for much of its existence – including the entire time it is alleged to have engaged in operations that contributed to environmental contamination in Dickson, Tennessee.  See Debtor Saltire Industrial, Inc.'s Modified First Amended Disclosure Statement (the "Saltire DS"), Apx. 2, Exhibit C, at 8.  From approximately 1964 until March 1985, Saltire operated the Dickson Plant where it made automotive tire valves and associated products and where TCE was used as a degreaser.  The Dickson Plant ceased operations in March 1985.

In 1992, seven years after the Dickson Plant closed, and decades after the alleged disposal of industrial waste in Dickson County first occurred, Alper became the controlling shareholder of First City, which was then Saltire's parent, through First City's then-pending prepackaged chapter 11 case.  See Appeal Br. at 9; Saltire DS, Apx. 2, Exhibit C, at 17.  Accordingly, Alper became the indirect parent company of First City's subsidiaries, including Saltire.  Notably, First City was not, and Alper did not become, a successor in interest to Saltire; Saltire did not assign any of its current or prospective liabilities to First City or Alper; and First City and Alper did not acquire or assume any of Saltire's current or prospective liabilities by operation of law or otherwise.  See Saltire DS, Apx. 2, Exhibit C, at 17.

On August 17, 2004, in part to deal with liabilities related to the Dickson Plant, Saltire filed a voluntary petition for relief in the Bankruptcy Court under chapter 11 of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").[4]  On March 8, 2006, an order (the "Confirmation Order,") Apx. 2, Exhibit E, was entered in Saltire's bankruptcy case confirming Saltire's Modified First Amended Chapter 11 Plan of Liquidation (the "Saltire Plan") Apx. 2, Exhibit F).  The Saltire Plan, among other things, provided that Alper would contribute $1,000,000 in cash to the Saltire estate and release claims it held against Saltire in exchange for a general release and waiver of any claims or causes of action Saltire's estate may have held against Alper.  This contribution of cash in return for a release of Saltire's claims against Alper was part of global settlement (the "Saltire-Alper Settlement"), which came after extensive negotiations between Alper and the Official Committee of Unsecured Creditors of Saltire (the "Saltire Creditors Committee") on behalf of the entire unsecured creditor body (including the Holt Claimants).  See Saltire DS, Apx. 2, Exhibit C, at 17 ("During this period, Alper and the Official Committee were negotiating, among other things, the amount of the settlement contribution to be made by, and the scope of the proposed releases to be granted to, Alper").[5]  Three of the five members of the Saltire Creditors Committee were environmental claimants and thereby similarly situated to the Holt Claimants.  Recognizing the fairness of the settlement and the negotiations that produced it, the Bankruptcy Court approved the Saltire-Alper Settlement.  See Saltire Plan, Apx. 2, Exhibit F, at § 13.1 (releasing Alper from any claims that Saltire could assert directly or that a

---

[4]    See In re Saltire Industrial, Inc., Case No. 04-15389 (BRL) (Bankr. S.D.N.Y. 2004).

[5]    In their Harry Holt Claimants' Memorandum of Law In Support Of Response To Objections of Alper Holdings USA, Inc. To Proofs of Claim Filed By The Harry Holt Claimants (the "Memorandum of Law," Apx. 3) below, the Holt Claimants falsely claimed that the release of alter ego claims by Saltire against Alper was negotiated on both sides of the table by Wayne Smith in his dual capacities as Chief Financial Officer of Alper and as the liquidating trustee of Saltire.  See Memorandum of Law, Apx. 3, at 21-22.  As noted above, the Saltire-Alper Settlement was negotiated by the Saltire Creditors Committee.  To further belie the Holt Claimants' reckless allegations, it bears noting that Wayne Smith did not assume his role as liquidating trustee until consummation of the Plan, which occurred months after negotiation and execution of the settlement.

creditor could assert derivatively on behalf of Saltire or its estate); Confirmation Order, Apx. 2, Exhibit E, at ¶ 18 (same).  The Court found in the Confirmation Order that "[t]he Plan constitutes and embodies a good faith compromise and settlement of certain disputed claims and issues (including, but not limited to, those claims and issues encompassed by the Saltire-Alper Settlement), which compromise and settlement is fair, equitable and within the range of reasonableness, is in the best interests of the Debtor, the Estate and its creditors, and was entered into in good faith, at arms' length and otherwise satisfies the requirements of Bankruptcy Rule 9019."  Id., Apx. 2, Exhibit E, at ¶ GG.  The Holt Claimants did not object to confirmation of the Saltire Plan or the Saltire-Alper Settlement contained therein, notwithstanding that they were parties in interest in the Saltire bankruptcy case and had filed proofs of claim against Saltire that they continue to litigate to this day.  The Saltire Plan became effective on April 25, 2006.

**Alper's Chapter 11 Case**

On July 13, 2007 (the "Petition Date"), Alper commenced its case before the Bankruptcy Court under chapter 11 of the Bankruptcy Code.  Alper continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**Holt Claims**

On September 21, 2007, on the claims bar date, each of the eleven Holt Claimants filed a proof of claim against Alper asserting unliquidated personal injury and property damage claims, each in the amount of $40,000,000 (collectively, the "Holt Claims").[6]  In the Holt Claims,

---

[6]     Prior to the Petition Date, on or about December 3, 2003, the Holt Claimants filed a complaint (the "Complaint") in state court in Tennessee against Saltire and Alper, among others, alleging that groundwater contamination caused by the disposal of TCE in Dickson County caused personal injury and property damage.  In the complaint, the Holt Claimants alleged that Alper is liable to the Holt Claimants "as the alter-ego of Scovill-Saltire . . . for the wrongful conduct of Scovill-Saltire."  See Complaint, Apx. 2, Exhibit B, at ¶ 15 ("Alper

the Holt Claimants asserted that Alper is liable for their claims because Alper (i) fraudulently

diverted assets away from Saltire while acting as its alter ego and (ii) is the successor in interest to

First City as a result of First City's bankruptcy in 1992 and is therefore liable for all the obligations

of First City (an allegation that the Holt Claimants had not previously made in the underlying

litigation).  Neither of these assertions have any basis in law or fact.[7]

Alper objected to the Holt Claims as not alleging any basis on which relief could be

granted.

**Dismissal Order**

On January 15, 2008, after briefing and a hearing, the Bankruptcy Court entered the

Dismissal Order, dismissing the Holt Claims and reaffirming its prior holding that Alper cannot be

"held liable, directly or indirectly, for claims arising out of or relating to Saltire['s] alleged

contamination or remediation in Dickson County, Tennessee."  (Dismissal Order, Apx. 1, at 3.)

Specifically, the Bankruptcy Court held that "[w]hile this Court previously did not address whether

Saltire's alter ego claims were property of the estate, . . . it is clear based upon the conduct presently

---

is the alter ego of and controls the assets of Saltire, and has **diverted Saltire's assets in such a manner as to leave Saltire grossly undercapitalized**") (emphasis added).  Saltire's "wrongful conduct" allegedly includes trespass, battery, permanent nuisance, negligence, and punitive damages, all related to Saltire's alleged negligent disposal of waste at the Dickson Landfill.

[7]   In 1992, seven years after the Dickson Plant closed and decades after the disposal of industrial waste by Saltire at the Dickson Landfill is alleged to have first occurred, Alper received a majority of the stock First City as a distribution under First City's own chapter 11 plan of reorganization in return for Alper's claims against First City.  Alper thereby became the indirect parent company of First City's subsidiaries, including Saltire, but Alper never merged with Saltire, never purchased all of Saltire's assets and liabilities, and never otherwise became liable for Saltire's liabilities.  The Bankruptcy Court correctly held that it would not "make use of this incidental ownership interest to hold Alper indirectly liable for events that predated Alper's ownership interest in Saltire by nearly two decades." Dismissal Order, Apx. 1, at 6 (quoting Da Silva v. Kinsho Intern. Corp., 210 F. Supp. 2d 241, 244 (S.D.N.Y. 2000) ("This Court agrees that a parent company should not lightly be held

alleged that such alter ego claims were in fact property of Saltire's bankruptcy estate and,

accordingly, that those alter ego claims were released under section 13.1 of the Saltire Plan."

(Dismissal Order, Apx. 1, at 1.)

## ARGUMENT

## DISMISSAL ORDER SHOULD BE AFFIRMED

The Holt Claimants have failed to allege any facts that would state a claim for relief

against Alper that is plausible on its face; and the only claim that they have attempted to assert is

barred by a binding and enforceable release.  Accordingly, the Bankruptcy Court's dismissal of the

Holt Claims must be affirmed.

### A.    Alter Ego Claims Against Alper Were Released

The Bankruptcy Court in the Dismissal Order concluded that the nature of the claims

asserted by the Holt Claimants fit squarely within the release of claims between Saltire and Alper in

the Saltire Confirmation Order, such that these same claims could not be brought now by the Holt

Claimants.  In so holding, the Bankruptcy Court correctly concluded that (1) Delaware law applied

to the questions before it; (2) under Delaware law generalized alter ego claims belong to the

corporation and can be released by the corporation; and (3) the claims asserted by the Holt

Claimants were generalized alter ego claims.  (Dismissal Order, Apx. 1, at 9-11.)  Accordingly, the

Bankruptcy Court dismissed the Holt Claims.  (Dismissal Order, Apx. 1, at 12.)  Each of these

decisions, and ultimately the decision dismissing the Holt Claims, was correct as a matter of law

and must be affirmed.

---

responsible for the acts of its subsidiaries absent proof that the parent was involved in the
**particular circumstances** giving rise to litigation.")).

1.    **Delaware Law Controls Alter Ego Analysis**

The Bankruptcy Court correctly began its analysis by concluding that Delaware law should control the question of whether corporate-veil piercing was appropriate between two Delaware corporations.  Apparently recognizing that their arguments fail under Delaware law, the Holt Claimants grasp at straws to argue that Tennessee law should control the analysis of whether any alter ego claim was property of Saltire's estate and was released by Saltire.  Appeal Br. at 10-11.  As the Bankruptcy Court held, however, clear and binding precedent from this Circuit mandates that Delaware law appropriately applies to the alter ego analysis.  See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) ("Under New York law, the law of the state of incorporation controls the analysis of alter ego claims."); Kalb v. Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, 132 (2d Cir. 1993) ("[b]ecause a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); see also Duke Energy Trading & Mktg. LLC v. Enron Corp. (In re Enron Corp.), No. 01-16034 (AJG), 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003) ("under the interest analysis applied by New York law, the law of the state of [incorporation of the entity whose corporate veil the claimants seek to pierce] applies to determine whether the [subsidiaries] have the right to assert a claim to pierce their own corporate veils.") (citing Kalb, 8 F.3d at 132).[8]

---

[8]    The sole basis for the Holt Claimants' argument that the law of incorporation need not apply to an alter ego analysis is one state court case, Serio v. Ardra Ins. Co., 761 N.Y.S.2d 1 (N.Y. App. Div. 2003), which is not binding on this Court and is inapposite.  In Serio, the state court affirmed the trial court's decision to apply New York law to the analysis of whether to pierce the corporate veil of a reinsurance company incorporated under the laws of a foreign country - Bermuda - that was an "exempt" Bermudan corporation not authorized to sell insurance in Bermuda or to do business with Bermuda residents and was controlled by an individual in New York.  See Serio, 761 N.Y.S.2d at 1.  However, a review of the Serio decision (and the case of Curiale v. Tiber Holding Corp., No. 95-05284, 1997 WL 597944 (E.D. Pa. Sept. 18, 1997), cited by the Serio court in support of its holding) demonstrates a

Kalb is illustrative of the fact that the choice of law test set forth by the Holt Claimants – location of the injury – is simply not the correct analysis.  In Kalb, the Second Circuit considered an appeal from a decision of the district court dismissing a suit brought by a bondholder against the parent corporation of a bankrupt debtor seeking to collect payment on the bonds from the debtor's parent on an alter ego theory.  The Circuit Court affirmed dismissal of the action under Texas law, the law of the debtor's state of incorporation, rather than applying the laws of the states (i) where the debtor's obligations to the plaintiff were incurred, (ii) that governed the contract that formed the basis for the plaintiff's damages or (iii) where the debtor's principal place of business was located.  Restating the "interest analysis" called for under New York law, the Kalb court held that "the law of the jurisdiction having the greatest interest in the litigation will be applied and that **the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.**"  Kalb, 8 F.3d at 132 (emphasis added). Noting that "[t]he issue is the limited liability of shareholders of a corporation" as opposed to the debtor's underlying liability, '[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders: 'Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state

---

crucial distinction from the case at hand – the Bermuda court would not give credit to any New York judgment.  Thus, the choice of law analysis in that case was skewed by the recognition that the outcome of a veil-piercing claim was pre-determined by a court of a jurisdiction not bound to give full faith and credit to the New York court's ruling. Furthermore, the Bermudan interest in a determination of whether to allow the piercing of the corporate veil of an "exempt" corporation that is not authorized to do business within that country is significantly outweighed by the interests of the State of Delaware in ensuring predictability of outcomes with respect to maintenance of the integrity of the corporate form of entities incorporated in that state.

of incorporation has the greater interest in determining when and if that insulation is to be stripped away.'" Id.[9]

### 2.  Any Alter Ego Claims Were Property of Saltire's Estate and Were Released

Under applicable Delaware law, the Bankruptcy Court properly concluded that generalized alter ego claims against Alper were property of Saltire's estate, such that Saltire had the ability to settle those claims. Where a debtor has a prepetition cause of action, that cause of action is property of the debtor's estate and the debtor has the exclusive right to prosecute and settle that action during the administration of its estate, notwithstanding the fact that creditors or other parties may have had standing to prosecute the action during the prepetition period. See Koch Refining v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1342-43 (7th Cir. 1987) (discussing American Nat. Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266 (5th Cir. 1983)). The Court of Appeals for the Second Circuit has held that whether an alter ego cause of action will be included in a debtor's estate – and so subject to release or settlement by the debtor – depends on whether applicable state law characterizes such an action as a creditor remedy or a

---

[9]    Moreover, even if the sole determining factor were the "location of injury," Tennessee law would not apply. The Holt Claimants baldly assert that "all of the transactions underlying the Holt Claimants' claims occurred in Tennessee." Appeal Br. at 10. In support of their conclusion that Tennessee law should apply, the Holt Claimants cite to their lack of contact with Alper or Saltire in Delaware; the location of the Dickson Plant, the Holt Claimants' property and the alleged damages suffered by the Harry Holt Claimants; and the acquisition by Alper of a company with liabilities in Tennessee. Appeal Br. at 9-10. However, the real transactions at issue in the Holt Claimants' veil piercing theory are the corporate transactions between Alper, Saltire and First City that the Holt Claimants described in great detail in their pleadings before the Bankruptcy Court and essentially incorporate by reference in the Appeal Brief. See, e.g., Appeal Br. at 22-23; Memorandum of Law, Apx. 3, at 19-24. These transactions, if they occurred at all, occurred wholly outside of Tennessee, and the Holt Claimants make no effort to suggest otherwise. Because the Holt Claimants contend that it was this series of corporate transactions that gave rise to their alter ego theory, even under their formulation of this issue, the location of these transactions (primarily New York and Delaware) would be relevant, not where the Holt Claimants live.

corporate right.  See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 700 (2d Cir. 1989).

As discussed above, the applicable state law here is the law of Delaware.  Delaware characterizes an alter ego cause of action as a corporate right.  See Enron Corp., 2003 WL 1889040, at *3 (citing Murray v. Miner, 876 F. Supp. 512, 517 (S.D.N.Y. 1995)) ("a Delaware court would permit a debtor corporation to assert a claim to pierce its own corporate veil."); Pereira v. Cogan, Civ. A. No. 00 Civ. 619 (RWS), 2001 WL 243537, at *19-20 (S.D.N.Y. Mar. 8, 2001)).

Accordingly, because any claim that Alper diverted Saltire's assets in such a manner to leave Saltire grossly undercapitalized, or that First City did the same to Saltire, was indisputably property of Saltire's estate, only Saltire had the right to assert and settle an alter ego or related claim against Alper.  See In re Ontos, Inc., 478 F.3d 427, 430-31 (1st Cir. 2007) (trustee has exclusive right to compromise alter ego claims because they constitute property of the estate); Kalb, 8 F.3d at 132; Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132 (4th Cir. 1988) (holding that where state law of state of incorporation allowed corporation to bring alter ego action against its principals, if bankruptcy trustee, who succeeded to rights of corporate debtor, compromised such claim with the debtor's alter egos, the debtor's creditors were barred from bringing subsequent alter ego suits); Enron Corp., 2003 WL 1889040, at *3 ("Thus, the trustee or debtor-in-possession would have exclusive standing to maintain a Delaware corporation's alter ego claim of a general nature."); Pereira v. Cogan, 2001 WL 243537, at *19-20 (holding that the Trustee has standing to bring a veil-piercing claim – "piercing the corporate veil and alter ego actions are allowed to prevent unjust enrichment or inequitable results; they are not based solely on a policy of protecting creditors, [and therefore it is] not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory").  As the Second Circuit has stated:

> It is plain that Congress intended to protect all creditors by making the trustee the proper person to assert all claims against the debtor.  This

11

reasoning extends to common claims against the debtor's **alter ego** or others who have misused the debtor's property in some fashion.

St. Paul Fire, 884 F.2d at 701.  Thus, as the Bankruptcy Court concluded, the "law permits a debtor to pierce its own corporate veil because '[a]llowing the trustee or debtor-in-possession to pursue the claims avoids the prospect of creditors seeking to gain advantage over other creditors by pursuing the alter ego claims on a first-come, first-serve basis." (Dismissal Order at 10 (quoting Enron Corp., 2003 WL 1889040, at *4)).

Pursuant to the Saltire Plan and in exchange for valuable consideration, which benefited all of Saltire's creditors (including the Holt Claimants, as creditors of the Saltire estate), Saltire released Alper from any liability that Saltire could assert directly or any entity could assert derivatively or on behalf of Saltire or Saltire's estate.  See Saltire Plan, Apx. 2, Exhibit F, at § 13.1.  Because Saltire's estate had the exclusive right to bring an alter ego claim, Saltire's estate's release of Alper foreclosed any of Saltire's creditors, including the Holt Claimants, from asserting claims against Alper on an alter ego theory.  Alper has been released from any alter ego claims that may have arisen including, specifically, claims such as those asserted by the Holt Claimants in the Complaint and the Holt Claims.[10]

---

[10]     In the Appeal Brief, the Holt Claimants argue, based on Murray v. Miner that Saltire could not have released the Holt Claimants' alter ego claims against Alper because, analogizing to the fiduciary duty context, "a Delaware court would not permit a wholly-owned subsidiary to pierce its own corporate veil."  Appeal Br. at 15.  This analogy is simply flawed.  Notably, the court in Murray held that Delaware **would** allow a corporation to pierce its veil.  Murray, 876 F.Supp. at 516.  The only distinction is that the Murray court relied on the fiduciary duty principle to so hold.  Thus, even though the Holt Claimants dispute that Delaware law allows a subsidiary to pierce its own corporate veil, as with other of its arguments, they have cited to no cases from this Circuit (or Delaware for that matter) supporting that proposition, and instead merely question the premise of the cases cited by Alper.  Specifically, the Holt Claimants make much of the fact that in Murray, the District Court for the Southern District of New York looked to a Delaware breach of fiduciary duty standard in determining that Delaware law would allow a corporation to pierce its own corporate veil.  The Holt Claimants allege that Delaware law does not impose fiduciary obligations on a parent corporation *vis-a-vis* its wholly-owned subsidiary and, therefore,

**3.    Holt Claimants Are Asserting General Claims**

Having concluded under applicable Delaware law that generalized alter ego claims against Alper were property of Saltire's estate, the Bankruptcy Court finally analyzed the Holt Claims as alleged and properly concluded that the Holt Claimants were asserting generalized alter ego claims that had been released.  The Holt Claimants mistakenly argue that even if Saltire could release general alter ego claims against Alper, their claims should survive because the injuries asserted by the Holt Claimants are peculiar and personal to the Holt Claimants and, therefore, were not Saltire's to release.  Appeal Br. at 15-18.  The Holt Claimants grossly misconstrue the distinction made in the case law between generalized and particular claims for liability.  The alter ego claims asserted by the Holt Claimants are quintessential generalized alter ego claims because

> the alter ego action 'is based upon allegations that if proven would benefit all [the debtor's] creditors, i.e., making more assets available to satisfy [the debtor's] debts.... If [the individual creditor's] action is not stayed it would collect its claim from a pool of assets that should be available to all creditors.' . . . 'alter ego claims, 'if proved, would have the effect of bringing the property of the third party into the debtor's estate, and thus would benefit all creditors.'

Kalb, 8 F.3d at 132 (citations omitted); compare with Koch, 831 F.2d at 1348 ("A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has an interest in the cause."); see also Francisco v. Bowman, No. 03-05527, 2004 WL 1794593, at *2-3 (6th Cir. Aug.

---

Delaware law would not allow a wholly-owned subsidiary to pierce its corporate veil. However, breach of fiduciary duty actions do not have the same theoretical underpinnings as alter ego actions.  The former requires a respect for the separation of identities, and enforces the duty owed by the fiduciary to the beneficiary.  The latter requires a disregarding of identities, and provides a remedy for a wrong done to a third party.  Accordingly, just because Delaware law would not allow a wholly-owned subsidiary to assert a breach of fiduciary duty claim against its parent, it does not follow that a veil-piercing claim would be similarly prohibited as the same policy concerns are not implicated – the protection of minority shareholders is not the concern justifying the existence of the veil-piercing/alter ego doctrine.  See Pereira v. Cogan, 2001 WL 243537, at *19-20.

10, 2004) (determining that personal injury plaintiff lacked standing to bring general veil-piercing claim); Murray, 876 F. Supp. at 517 (holding that where complaint avers that parent wasted assets and impaired subsidiary's ability to meet its obligations, such wrongful acts equally injure other creditors and are general).

The Holt Claimants do not allege any actions that Alper took with respect to Saltire that was specific to the Holt Claimants.  In fact, in the laundry list of alleged wrongdoing that the Holt Claimants argue create a basis for imposing alter ego liability on Alper, not one act is directed at, or has anything to do with, the Holt Claimants.  Just by way of example, in their Appeal Brief, the Holt Claimants base their alter ego claim on the following alleged "facts":

- Alper overburdened Saltire with debt and divested Saltire of its most profitable businesses, leaving it inadequately capitalized;

- Saltire was insolvent the entire time Alper was its parent;

- Alper extracted millions of dollars from Saltire in fees for administrative services;

- Alper caused Saltire to make a series of asset transfers to various Alper subsidiaries and affiliates with no benefit to Saltire, including inter-company loans in the millions of dollars;

- Routine corporate formalities and record-keeping practices were ignored;

- The management and operational structures of Alper and Saltire overlapped; and

- Alper treated Saltire as a façade.[11]

---

[11]    All of the other purported examples of the harm that Alper allegedly inflicted upon Saltire accuse Alper of harming Saltire by taking its money and rendering it incapable of satisfying its liabilities.  Obviously such a claim, if true, harmed every creditor of Saltire, is derivative by nature, could have been brought by any creditor, and was clearly property of the estate. See, e.g., Attachment to Holt Claims, Apx. 2, Exhibit A, at 3 ("The Debtor used this control and influence to divert Scovill-Saltire's assets in such a manner to leave Scovill-Saltire grossly undercapitalized"); Attachment to Holt Claims, Apx. 2, Exhibit A at 3 ("Claimant holds an unliquidated claim in the approximate amount of $40,000,000.00 based on the successor liability of the debtor and the Debtor's fraudulent actions of diverting assets away from Scovill-Saltire and assigning the assets of First City while acting as the alter ego"); Response of Holt Claimants to Alper's Objection to Claims (the "Holt Response"), Apx. 4,

Appeal Br. at 22-23.  These allegations are quintessential examples of generalized alter ego claims

which, if true, harm every creditor; and which Delaware law makes clear belong to the corporate

actor and not to individual creditors – if true, they would be examples of Alper injuring the

bankrupt corporation itself, not a specific creditor.[12]  Accordingly, the alter ego claims asserted by

the Holt Claimants are general claims that were owned and released by Saltire.  See, e.g., Kalb, 8

F.3d at 132; see also In re Icarus Holding, LLC, 391 F.3d 1315, 1321 (11th Cir. 2004) (where

---

at 2 ("Insulating Alper from liability perpetrates injustice and unfairness where Alper has drained Saltire of all value and placed assets out of the reach of those harmed by its wrongdoing."); Holt Response, Apx. 4, at 10 ("Alper then proceeded to, in a concerted way, assume control of Saltire and redirect funds to related companies and to Alper's own coffers - safely out of the reach of claimants such as the Harry Holt Plaintiffs."); Holt Response, Apx. 4, at 10 ("Saltire's assets have been methodically removed over the course of the past twenty-three years, by both Alper and its predecessor in interest, First City."); Holt Response, Apx. 4, at 11 ("And those enterprises that held value such as the Alper Ink Group and Scovill Fasteners, were subsequently sold off or liquidated, and Alper siphoned off the proceeds."); Holt Response, Apx. 4, at 17 ("Allowing Alper to evade liability on these claims after it and its predecessor-in-interest derived significant benefit from the control and diversion of Saltire's assets is simply unjust and manifest abuse of the purposes of bankruptcy."); Memorandum of Law attached to Holt Response, Apx. 4, at 22 ("In addition, the cash assets Saltire had on hand were poorly managed or even squandered."); Memorandum of Law, Apx. 3, at 24 ("Alper's misuse of the corporate form to divert Saltire's assets and escape its know liabilities would perpetrate injustice and unfairness if left unremedied."); Memorandum of Law, Apx. 3, at 25 ("Alper's predecessor, First City, began its onslaught on Saltire's assets immediately upon acquiring Saltire"); Memorandum of Law, Apx. 3, at 25 ("Together, Alper and First City misused the corporate form at every turn in order to work injustice and fraud on the Harry Holt Plaintiffs, by stripping assets that should be available to provide redress for the Harry Holt Plaintiffs . . . .").

[12]   The Holt Claimants' reliance on Steinberg v. Buczynski is not only misplaced, but it highlights the fact that the claims being asserted by the Holt Claimants are general.  See Steinberg, 40 F.3d 890 (7th Cir. 1994).  In Steinberg, the bankruptcy trustee attempted to pierce the corporate veil to hold the corporation's shareholder "personally liable for the corporation's debt **to the pension fund**" in an attempt to obtain money that was not paid to the debtor's pension fund.  Id. at 891 (and noting that if the shareholders had wrongfully disregarded corporate formalities, the corporation would have a claim against the shareholders and the trustee could have enforced it).  The court found no evidence that the shareholders directly harmed the corporation itself by taking high salaries or looting corporate assets, only the pension fund was harmed.  Id.  Accordingly, the trustee was attempting to sue only on behalf of one creditor and not the bankrupt estate, which is not the case here.

shareholder blurs the line between himself and the corporation by taking assets of the corporation and using them to his own ends, an alter ego claim could be brought by all creditors and no creditor could show unique harm (aside from the fact that each creditor would demand a different amount in compensation)).

The obvious generality of the alter ego claims asserted by the Holt Claimants is evidence by the awkward argument raised by the Holt Claimants in an attempt to sidestep the Bankruptcy Court's holding below.  While basing their alter ego actions solely on allegations that Alper depleted Saltire's assets following Alper's acquisition of Saltire, the Holt Claimants argue that the alter ego claims they assert are specific to them because "not every creditor could state a claim [as] many creditors' claims did not arise until decades after Alper's acquisition of Saltire, which could be a factor in determining whether a veil-piercing remedy is appropriate as to those creditors."  Appeal Br. at 17.  This argument is nonsensical (not to mention the fact that Alper acquired Saltire in 1992 and "decades after Alper's acquisition of Saltire" will not have passed until sometime in the next decade).

### 4.    Holt Claimants' *In Pari Delicto* Arguments Are Simply Wrong

The Holt Claimants assert for the first time in the Appeal Brief an argument that "Saltire participated in the corporate looting that underlies the Holt Claimants' alter ego claims" (i.e., Saltire was *in pari delicto* with Alper) and, therefore, that the Holt Claimants' alter ego claims could not have been released by Saltire because Saltire was barred from asserting such claims against Alper in the first instance.  Appeal Br. at 18 (citing Shearson Lehman Hutton, Inc. v. Wagoner, 944 F. 2d 114 (2d Cir. 1991)).  As a preliminary matter, the Holt Claimants' attempt to raise this argument for the first time on appeal is improper and this Court should not consider it.  See Bayway Refining Co. v. Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 222 n.2 (2d Cir. 2000) ("an appellate court will not consider an issue raised for the first time on appeal.").  This is

the case even where "the new appellate claim is purely a legal question following a summary

dismissal proceeding." Schmidt v. Polish People's Republic, 742 F.2d 67, 70 (2d Cir. 1984).

Moreover, even if the Court were to entertain this argument, the Holt Claimants

grossly misconstrue the holding of Wagoner and its progeny.  This Court addressed the exact

mistaken argument that the Holt Claimants are making here in Mediators, Inc. v. Manney, No. 93-

02304, 1996 WL 554576 (S.D.N.Y. Sept. 30, 1996).  In Mediators, this Court held that in both

Wagoner and Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (2d Cir. 1995) (both cited by the Holt

Claimants),

> the Second Circuit was considering a trustee's standing to bring certain
> causes of action ***against third parties*** vis-à-vis the corporate debtor.
> Neither case speaks directly to the issue at bar, namely, the standing of
> the trustee to bring claims against the debtor itself, or those ***who
> control the debtor***. . . .  Thus, the Second Circuit distinguishes
> between actions brought against third parties whose conduct injured
> the corporate entity with the consent of management and ownership
> and those brought against the debtor itself ***or its alter ego*** for self-
> inflicted injury: the general rule barring a trustee from suing on behalf
> of creditors applies ***only in the former circumstance***.

1996 WL 554576, at *4-5 (emphasis added).  As the Second Circuit held in Kalb in rejecting

creditor's assertion that alter ego claim against debtor's parent corporation was "specific" to

creditor because bankruptcy trustee would be barred from asserting claim based on doctrine of *in

pari delicto*, "where the parties do not stand on equal terms and one party controls the other, the *in

pari delicto* doctrine does not apply."  Kalb, 8 F.3d at 133 ("the *in pari delicto* defense does not

apply to [ ] actions [where] the essential element of such claims is that a controlling shareholder

forced the corporation to act for the benefit of the shareholder through domination and control.

Because Appellant alleges that [the parent] dominated and controlled [the debtor subsidiary], the *in

pari delicto* doctrine would not bar [the debtor subsidiary] from asserting an alter ego claim, and an

individual creditor such as Appellant has no standing to assert an alter ego claim."); see also Ross v.

Bolton, 904 F.2d 819, 824 (2d Cir. 1990).  Thus, the argument that Wagoner prevents a trustee in bankruptcy from asserting alter ego claims is patently flawed.

**5.  Holt Claimants Have Not Alleged Any Facts To Support Particularized Alter Ego**

To state viable claims against Alper, the Holt Claimants must assert factual allegations that make the asserted claims "plausible," or at least above the speculative level.  Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (in order to defeat a motion to dismiss, a plaintiff must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"); see also Bush v. O.P.E.I.U. Local 153, 499 F. Supp. 2d 571, 572 (S.D.N.Y. 2007).  Moreover, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted.  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002); see also Twombly, 127 S.Ct. at 1965 ("factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]")).

The Bankruptcy Court properly concluded under this applicable standard that the Holt Claimants failed to state particularized alter ego claims against Alper, which are the only claims that could be asserted given the release.  As discussed in detail above, the Holt Claimants' allegations all relate to generalized alter ego claims, not particularized alter ego claims.[13]  See

---

[13]    If not generalized alter ego claims, the claims that the Holt Claimants are asserting appear to be fraudulent transfer claims – i.e., that Alper fraudulently diverted Saltire's assets (years after the alleged injury occurred) – dressed up as alter ego claims.  There can be no meaningful debate that fraudulent transfer claims were clearly released by the Saltire Plan.  See In re Van Diepen, P.A., No. 06-14517, 2007 WL 1577961, at *6 (11th Cir. May 31, 2007) (trustee settlement of fraudulent transfer claims barred creditors' state law claims against transferees because fraudulent transfer claims against third parties are property of the estate); In re Ontos, Inc., 478 F.3d at 430-31 (trustee has exclusive right to compromise fraudulent transfer and alter ego claims because they constitute property of the estate or

Section I.A.3 infra.  Given the unassailable application of the release provisions, the analysis of the Holt Claimants' pleading must be limited to determining whether they plead the only available claim, which they clearly do not under the governing law.[14]

---

could have been asserted by him for the benefit of all creditors, which is "consistent with the whole bankruptcy concept").

[14]  Even if this Court were to accept the Holt Claimants' argument that Tennessee law applies to the alter ego analysis, the Holt Claimants have failed to state a claim.  As discussed above, Alper did not exist at the time that Saltire operated the Dickson Plant and caused whatever damages that the Holt Plaintiffs allegedly suffered.  Under Tennessee law, in order for the Court to make a finding of alter ego, it must find that Alper exercised complete dominion and control over Saltire "***at the time of the transaction complained of***."  See McConkey v. McGhan Med. Corp., 144 F.Supp. 958 (E.D. Tenn. 2000) (emphasis in original); Continental Bakers Life Inc. Co. v. Bank of Alamo, 578 S.W.2d 625 (Tenn. 1979) (under Tennessee law, in order to pierce a corporations veil, one must show: 1) the parent corporation, **at the time of the transaction complained of**, exercises complete dominion over its subsidiary, not only of its finances, but of policy and business practices **in respect to the transaction under attack**, so that the corporate entity, as to that transaction, had no separate mind, will, or existence of its own; 2) Such control must have been used to commit a fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of third parties' rights, and 3) The aforesaid control and breach of duty must **proximately cause the injury** or unjust loss complained of.).  Accordingly, even if **all** of the allegation asserted by the Holt Plaintiffs are true – that Tennessee law applies to an alter ego action and that under Tennessee law such an action is not susceptible to release by the subsidiary, the Holt Plaintiffs **still would not be able to assert a claim against Alper.**

**CONCLUSION**

For all the foregoing reasons, Alper respectfully submits that the Court should

(i) uphold and affirm the Dismissal Order in its entirety; and (ii) grant Alper such other and further

relief as this Court deems necessary and appropriate.

Dated:  New York, New York
       June 11, 2008

                                 Respectfully submitted,

                                 MILBANK, TWEED, HADLEY & M$^c$CLOY LLP

                                 By:  /s/ Andrew M. Leblanc
                                 Luc A. Despins (LD 5141)
                                 Andrew M. Leblanc (*pro hac vice*)
                                 Jessica Fink (JF 6399)
                                 1 Chase Manhattan Plaza
                                 New York, New York 10005
                                 (212) 530-5000

                                 *Counsel for Appellee-Alper Holdings USA, Inc.*