**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**RAY AND CATHY FLAKE**

       **Appellants,**

   **v.**

**ALPER HOLDINGS USA, INC.,**

       **Appellee.**

**Civil Case No. 08 cv 2489 (CM)**
**(Consolidated)**

---

**HARRY HOLT, et al.,**

       **Appellants,**

   **v.**

**ALPER HOLDINGS USA, INC.,**

       **Appellee.**

---

**JON AND CHARLOTTE ARMSTRONG,**

       **Appellants,**

   **v.**

**ALPER HOLDINGS USA, INC.,**

       **Appellee.**

**THE ADKINS CLAIMANTS,**

      **Appellants,**

    **v.**

**ALPER HOLDINGS USA, INC.,**

      **Appellee.**

---

**JOINT REPLY BRIEF OF (I) RAY AND CATHY FLAKE, (II) JON AND CHARLOTTE ARMSTRONG AND (III) THE ADKINS CLAIMANTS**

---

Douglas T. Tabachnik, Esq. (DT6337)
**LAW OFFICES OF**
**DOUGLAS T. TABACHNIK, P.C.**
Woodhull House
63 W. Main Street, Suite C
Freehold, New Jersey 07728
Telephone: (732) 792-2760
Facsimile: (732) 792-2761

and

Sander L. Esserman, Esq. (SE0356)
Cliff I. Taylor, Esq. (CT4711)
STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, a Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

**ATTORNEYS FOR RAY AND CATHY**
**FLAKE, JON AND CHARLOTTE**
**ARMSTRONG AND THE ADKINS**
**CLAIMANTS**

**I.**
## TABLE OF CONTENTS

I.      TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

II.     TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

III.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

IV.   REPLY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      A.     ALPER'S ERRONEOUS ASSERTION THAT *BELL ATLANTIC CORP. V. TWOMBLY* CHANGED THE STANDARD TO BE APPLIED TO PLEADINGS SUBJECT TO A MOTION TO DISMISS UNDER RULE 12(b)(6) IS INCORRECT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      B.     ALPER'S ASSERTION THAT THE CLAIMANTS HAVE ONLY ASSERTED TWO FACTS IN SUPPORT OF THEIR CLAIMS AGAINST ALPER IS BELIED BY THE RECORD ON APPEAL. . . . . . . . . . . . . . .   7

             1.    *Alper's employment of Nicholas Bauer for the sole purpose of "dealing with" Saltire's environmental issues is the type of parental involvement that rebuts the presumption recognized by the United States Supreme Court in* United States v. Bestfoods. . . . . . . .   8

                  a.    **The allegations in the Claimants' proofs of claim satisfy *Twombly* and *Bestfoods* by stating a plausible claim that Alper, itself, controlled the Dickson remediation through its employee, Nicholas Bauer.** . . . . . . . . . . . . . . .   9

                  b.    **The Claimants went above and beyond the requirements of *Twombly* by providing the Bankruptcy Court direct testimonial evidence to the effect that Alper hired Mr. Bauer for the sole purpose of controlling and managing Saltire's remediation efforts.** . . . . . . . . . . . . . . .   11

                        i.    **Alper's president has testified that Nicholas Bauer was hired by Alper solely for the purpose of dealing with Saltire's environmental issues.** . . . . . . . .   11

ii.   **Alper's attempt to rebut Mr. Bertellotti's testimony does nothing more than make clear that an issue of fact exists regarding on whose behalf Mr. Bauer was acting when managing and controlling the Dickson, Tennessee remediation.** . . . . . . . . . . . . . . . . . . . . . .   **13**

c.   **Alper's affected incredulity does not alter the import of the allegations or the testimony of Mr. Bertellotti.** . . . . . . . . . . . . . . . . . . . . . . . . .   **14**

2.   *Alper's complete domination over Saltire with regard to the remediation in Dickson, Tennessee, makes Alper liable for the damages caused by the negligent manner in which the remediation was conducted.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **14**

a.   **The Claimants allege more than the mere existence of the Management Agreement when asserting that Alper had complete domination over Saltire with regard to the remediation in Dickson, Tennessee.** . . . . . . . . .   **15**

b.   **Alper improperly relies on** *Consol. Edison Co. of N.Y., Inc. v. UGI Utils.* **and similarly distinguishable authorities for the proposition that a management agreement, alone, is insufficient to impose liability on a parent** . . .   **17**

C.   **ALPER'S DISCUSSION OF TENNESSEE LAW IS NOT APPLICABLE TO THE CLAIMANTS' CLAIMS.** . . . . . . . . . . . . . . . . . . . . . . . . . . .   **18**

D.   **ALPER'S ASSERTION THAT THE CLAIMANTS WERE ATTEMPTING  TO BE "SLY" WITH REGARD TO THEIR ARGUMENT PERTAINING TO THER ALTER EGO CLAIMS IGNORES THE CLEAR IMPORT OF THE CLAIMANTS' BRIEFS.** . . . .   **20**

V.   **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **21**

**II.**
**TABLE OF AUTHORITIES**

**A.     CASES CITED**

*Bell Atlantic Corp. v. Twombly,*
127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3, 4, 6

*Biscan v. Brown,*
160 S.W.3d 462 (Tenn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

*Bradshaw v. Daniel,*
854 S.W.2d 865 (Tenn. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

*CBT Flint Partners, LLC v. Goodmail Sys., Inc.,*
529 F.Supp.2d 1376 (N.D. Ga. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4

*Conley v. Gibson,*
355 U.S. 41, 78 S.Ct. 99 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

*Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.,*
310 F.Supp.2d 592 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

*Erickson v. Pardus,*
127 S.Ct. 2197 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

*Estate of Amos v. Vanderbilt Univ.,*
62 S.W.3d 133 (Tenn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

*Fed. Deposit Ins. Corp. v. Allen,*
584 F.Supp. 386 (D.C. Tenn. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

*Fletcher v. Atex, Inc.,*
68 F.3d 1451 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

*Iqbal v. Hasty,*
490 F.3d 143, 157 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5, 6

*Limestone Dev. Corp. v. Village of Lemont, Ill.,*
520 F.3d 797, 803 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

*Manchester Equip. Co. v. American Way & Moving Co.,*
60 F.Supp.2d 3 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     17

## A.   CASES CITED (CONTINUED)

*O'Connor v. Davis,*
126 F.3d 112 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Schiavone v. Pearce,*
77 F.Supp.2d 284 (D. Conn. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*United States v. Bestfoods,*
524 U.S. 51, 118 S.Ct. 1876 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 11

*United States v. Kramer,*
Civil Action No. 89-4340, 1998 U.S. Dist. LEXIS 14183 (D.N.J. 1998) . . . .   10

*United States v. Newmont USA Ltd.,*
No. 05-00020, 2007 WL 2405040 (E.D. Wash Aug. 17, 2007) . . . . . . . . . . .   17

## B.   STATUTES AND RULES CITED

FED. R. CIV. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

## C.   OTHER AUTHORITY

RESTATEMENT (SECOND) OF TORTS, § 324A (1965) . . . . . . . . . . . . . . . . . . . . . .   19

**III.**

**INTRODUCTION**

Through vitriolic prose and a mischaracterization of applicable law, Alper attempts to distract this Court from the fact that Alper's entire argument on appeal relies on two demonstrably false premises. First, Alper creates the erroneous illusion that the case law requires some special, heightened pleading on the part of the Claimants in order to survive a motion to dismiss, when the law is quite to the contrary. Second, Alper repeatedly asserts that the Claimants alleged only two facts in support of their claims, when in fact the record is clear that they alleged many.

Cognizant that the allegations and evidence adduced by the Claimants far exceed the modest requirements necessary to survive a motion to dismiss under Rule 12(b)(6), Alper attempts to mislead this Court by asserting that a heightened pleading standard applies to the Claimants' claims. In doing so, Alper misrepresents the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1963 (2007). Even the most cursory review of *Twombly* reveals that the Supreme Court explicitly states in that case that no such heightened pleading requirement exists. Furthermore, subsequent case law interpreting the Supreme Court's decision in *Twombly* clearly recognizes that the traditional, modest pleading standard to survive a motion to dismiss has not been changed by *Twombly*. As has been demonstrated in the Claimants' initial briefing and as further demonstrated below, the Claimants have more than satisfied the traditional standard to survive a motion to dismiss.

Alper's assertion that the Claimants have alleged only two facts indicating that Alper controlled the Dickson remediation is belied by the record on appeal. As shown in the Claimants' initial briefing, the Claimants made numerous allegations indicating that,

1

although he was an officer of both Saltire and Alper, Nicholas Bauer was ***employed*** by Alper for the sole purpose of "dealing with" the remediation of the Dickson contamination and Saltire's other environmental issues; and it was as Alper's employee that Mr. Bauer managed such remediation. Furthermore, the Claimants alleged facts indicating that, during the remediation of the Dickson contamination, Saltire was a partial shell entity and dominated by Alper—especially with regard to environmental matters. The allegations in the Claimants' pleadings, although sufficient by themselves, were accompanied by direct testimonial evidence by Robert Bertellotti (Alper's president) indicating that Mr. Bauer was hired by Alper for the sole purpose of managing and controlling Saltire's environmental obligations.

Alper's direct management and control (pursuant, at least in part, to an all-encompassing Management Agreement) over the TCE remediation in Dickson, Tennessee resulted in Alper assuming a duty to conduct such remediation in a non-negligent manner—a duty Alper breached. Also, because Alper controlled the remediation of the Dickson contamination through its domination over Saltire, Alper is liable for the damages suffered by the Claimants as a result of the negligent manner in which such remediation was conducted. Stated differently, Alper assumed the relevant duties and liabilities both through its conduct—manifested by its exercise of control over Saltire—and by contracting (via the Management Agreement) to run Saltire's environmental and financial affairs.

**IV.**
**REPLY**

A.    **ALPER'S ERRONEOUS ASSERTION THAT *BELL ATLANTIC CORP. V. TWOMBLY*
CHANGED THE STANDARD TO BE APPLIED TO PLEADINGS SUBJECT TO A MOTION
TO DISMISS UNDER RULE 12(b)(6) IS INCORRECT**

In its brief, Alper incorrectly asserts that "[t]he Flake Claimants spend more than

a page arguing for an incorrect legal standard on a motion to dismiss" (Appellee Br. at p.

13).  In making this erroneous assertion, Alper improperly implies that the Supreme

Court, in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), somehow changed the

standard applicable to a motion to dismiss—presumably by making the standard more

onerous on the non-movant.  Nothing could be further from the truth.

In *Twombly*, the Supreme Court was faced with the discrete issue of what was the

proper standard for pleading an antitrust conspiracy through allegations of parallel

conduct under the Sherman Antitrust Act.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct.

1955, 1963 (2007).   In its analysis, the Supreme Court addressed the continued viability

of the "no set of facts"[1] language used by the Court in *Conley v. Gibson,* 355 U.S. 41, 78

S.Ct. 99 (1957).  *Id.* at 1968.  The Supreme Court discarded the *Conley* language as an

inaccurate articulation of the traditional pleading standard.  *Id.* at 1969.  In doing so,

however, the Supreme Court explicitly stated that it ***was not*** changing the traditional

pleading standard to require a heightened fact pleading of specifics.  *Id.* at 1974 ( "[W]e

do not require heightened fact pleading of specifics, but only enough facts to state a claim

---

[1] In *Conley v. Gibson*, the Supreme Court stated that "In appraising the sufficiency of the
complaint we follow, of course, the accepted rule that a complaint should not be
dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle him to relief."  *Conley v.
Gibson*, 355 U.S. 41, 45-46 (1957).

to relief that is plausible on its face.").  Indeed, in *Twombly*, the Supreme Court

emphasized the continued viability of *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002),

a decision in which the Supreme Court reversed a court of appeals that had

"impermissibly applied what amounted to a heightened pleading requirement by insisting

that Swierkiewicz allege 'specific facts' beyond those necessary to state his claim . . . ."

*See Id.* at 1973-74.

In the wake of *Twombly*, courts have recognized that the traditional pleading

standard still applies.  For instance, in *CBT Flint Partners, LLC v. Goodmail Sys., Inc.*,

the District Court for the Northern District of Georgia addressed the contention that

*Twombly* calls for a heightened pleading standard.  *CBT Flint Partners, LLC v. Goodmail*

*Sys., Inc.*, 529 F.Supp.2d 1376 (N.D. Ga. 2007).  Rejecting the contention, the *CBT* court

found that "[t]he [Supreme] Court's 'new standard' was merely a specific way to

articulate a solution to what it perceived to be a specific pleading problem, in a specific

area of law that inflicted a high cost upon antitrust defendants.  It was not a broad based

new license for federal courts to ramp up pleading requirements."  *Id.* at 1379. The court

then held that:

> *Twombly* did not radically alter the elementary rules of civil procedure that
> have governed litigation in the federal court for the past seventy years.
> The Court's forced retirement of *Conley v. Gibson's* "no set of facts"
> language does not change the fundamental command of Rule 8 as to what
> a valid complaint must look like.  Indeed the Court made clear that it was
> not imposing a heightened pleading standard.

*Id.*  Thus, as the court opined, "*the retirement of the "no set of facts" language . . .*

*should not be confused with a requirement that the complaint contain more factual*

*specificity than was required before the Court decided Twombly.*"  *Id.* at 1380 (emphasis

added).

Similarly, in *Limestone Dev. Corp. v. Village of Lemont, Ill.,* the Seventh Circuit recognized that "*[Twombly]* must not be overread. The [Supreme]Court denied that it was 'requir[ing] heightened fact pleading of specifics,' 127 S.Ct. at 1974; 'a complaint . . . does not need detailed factual allegations.' " *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (quoting, in part, *Twombly*, 127 S.Ct. at 1964). "A complaint must always . . . allege 'enough facts to state a claim to relief that is plausible on its face,' and how many facts are enough will depend on the type of case." *Id.* (quoting in part, *Twombly*, 127 S.Ct. at 1974).

The Second Circuit has come to the same conclusion regarding the import of *Twombly*. In *Iqbal v. Hasty*, the Second Circuit recognized that "[J]ust two weeks after issuing its opinion in *[Twombly]*, the Court cited it for the traditional proposition that **'[s]pecific facts are not necessary [for a pleading that satisfied Rule 8(a)(2)]'; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'**" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007) (quoting in part *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (quoting *Twombly's* quotation from *Conley*)(omission in original)) (emphasis added). The Second Circuit then opined that "we believe the [Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,'" *Id.* at 157-58. The Second Circuit stated in dicta that, if additional allegations were needed at all, they should be requested under Rule 12(e) and the plaintiff should be given an opportunity to amend his pleadings. *Id.* at 158 (citing Rule 12(e) and stating that "in order to survive a motion to dismiss under the plausibility standard of *[Twombly]*, a conclusory allegation

5

concerning some elements of a plaintiff's claims might need to be fleshed out by a plaintiff's response to a defendant's motion for a more definite statement").

The "plausibility standard" identified by the Supreme Court in *Twombly* is nothing more than a re-articulation of the traditional pleading standard, which requires sufficient factual allegations to put a defendant on notice of the claims against it. The insinuation made by Alper that *Twombly* provides for a different and heightened standard to be applied to pleadings subject to a motion to dismiss is absurd given the *Twombly* Court's direct statements to the contrary. Indeed, the Supreme Court, in *Erickson v. Pardus*, reversed a lower court shortly after the *Twombly* decision was issued for requiring specific factual pleadings to survive a motion to dismiss. *Erickson v. Pardus*, 127 S.Ct. 2197 (2007).[2]

Here, Alper attempts to mislead this Court into thinking that for a claim to be "plausible" a plaintiff must meet a heightened pleading standard by alleging specific facts. Alper's repetition of this false premise does not make it true. Under *Twombly* the Claimants are merely required to meet the traditional pleading standard required under Rule 8—*i.e.*, give Alper fair notice of what their respective claims are and the grounds upon which they rest. *Twombly*, 127 S.Ct. at 1964-65; FED. R. CIV. P. 8(a). This requirement does not entail pleading specific facts. *Id*. at 1974. Alper has cited to no authority where a court has held otherwise.

---

[2] In *Erickson v. Pardus*, the Supreme Court, citing its earlier decision in *Twombly*, reversed a lower court's dismissal of a petitioner's complaint, holding that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' ***Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests***'. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (emphasis added).

The Flakes have provided more than enough factual allegations and legal argument to give Alper fair notice of their claims and the grounds upon which they rest. Therefore, they have satisfied the modest plausibility standard articulated in *Twombly*.

**B.**    **ALPER'S ASSERTION THAT THE CLAIMANTS HAVE ONLY ASSERTED TWO FACTS IN SUPPORT OF THEIR CLAIMS AGAINST ALPER IS BELIED BY THE RECORD ON APPEAL.**

In its Flake Response, Alper correctly articulates the premise of the Claimants' direct action claims against it: "although he may have been a Saltire officer, Mr. Bauer's management of environmental affairs for Saltire with respect to contamination in Dickson was carried out in his capacity as an official of Alper and that through Mr. Bauer, Alper directly controlled Saltire's compliance with environmental cleanup endeavors conducted under the scope of governmental regulators."[3] (Flake Response at p. 16). Then, Alper then makes the preposterous assertion that the Claimants only alleged two facts in support of their claims: (1) that Mr. Bauer was a dual officer of Saltire and Alper and (2) that Saltire and Alper were parties to the Management Agreement. [4] Alper's assertion is belied by a record showing numerous additional factual allegations by the Claimants.

---

[3] Notably, Alper's accurate articulation of the claims against it is proof that the Claimants' pleadings in the Bankruptcy Court were sufficient to put Alper on notice of their claims as required by the pleading requirements of Federal Rule of Civil Procedure 8.

[4] In both of its responsive briefs, Alper bemoans the Bankruptcy Court's decision to consider the Claimants' amended proofs of claim. However, Alper never filed an objection to the Flakes' amended proofs of claim. Furthermore, although Alper objected to the amended proofs of claim submitted by the Armstrongs and the Adkins Claimants, the Bankruptcy Court effectively overruled those objections by considering the allegations made in the amended proofs of claim despite the pending objections. It was entirely within the Bankruptcy Court's discretion to consider the Claimants' amended

First, the Claimants do not rely merely on the fact that Mr. Bauer was a dual officer, but instead point to the employment relationship between Mr. Bauer and Alper and the nature and purpose of that employment relationship as stated by Alper's president. Second, the Claimants do not rely simply on the existence of the Management Agreement, but instead point to the complete domination of Alper over Saltire with regard to the remediation in Dickson, Tennessee.

1.    *Alper's employment of Nicholas Bauer for the sole purpose of "dealing with" Saltire's environmental issues is the type of parental involvement that rebuts the presumption recognized by the United States Supreme Court in* United States v. Bestfoods.

Alper wisely does not dispute that it may be held liable for damages caused by the negligent remediation of the Dickson contamination if "through the conduit of its own personnel and management" it "is directly a participant in the wrong complained of." *See United States v. Bestfoods*, 524 U.S. 51, 64 (1998). Furthermore, Alper does not dispute that, despite Nicholas Bauer's position as a dual officer of Saltire and Alper, Alper may be held liable if "Mr. Bauer's conduct as a dual officer "depart[ed] so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the subsidiary in operating the facility" (Flake Response at p. 18). Instead, Alper relies on *Bestfoods* and its progeny[5] for the proposition that Nicholas Bauer's role as a dual officer is insufficient, by itself, to create

proofs of claim and the issue of whether the Bankruptcy Court abused its discretion in considering the amended proofs of claim is not an issue on appeal before this Court.

[5] In its Flake Response, Alper cites to a number of cases where the court indicated that a motion to dismiss may be appropriate where the only allegation of parental involvement was the existence of a dual officer (Flake Response at p. 17, n. 14). These cases are all distinguishable from the instant case, because, here, the Claimants do not rely solely on Nicholas Bauer's position as a dual officer.

liability for Alper (Flake Response, at p. 17).  Alper's reliance on *Bestfoods,* however,

erroneously assumes that the Claimants did not adduce additional allegations.  As the

following excerpts from the record show, Claimants made numerous additional,

important allegations that are before this Court on appeal.

> a. The allegations in the Claimants' proofs of claim satisfy *Twombly* and *Bestfoods* by stating a plausible claim that Alper, itself, controlled the Dickson remediation through its employee, Nicholas Bauer

The Claimants do not rely solely on Nicholas Bauer's dual officer position.

Instead, their allegations concentrate on Mr. Bauer's employment relationship with Alper

and the contemplated duties under that relationship.  More specifically, the Claimants

made the following allegations regarding Alper's direct involvement in the remediation

in Dickson, Tennessee:

- **Around the time the Management Agreement was executed, remediation of the TCE contamination in Dickson, Tennessee, was placed under the control of Nicholas Bauer** (Flake Objection Response, Bankr. Dkt. No. 105, Ex. E at p. 121, lines 11-22 through p. 122, lines 1-4; Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at p. 3; Adkins Proof of Claim[6], Bankr. Dkt. No. 193, Ex. A at p. 4 ).

- **Mr. Bauer was an employee of Alper, which paid his salary and "loaned [him] out as needed to various subsidiaries"** (Flake Objection Response, Bankr. Dkt. No. 105, Ex. F at p. 86, lines 23-25 through p. 87, lines 1-2; Armstrong Proof of Claim, Bankr. Dkt. No.

---

[6] Each of the Adkins Proofs of Claim has attached thereto a "Statement of Claim," which contains a description of the factual and legal basis for each claim.  These Statements of Claim are substantively identical, other than the names of the particular claimants and the deformities associated with the particular Child Claimant to which the Statement of Claim pertains.  These differences in the content of the Statements of Claim have resulted in pagination differences.  For purposes of citation in this Supplemental Brief, and in an effort to avoid confusion or the need for cumbersome string cites, citations to the Adkins Proofs of Claim will contain page numbers applicable to the proof of claim of David, Jodie, Kassidy, Dawson & Mason Heimbach, but such references apply equally to all other Adkins Claimants' Proofs of Claim.

147, Ex. A at p. 3; Adkins Proof of Claim, Bankr. Dkt. No. 193, Ex. A at p. 4).

- **Mr. Bauer testified in a deposition taken in unrelated litigation that, despite his purported role as an officer of Saltire, he considered himself an employee of Alper and not Saltire.** (Flake Objection Response, Bankr. Dkt. No. 105, Ex. E at p. 113, line 22 through p. 114, line 3 & p. 126, lines 3-5).

- **Mr. Bauer was hired by Alper specifically for the purpose of "dealing with" Saltire's environmental issues.** (Flake Objection Response, Bankr. Dkt. No. 105, Ex. F, p. 88, lines 4-10; Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at p. 3; Adkins Proof of Claim, Bankr. Dkt. No. 193, Ex. A at p. 4).

- **The remediation of the Dickson, Tennessee contamination was negligently conducted under the control and supervision of Mr. Bauer, who was acting in his capacity as an employee of Alper. Had the TCE remediation been properly conducted, the Claimants' damages would have been prevented** (Flake Objection Response, Bankr. Dkt. No. 105, at p. 7; Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at p. 4; Adkins Proof of Claim, Bankr. Dkt. No. 193, Ex. A at p. 4-5).

- **Bauer sometimes overtly represented himself as an Alper official who had responsibility for environmental matters at Saltire** (Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at p. 3-4; Adkins Proof of Claim, Bankr. Dkt. No. 193, Ex. A at p. 3-4).[7]

Thus, the Claimants alleged that Nicholas Bauer was hired by Alper for the sole purpose of managing and controlling the remediation of Saltire's environmental obligations. These allegations make it plausible that, upon a trial on the merits, a trier of

---

[7] In Alper's Supplemental Response, it complains that the Claimants' citation to *United States v. Kramer*, Civil Action No. 89-4340, 1998 U.S. Dist. LEXIS 14183 (D.N.J. 1998) is an "empty citation." Alper misses the point of the citation. *Kramer* is cited merely to show that Bauer appeared for Saltire as an agent of Alper, nothing more. Nowhere in the Claimants' briefing do the Claimants contend that *Kramer* stands for a legal principal. For the limited purpose for which Kramer is cited (*i.e.*, to show an instance where Mr. Bauer is represented as an agent of Alper appearing on behalf of Saltire) the citation is accurate.

fact may find that Alper—by hiring an employee to manage and control the remediation

in Dickson, Tennessee—departed from the norms of parental influence to such an extent

that the presumption articulated by the *Bestfoods* Court is overcome.  *See Bestfoods,* 524

U.S. 51 at 71.  Therefore, the Claimants have satisfied the modest threshold required

under *Twombly* and its progeny.

> b.    The Claimants went above and beyond the requirements of
> *Twombly* by providing the Bankruptcy Court direct testimonial
> evidence to the effect that Alper hired Mr. Bauer for the sole
> purpose of controlling and managing Saltire's remediation efforts

Although their factual allegations were alone sufficient to overcome Alper's

motion to dismiss, the Claimants did not rely solely on these allegations.  The record also

contains evidence from Alper itself that makes the Claimants' allegation that Mr. Bauer

was acting on behalf of Alper, and not Saltire, more than plausible.

> i.    Alper's president has testified that Nicholas Bauer was
> hired by Alper solely for the purpose of dealing with
> Saltire's environmental issues

The testimony of Robert Bertellotti—Alper's president—is, by itself, sufficient to

make the Claimants' assertion that Mr. Bauer was acting on behalf of Alper when

remediating the Dickson contamination plausible.  Mr. Bertellotti testified as follows:

> [Mr. Bertellotti]:  . . . Nick is nothing more than of a direct
> employee for Alper Holdings for convenience.  That is where the payroll
> and benefits and withholding is.  He is loaned out as needed to various
> subsidiaries.
>
> Q: And just so I am clear, other than your understanding as to who
> Nick Bauer was working for, was there any document or any other—well,
> was there a document memorializing when Nick Bauer was working for,
> in you mind, a subsidiary as opposed to working in his capacity as an
> employee of Alper?
>
> . . . .

[Mr. Bertellotti]: Not to my knowledge.  I think it was quite obvious because he was spending so much time—of his time with respect to Saltire.  That is where he was spending his time.

Q:  Was it understood when he was working, in your mind, as a lone servant and when he was not?

[Mr. Bertellotti]:  *He was hired specifically—in effect, specifically for the purpose—if it wasn't for Saltire's environmental issues, Nick Bauer wouldn't have been hired  He was hired for the purpose of dealing with Saltire's environmental issues.  The payroll, the benefits, withholding of taxes; all that done—was done at the Alper Holdings level.  Saltire did not maintain its own employee benefit*.

(Bankr. Dkt. No. 105, Ex. F, p. 86, line 23 through p. 88, line 13). This testimony clearly makes it plausible that Mr. Bauer was acting on behalf of Alper while "dealing with Saltire's environmental issues."  It is illogical to assert that Mr. Bauer was only wearing a Saltire hat with respect to the Dickson contamination, when he was hired by Alper for that very purpose.  By Alper's own testimony, it hired Bauer to clean up Dickson.  Alper has not, and cannot, explain why Alper would have hired Mr. Bauer to manage Saltire's environmental issues if he was already doing so as a Saltire officer.  Saltire did not hire him; Alper did.  Alper's employment of Mr. Bauer for the purpose of remediating the Dickson contamination meant that Mr. Bauer's management and control of the Dickson remediation was conducted as an agent of Alper: Mr. Bauer was answerable to Alper and Mr. Bauer was under the direction of Alper.

In a futile attempt to distract this Court from the clear import of Mr. Bertellotti's testimony, Alper desperately twists and distorts the meaning of Mr. Bertellotti's testimony by asserting that what Mr. Bertellotti really meant was that Mr. Bauer was appointed as an officer of Saltire for the sole purpose of dealing with Saltire's environmental issues.  This assertion is pure sophistry.  The line of questioning and Mr.

Bertellotti's responses clearly show that he was referring to Mr. Bauer's relationship with

Alper itself.  Mr. Bertellotti is discussing the reasons why Mr. Bauer was "hired."  This

testimony contemplates an employment relationship.  Alper has never contended that Mr.

Bauer was an employee of Saltire—only that he was a Saltire officer.[8]  Officers are not

"hired."  They are "elected or "appointed" by a corporation's board of directors pursuant

to the entity's bylaws.  Thus, Mr. Bertellotti's own language shows that he was not

discussing Mr. Bauer's relationship with Saltire.  He brought Bauer on board to do

something Alper wanted done.  Given the context of Mr. Bertellotti's statements and the

language used, it is clear that Mr. Bertellotti is not discussing why Mr. Bauer was

appointed an officer of Saltire.  Instead, he is recognizing that Mr. Bauer was hired by

Alper for the sole purpose of managing Saltire's environmental issues.

> ii. Alper's attempt to rebut Mr. Bertellotti's testimony does nothing more than make clear that an issue of fact exists regarding on whose behalf Mr. Bauer was acting when managing and controlling the Dickson, Tennessee remediation.

Cognizant that Mr. Bertellotti's testimony makes it more than plausible that Mr.

Bauer was working on behalf of Alper—and not Saltire—when managing the Dickson

remediation, Alper attempts to rebut this testimony by citing to general and conclusory

statements made by Mr. Bertellotti in other portions of his deposition (Supplemental

---

[8] Furthermore, the evidence clearly contradicts any assertion Alper may now try to make that Mr. Bauer was an employee of Saltire.  As shown above, Mr. Bertellotti testified that Mr. Bauer was paid through Alper because Alper is "where the payroll and benefits and withholding is."  Because Mr. Bauer was not paid by Saltire for his purported services as officer, he was not an employee of Saltire.  *O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997) (quoting *Graves v. Women's Prof'l Rodeo Assoc.*, 907 F.2d 71, 73 (8th Cir. 1990) and recognizing that compensation is "an essential condition to the existence of an employer-employee relationship").  Notably, Mr. Bertellotti's testimony recognizes that, "Mr. Bauer was a direct employee of Alper."

Response at p. 9-10). This, however, is an appeal of a motion to dismiss, not an appeal of a ruling on the merits of the Claimants' claims. The Claimants' allegations must be considered as true and Alper's attempt to present rebuttal testimony is wholly improper. Furthermore, Alper's attempt to introduce rebuttal evidence actually supports the Claimants' argument on appeal—*i.e.*, fact issues exist and this matter cannot be decided as a matter of law under Rule 12(b)(6).

       c.     Alper's affected incredulity does not alter the import of the allegations or the testimony of Mr. Bertellotti

Alper contends that the Claimants' allegations "defy logic," because, in hindsight, Alper's employment of Mr. Bauer for the sole purpose of managing Saltire's remediation efforts would be for no other reason than to create liability for Alper (Supplemental Response at p. 10). This is beside the point. Alper may have correctly or incorrectly assumed that it needed to take charge of the Dickson remediation, either selfishly or nobly, to avoid liability to itself, or to assure remediation for the public good. Without the benefit of discovery, the Claimants may only speculate as to Alper's reasons for structuring Mr. Bauer's employment in the manner that it did. However, the Claimants need not explain Alper's reasons in order to survive a Rule 12(b)(6) motion to dismiss. The Claimants' allegations must be taken as true.

       2.     *Alper's complete domination over Saltire with regard to the remediation in Dickson, Tennessee, makes Alper liable for the damages caused by the negligent manner in which the remediation was conducted*

In its Responsive Briefs, Alper erroneously asserts that the Claimants' claims could be disallowed on a Rule 12(b)(6) motion to dismiss because "the mere fact that Alper entered into a management agreement pursuant to which Alper agreed to provide management services to its subsidiaries . . . does not impute liability to Alper, even if

Alper and Mr. Bauer had acted thereunder and provided Saltire with remediation services . . . ." (Flake Response at p. 19).  In support of this erroneous contention, Alper cites to a number of cases in which ***summary judgment*** was granted on the grounds that, after having an opportunity to conduct discovery, the plaintiffs were unable to make an adequate showing of parental control (Flake Response at p. 19-20).  Alper's argument lacks merit because (1) the Claimants alleged much more than the mere existence of the Management Agreement and (2) the authorities relied on by Alper are within the context of a ***summary judgment***—not a motion to dismiss under Rule 12(b)(6).

> a.    The Claimants allege more than the mere existence of the Management Agreement when asserting that Alper had complete domination over Saltire with regard to the remediation in Dickson, Tennessee

Alper completely ignores all but one of the allegations made by the Claimants regarding Alper's complete domination over the remediation of the Saltire contamination. To give the Court some perspective, the following are the additional allegations made by the Claimants in the Bankruptcy Court that are relevant to this issue:

- **"In 2001, three years before Saltire filed for bankruptcy relief, Saltire had no employees and therefore was a shell entity."** (Adkins Proof of Claim, Bankr. Dkt. No. 193, Ex. A at p. 3, n. 1; *see also*, Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at p. 2).

- **"The decisions of how to deal with Saltire's environmental issues—financially and otherwise—were left in the hands of Alper. Such control was facilitated by the existence of a common senior/primary executive officer, common CFO, and common Vice President for Environmental Affairs."** (Adkins Proof of Claim, Bankr. Dkt. No. 193, Ex. A at p. 4; *see also*, Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at p. 2).

- **"The Management Agreement also immunized Alper from any litigation initiated by Saltire against Alper under the agreement. The combination of management powers ceded to Alper under the Management Agreement and Alper's immunity from suits by**

> **Saltire put Alper in a completely dominant position relative to Saltire with regard to the remediation in Dickson, Tennessee"** (Adkins Proof of Claim, Bankr. Dkt. No. 193, Ex. A at p. 3; *see also*, Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at p. 2).

- **"Furthermore, under the Management Agreement, Saltire's finances and environmental affairs were managed and controlled by Alper. By controlling both Saltire's finances and environmental affairs, Alper controlled and managed the handling of Saltire's extensive legacy liabilities (i.e., post-retiree employee benefits and alleged environmental contamination, possibly among others)"** (Adkins Proof of Claim, Bankr. Dkt. No. 193, Ex. A at p. 3; *see also*, Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at p. 3).

These allegations go far beyond the mere existence of the Management Agreement.[9]  They allege a shell subsidiary with no employees and no funds to conduct the remediation of the Dickson contamination.  They also describe a parent with complete domination over its subsidiary through (i) an agreement that put the parent in charge of the subsidiary's finances and environmental affairs, while providing the parent with immunity from suits by the subsidiary for any misconduct or negligence committed by the parent while controlling the subsidiary's affairs, and (ii) the placement of the parent's employees and officers in the top positions of authority of the subsidiary—including the placement of an Alper employee (Nicholas Bauer) in charge of the Dickson remediation.

---

[9] Nonetheless, the Management Agreement was no garden variety management agreement.  Rather, it allowed Alper to fully run Saltire which, without its own employees, clearly could not run itself.  This matter cannot be narrowly framed as the loaning of an Alper employer to Saltire—as if Alper were a "temp agency"—as the Management Agreement called for Alper to run Saltire generally, including with respect to its environmental affairs.

  b. Alper improperly relies on *Consol. Edison Co. of N.Y., Inc. v. UGI Utils.* and similarly distinguishable authorities for the proposition that a management agreement, alone, is insufficient to impose liability on a parent

Alper mistakenly relies on a string of cases[10] that indicate that the existence of a management agreement alone is not sufficient summary judgment evidence to impose liability on a parent for the purported actions of its subsidiary (*See* Flake Response at p. 19). Alper's reliance on these authorities is misplaced. As Alper concedes, these cases were decided in the context of a ***motion for summary judgment***, only after the plaintiffs were allowed to conduct discovery (*See* Flake Response at p. 21, n. 16).[11] Furthermore, as summary judgment cases, the standard applied to the evidence adduced by the plaintiffs was a higher standard than that applicable in the instant case.

Here, the Bankruptcy Court expressly denied the Claimants discovery based on its finding that Alper's claims objections were motions to dismiss under Rule 12(b)(6). It would be patently unfair to deny the Claimants' discovery and to then hold Claimants' claims to a summary judgment standard. Furthermore, as shown above, the Claimants alleged much more than the mere existence of the Management Agreement. Thus, the authorities relied upon by Alper are distinguishable. If anything, the cases cited by

---

[10] Specifically, Alper relies on the following cases: *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 310 F.Supp.2d 592 (S.D.N.Y. 2004), *United States v. Newmont USA Ltd.*, No. CV-05-020-JLQ, 2007 WL 2405040 (E.D. Wash Aug. 17, 2007); *Manchester Equip. Co. v. American Way & Moving Co.*, 60 F.Supp.2d 3 (E.D.N.Y. 1999) and *Schiavone v. Pearce*, 77 F.Supp.2d 284 (D. Conn. 1999).

[11] Alper's assertion that its summary judgment authorities may be properly considered here because "the Flake Claimants have had access to thousands of pages of discovery" is wholly improper. Alper provided absolutely no evidence in the Bankruptcy Court indicating that any of the Claimants have been produced "thousands of pages of discovery." Consequently, no evidence appears in this Appellate record and Alper is blatantly attempting to argue outside the record on appeal.

Alper—and Alper's failure to provide any authority in the context of a Rule 12(b)(6) motion to dismiss—support the Claimants' assertion that the Bankruptcy Court improperly held the Claimants' claims to a higher standard than appropriate for a Rule 12(b)(6) motion to dismiss.

C.    **ALPER'S DISCUSSION OF TENNESSEE LAW IS NOT APPLICABLE TO THE CLAIMANTS' CLAIMS**

In its Flake Response and again in its Supplemental Response, Alper argues against a theory of liability that the Claimants have not asserted.  More specifically, Alper asserts that it had no duty to control the conduct of Saltire to prevent it from causing harm to others (Flake Response at p. 21-22; Supplemental Response at p. 12-13). However, the Claimants assert that Alper is liable for its own conduct, not for failing to control the conduct of Saltire.  It is by virtue of Alper's control over the remediation in Dickson, Tennessee that Alper is liable to the Claimants.

In *Bestfoods*, the Supreme Court opined that a corporate parent that actively participates in, and exercises control over, the operations of a subsidiary's contaminating facility may be held directly liable in its own right as an operator of the facility. *Bestfoods,* 524 U.S. at 64-65.  Furthermore, Tennessee has adopted the Restatement (Second) of Torts assumed duty analysis.  *Biscan v. Brown*, 160 S.W.3d 462, 483 (Tenn. 2005)  The Restatement (Second) of Torts provides:

> One who undertakes, gratuitously or for consideration, to render service to another which he should recognize as necessary for the protection of a third party or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or

      (b) he has undertaken to perform a duty owed by the other to the third
           person, or

      (c) the harm is suffered because of reliance of the other or the third
           person upon the undertaking.

RESTATEMENT (SECOND) OF TORTS, § 324A (1965).

      The Claimants alleged that the remediation of the Dickson, Tennessee,

contamination was negligently conducted under the control and supervision of Mr. Bauer,

who was acting in his capacity as an employee of Alper.  By putting its employee in

charge of the Dickson remediation and contracting to run Saltire's environmental affairs,

Alper undertook to render environmental services on behalf of Saltire.  Alper should have

recognized that this undertaking was necessary for the protection of third parties and their

property.  Yet, Alper failed to exercise reasonable care when controlling the Dickson

remediation.  Specifically, Alper (i) failed to warn Claimants and the public of the

existence of TCE contamination[12], (ii) improperly limited its investigation and

remediation to the Dickson Plant and a limited area around it, (iii) failed to investigate

alternative sources of TCE contamination and (iv) conducted its environmental activities

in Dickson in a manner generally lacking thoroughness (Adkins Proof of Claim, Bankr.

---

[12] In its Supplemental Response, Alper, without citing to any authority, contends that the
"duty to warn" is a concept specific to products liability law.  Alper's contention is
simply wrong.  Under Tennessee law, the duty to warn is flexible and based on social
policy considerations and goes beyond special relationships. *Biscan v. Brown*, 160
S.W.3d 462, 479-80 (Tenn. 2005).  This is especially true where the public health is
concerned.  For example, in *Bradshaw v. Daniel*, 854 S.W.2d 865 (Tenn. 1993), the
Tennessee Supreme Court concluded that a physician owes a duty to the immediate
family members of a patient to warn them of possible exposure to the source of the
patient's illness, even in the absence of a physician-patient relationship with the
immediate members of the family.  *Bradshaw*, 854 S.W.2d at 872. Also, in *Estate of
Amos v. Vanderbilt Univ.*, 62 S.W.3d 133 (Tenn. 2001), the Tennessee Supreme Court
held that the defendant hospital owed a duty to the patient's husband and to the general
public to inform the patient that she had HIV because it was foreseeable that identifiable
third parties would be at risk for exposure. *Estate of Amos*, 62 S.W.3d at 138.

Dkt. No. 193, Ex. A at p. 5-6; Armstrong Proof of Claim, Bankr. Dkt. No. 147, Ex. A at

p. 5-6).

After a hearing, the Claimants allege that, had the TCE remediation been properly conducted, the

migration of TCE contaminants, which resulted in the Claimants' injuries, would have

been prevented.  By taking control of the remediation in Dickson, Tennessee, Alper

assumed a duty to conduct such remediation in a non-negligent manner.  Alper breached

this duty.

### D.  ALPER'S ASSERTION THAT THE CLAIMANTS WERE ATTEMPTING TO BE "SLY" WITH REGARD TO THEIR ARGUMENT PERTAINING TO THEIR ALTER EGO CLAIMS IGNORES THE CLEAR IMPORT OF THE CLAIMANTS' BRIEFS

After a hearing, in its Supplemental Response, Alper argues that "the Claimants slyly try to ignore

their absolute failure to plead a claim by arguing exclusively that their alter ego claims

against Alper were not released under Saltire's confirmed plan of reorganization"

(Supplemental Response at p. 25).  This accusation is groundless.  There was nothing

"sly" about the Claimants' argument in the Joint Supplemental Brief of Jon and Charlotte

Armstrong and the Adkins Claimants.  The Claimants referred to the Brief of Appellants

Ray and Cathy Flake for a discussion of the Bankruptcy Court's erroneous conclusion

that no facts were alleged supporting the Claimants' alter ego claims.  However, because

the Bankruptcy Court's Armstrong Order implied that the Claimants' claims may have

been released in Saltire bankruptcy case—and also in response to the argument of Alper

in its Flake Response to the same effect—the Claimants provided this Court with a brief

analysis explaining why the Claimants' alter ego claims against Alper were not, and

could not have been, released by Saltire during its bankruptcy case.

As the Claimants pointed out in the Brief of Appellants Ray and Cathy Flake, the Bankruptcy Court's rulings with regard to the Claimants' alter ego claims were predicated on the erroneous conclusion that the Claimants failed to allege facts supporting their claims. As shown above, the Claimants alleged that Saltire was a shell company with no employees and no funds to conduct the remediation of the Dickson contamination. They also alleged that Alper had complete domination over Saltire through (i) the Management Agreement, which put Alper in charge of Saltire's finances and environmental affairs, while providing Alper with immunity from suits by Saltire for any misconduct or negligence committed by Alper while controlling Saltire's affairs, and (ii) the placement of Alper employees and officers in the top positions of authority for Saltire—including the placement of Nicholas Bauer in charge of the Dickson remediation. Regardless of whether this Court applies Tennessee[13] or Delaware[14] law to the Claimants' alter ego claims, these allegations are sufficient to state a plausible alter ego claim against Alper.

## V.
## CONCLUSION

For the foregoing reasons and for the reasons stated in the Claimants' initial briefing, the Claimants respectfully pray: (1) that the Bankruptcy Court's Memorandum

---

[13] Under Tennessee law, "when a corporation is dominated by an individual or individuals not only as to finance but also as to policy and business practices so that the corporation has no mind, will, or existence of its own and this domination is used to commit a wrong, or fraud *or perpetrate a violation of statutory or positive legal duty*, the corporate veil will be pierced." *Fed. Deposit Ins. Corp. v. Allen*, 584 F.Supp. 386, 397-98 (D.C. Tenn. 1984) (emphasis added).

[14] Under Delaware law, a plaintiff must show that the parent and the subsidiary operated as a single economic entity and that an overall element of injustice or unfairness is present. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) (interpreting Delaware law). There is no requirement of a showing of fraud. *Id.*

Decision and Order Granting Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 20 and 21) Filed by Flake Plaintiffs be VACATED; (2) that the Bankruptcy Court's Memorandum Decision and Order Granting Objections of Alper Holdings USA, Inc. to Proofs of Claim Filed by (i) Armstrong Plaintiffs and (ii) Holt Plaintiffs be VACATED to the extent such order applies to the Claimants; (3) that the Bankruptcy Court's Memorandum Decision and Order on Objection of Alper Holdings USA, Inc. to Proofs of Claim (Claim Nos. 14, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 27, 28) be VACATED; (4) that this contested matter be REMANDED to the Bankruptcy Court for further proceedings; and (5) that the Claimants be granted such other and further relief to which they may be entitled.

Dated: June 18, 2008.

/s/ Douglas T. Tabachnik
Douglas T. Tabachnik, Esq. (DT 6337)
**LAW OFFICES OF**
**DOUGLAS T. TABACHNIK, P.C.**
Woodhull House
63 W. Main Street, Suite C
Freehold, New Jersey 07728
Telephone: (732) 792-2760
Facsimile: (732) 792-2761

and

Sander L. Esserman, Esq.
Cliff I. Taylor, Esq.
STUTZMAN, BROMBERG, ESSERMAN
& PLIFKA, a Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

**ATTORNEYS FOR RAY AND CATHY**
**FLAKE, JON AND CHARLOTTE**
**ARMSTRONG AND THE ADKINS**
**CLAIMANTS**